## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PERNIX SLEEP, INC., *et al.*[1] | Case No. 19-10323 (CSS) |
| Debtors. | Joint Administration Requested **Ref No. 19** |

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Pernix Therapeutics Holdings, Inc. ("Pernix") and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") for the entry of an interim order (this "Interim Order") and a final order (the "Final Order") under sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e), and 507 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), granting, *inter alia*, the following relief:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are: Pernix Therapeutics Holdings, Inc. (4736), Pernix Therapeutics, LLC (1128), Pernix Manufacturing, LLC (1236), Pernix Sleep, Inc. (1599), Cypress Pharmaceuticals, Inc. (1860), Hawthorn Pharmaceuticals, Inc. (2769), Macoven Pharmaceuticals, L.L.C. (4549), Gaine, Inc. (3864), Respicopea, Inc. (1303), Pernix Ireland Limited (3106PH), Pernix Ireland Pain Designated Activity Company (0190LH), Pernix Holdco 1, LLC, Pernix Holdco 2, LLC, Pernix Holdco 3, LLC. The Debtors' corporate headquarters and mailing address is 10 North Park Place, Suite 201, Morristown, NJ 07960.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the DIP Credit Agreement (as defined below).

(i)      authorizing Pernix (the "<u>Borrower</u>") to enter into that certain Senior Secured Superpriority Debtor-In-Possession Credit Agreement (as amended, supplemented or otherwise modified from time to time, the "<u>DIP Credit Agreement</u>"), the form of which is attached to the Motion as <u>Exhibit B</u>, among the Borrower, Cantor Fitzgerald Securities as administrative agent (in such capacity, the "<u>DIP Agent</u>"), and the lenders from time to time party thereto (the "<u>DIP Lenders</u>"), and for certain of the other Debtors[3] (collectively, the "<u>DIP Guarantors</u>" and together with the Borrower, the "<u>DIP Loan Parties</u>") to guaranty the obligations of the Borrower in connection with the DIP Facility pursuant to the Guarantee and Security Agreement (as defined below), and for the DIP Loan Parties to obtain a senior secured, priming superpriority multi-draw debtor-in-possession term loan facility (the "<u>DIP Facility</u>"), which shall consist of a superpriority priming term loan facility with an aggregate principal amount of up to $34.1 million, and such other financial accommodations, allocated as follows:

(a)    *Delayed Draw Loans.*  A delayed draw term loan facility in an aggregate principal amount of up to $20.0 million (the "<u>Delayed Draw Commitments</u>") (which is inclusive of Incremental Commitments (as defined in the DIP Credit Agreement) of up to $5.0 million) with (i) $6.0 million of the Delayed Draw Commitments available to be funded in cash upon entry of this Interim Order; and (ii) the remaining $14.0 million of the Delayed Draw Commitments available following entry of the Final Order, subject in each case to the DIP Loan Parties' satisfaction of applicable draw conditions pursuant to the terms of the DIP Loan Documents (as defined below); and

(b)    *Refinance of the Prepetition Revolving Debt.*  A superpriority term loan facility in the aggregate principal amount of $14.1 million to refinance the outstanding amount of the Prepetition Revolving Debt (as defined below).

---

[3]    Pernix Ireland Limited ("<u>PIL</u>"), Pernix Ireland Pain Designated Activity Company ("<u>PIP DAC</u>") and Pernix Manufacturing, LLC are not DIP Guarantors.

(ii)    authorizing the Debtors to use the proceeds of the DIP Facility as provided in the DIP Loan Documents and solely in accordance with the Approved Budget, including use of the proceeds of the DIP Facility and Cash Collateral (as defined below), to refinance and discharge the Prepetition Revolving Debt outstanding as of the entry of this Interim Order in full, including postpetition interest and fees through the date of repayment, which refinancing and discharge shall be indefeasible upon the occurrence of the Revolver Discharge (as defined below);

(iii)    authorizing the DIP Loan Parties to execute and enter into the DIP Loan Documents and to perform such other and further acts as may be required in connection with the DIP Loan Documents;

(iv)    authorizing the Debtors to use Cash Collateral and all other Prepetition Collateral on the terms and conditions set forth in this Interim Order, the DIP Loan Documents, and the Intercreditor Agreement;

(v)    authorizing the DIP Loan Parties to grant adequate protection to the Prepetition Secured Parties and Prepetition Agents under and in connection with the Prepetition Financing Documents or the TSA, as applicable, and this Interim Order, including without limitation, granting the Adequate Protection Liens (as defined below) in accordance with the relative priorities set forth herein;

(vi)    authorizing the DIP Loan Parties to grant security interests, liens and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code) in favor of the DIP

Agent, for the benefit of itself and the DIP Lenders, to secure the repayment of all obligations of the DIP Loan Parties under the DIP Facility and the DIP Loan Documents;

(vii)    authorizing the DIP Agent, upon the occurrence of a Termination Event and following the Default Notice Period, to, *inter alia*, (a) terminate the funding commitments, accelerate the amounts owing under the DIP Loan Documents and exercise other remedies set forth thereunder, and (b) terminate the Debtors' use of Cash Collateral in accordance with this Interim Order, the Intercreditor Agreement, and the DIP Loan Documents;

(viii)    authorizing the Debtors, subject to entry of the Final Order, to waive their right to (a) any claims to surcharge against the DIP Collateral and the Prepetition Collateral pursuant to Bankruptcy Code section 506(c), (b) any "equities of the case" claims under Bankruptcy Code section 552(b), and (c) the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral and the Prepetition Collateral;

(ix)    authorizing the Debtors to modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents, the Interim Order, and as later applicable, the Final Order;

(x)    authorizing the waiver of any applicable stay (including Bankruptcy Rule 6004) and the provision of immediate effectiveness of this Interim Order, and as later applicable, the Final Order; and

(xi)    scheduling a final hearing (the "Final Hearing") to consider entry of the Final Order; and granting related relief.

The Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having

found that the Debtors' notice of the Motion and the opportunity for a hearing on the Motion was

appropriate and no other notice need be provided; and the Court having reviewed the Motion, the

exhibits thereto, and the documents filed in support thereof and any responses thereto, and

having heard the statements in support of the relief requested therein at a hearing before the

Court on _____ __, 2019 (the "Interim Hearing"); and the Court having determined that the

legal and factual bases set forth in the Motion, the *Declaration of John A. Sedor in Support of the*

*Debtors' Chapter 11 Petitions and First Day Pleadings* (Docket No. 3) (the "Sedor

Declaration"), and the *Declaration of Stuart Erickson in Support of Motion of Debtors for*

*Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing and (b)*

*to Use Cash Collateral, (II) Granting Adequate Protection to Certain Prepetition Secured*

*Parties, (III) Scheduling a Final Hearing and (IV) Granting Related Relief,* attached as Exhibit A

to the Motion (the "Erickson Declaration"), and at the Interim Hearing establish just cause for

the relief granted herein; and upon all of the proceedings had before the Court; and after due

deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND AND**

**CONCLUDED THAT:**

      A.    Disposition.  The Motion is granted on an interim basis in accordance with the

terms of this Interim Order.  Any objections to the Motion with respect to the entry of the Interim

Order that have not been withdrawn, waived or settled are hereby denied and overruled on their

merits.

      B.    Commencement of Cases.  On February 18, 2019 (the "Petition Date"), the

Debtors filed with this Court voluntary petitions for relief under Chapter 11 of the Bankruptcy

Code.  The Debtors are in possession of their properties and are continuing to operate their

businesses as debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy

Code.  No official committee of unsecured creditors (a "Committee") has been appointed in the above-captioned cases (the "Chapter 11 Cases").

C.      Jurisdiction and Venue.  This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue of the Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief sought herein are Bankruptcy Code sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e), and 507, Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2.

D.      Adequate Notice.  On the Petition Date, the Debtors filed the Motion with this Court pursuant to Bankruptcy Rules 2002, 4001 and 9014, and provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the following parties or, in lieu thereof, their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (b) each of the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (c) the Prepetition Treximet Notes Trustee; (d) Highbridge (as defined in the Sedor Declaration); (e) all parties asserting a security interest in the DIP Collateral to the extent any such interest is known to the Debtors; (f) Nalpropion Pharmaceuticals, Inc. ("Nalpropion") and (g) all parties requesting service in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Given the nature of the relief sought in the Motion, this Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules,

the Local Rules and any other applicable law, and no further notice relating to this proceeding and the hearing on this Motion is necessary or required.

      E.      <u>Debtors' Stipulations</u>.  Subject to the rights of any Committee or other parties-in-interest as and to the extent set forth in paragraph 33 below, the Debtors acknowledge, admit, represent, stipulate and agree that:

      (i)      *Prepetition Term Facility.*  Pursuant to that certain Credit Agreement, dated as of July 21, 2017 (as the same has been amended, amended and restated, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, the "<u>Prepetition Term Credit Agreement</u>"), by and among, PIP DAC, as borrower, the lenders party thereto (the "<u>Prepetition Term Lenders</u>"), Cantor Fitzgerald Securities as the administrative agent (in such capacity, the "<u>Prepetition Term Agent</u>"), the Prepetition Term Lenders made loans pursuant to the Prepetition Term Credit Agreement to PIP DAC, and otherwise extended credit to PIP DAC.  As of the Petition Date, PIP DAC was justly and lawfully indebted and liable to the Prepetition Term Lenders, without defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of not less than approximately $39.2 million, plus an additional $1.1 million of accrued pay-in-kind interest, under and in connection with, the Prepetition Term Credit Agreement, including all other agreements, documents and instruments executed and/or delivered with, to or in favor of the Prepetition Term Lenders, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto (all the foregoing, together with the Prepetition Term Credit Agreement, the "<u>Prepetition Term Financing Documents</u>").  All obligations arising under

the Prepetition Term Financing Documents shall hereinafter be referred to as the "Prepetition Term Obligations."

(ii)    *Prepetition Term Liens.*  Pursuant to the Prepetition Term Financing Documents, PIP DAC granted to the Prepetition Term Agent for the benefit of the Prepetition Term Lenders to secure the Prepetition Term Obligations, a first-priority security interest in and continuing lien (the "Prepetition Term Liens") on all Collateral (as defined in the Prepetition Term Credit Agreement) (the "Prepetition Term Collateral"), subject to Permitted Liens (as defined in the Prepetition Term Credit Agreement).

(iii)    *Validity of Prepetition Term Liens.*  The Prepetition Term Liens (a) constitute valid, binding, enforceable, nonavoidable, properly perfected, first-priority liens on the Prepetition Term Collateral, that are senior in priority (except for any senior Permitted Liens, as defined in and to the extent expressly permitted under the Prepetition Term Credit Agreement) over any and all other liens on the Prepetition Term Collateral; and (b) are not subject to avoidance, reductions, recharacterization, set-off, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation.

(iv)    *Prepetition Treximet Notes.*  Pursuant to that certain Indenture, dated as of August 19, 2014 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Treximet Notes Indenture"), among Pernix, as Issuer, each other Debtor other than PIP DAC, as guarantors (together with the Issuer, the "Prepetition Treximet Notes Parties"), and U.S. Bank National Association, as Trustee and Collateral Trustee (the "Prepetition Treximet Notes Trustee"), Pernix issued 12% senior secured notes (the "Prepetition Treximet Notes" and the holders of the Prepetition Treximet Notes, the "Prepetition Treximet

Noteholders"). As of the Petition Date, the Prepetition Treximet Notes Parties are justly and

lawfully indebted and liable, without defense, counterclaim, recoupment or offset of any kind, in

the aggregate principal amount of not less than approximately $154 million of the Prepetition

Treximet Notes, under and in connection with the Prepetition Treximet Notes Indenture,

including all other agreements, documents and instruments executed and/or delivered with,

including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform

Commercial Code financing statements, documents and instruments, including any fee letters,

executed and/or delivered in connection therewith or related thereto (all the foregoing, together

with the Prepetition Treximet Notes Indenture, the "Prepetition Treximet Notes Financing

Documents"). All obligations arising under the Prepetition Treximet Notes Financing

Documents shall hereinafter be referred to as the "Prepetition Treximet Notes Obligations".

      (v)    *Prepetition Treximet Notes Liens.* Pursuant to the Prepetition Treximet

Notes Financing Documents, PIL granted to the Prepetition Treximet Notes Trustee to secure the

Prepetition Treximet Notes Obligations, a continuing first-priority security interest (the

"Prepetition Treximet Notes Liens") in substantially all of the assets of PIL related to Treximet

other than the ABL Collateral (as defined in the Prepetition Treximet Notes Indenture) (the

"Prepetition Treximet Notes Collateral"), subject to Permitted Liens (as defined in the

Prepetition Treximet Notes Indenture).

      (vi)    *Validity of Prepetition Treximet Notes Liens.* The Prepetition Treximet

Notes Liens (a) constitute valid, binding, enforceable, nonavoidable, properly perfected, first-

priority liens in the Prepetition Treximet Notes Collateral for the benefit of the Prepetition

Treximet Noteholders; and (b) are not subject to avoidance, reductions, recharacterization, set-

off, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims,

defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation.

(vii)    *Prepetition Revolving Facility*.  Pursuant to that certain Credit Agreement, dated as of July 21, 2017 (as the same has been amended, amended and restated, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, the "Prepetition Revolving Credit Agreement"), by and among Pernix and certain of its affiliates (collectively, "Prepetition Revolving Borrowers"), certain subsidiary guarantors (together with the Prepetition Revolving Borrowers, the "Prepetition Revolving Credit Parties"), the lenders thereto (the "Prepetition Revolving Lenders"), and Cantor Fitzgerald Securities as the administrative agent (in such capacity, the "Prepetition Revolving Agent," and together with the Prepetition Term Agent, the "Prepetition Agents"), the Prepetition Revolving Lenders agreed to extend a revolving asset-based credit facility (the "Prepetition Revolving Facility") to the Prepetition Revolving Borrowers from time to time, including, *inter alia*, the Prepetition Revolving Obligations in an aggregate principal committed amount of up to $40 million.  As of the Petition Date, the Prepetition Revolving Credit Parties are truly and justly indebted to the Prepetition Revolving Lenders, without defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of not less than approximately $14.1 million (the "Prepetition Revolving Debt"), under and in connection with, the Prepetition Revolving Credit Agreement, including all other agreements, documents and instruments executed and/or delivered with, to or in favor of the Prepetition Revolving Lenders, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto (all the foregoing, together with Prepetition Revolving Credit

Agreement, the "Prepetition Revolving Financing Documents"). All obligations arising under the Prepetition Revolving Financing Documents shall hereinafter be referred to as the "Prepetition Revolving Obligations."

(viii)  *Prepetition Revolving Liens.* Pursuant to the Prepetition Revolving Financing Documents, the Prepetition Revolving Borrowers granted to the Prepetition Agent for the benefit of the Prepetition Revolving Lenders to secure the Prepetition Revolving Obligations, a first-priority security interest in and continuing lien (the "Prepetition Revolving Liens") on all Collateral (as defined in the Prepetition Revolving Credit Agreement) (the "Prepetition Revolving Collateral").

(ix)  *Validity of Prepetition Revolving Liens.* The Prepetition Revolving Liens (a) constitute valid, binding, enforceable, nonavoidable, properly perfected, first-priority liens on the Prepetition Revolving Collateral, that prior to entry of this Interim Order, were senior in priority (except for any senior Permitted Liens, as defined in and to the extent expressly permitted under the Prepetition Revolving Credit Agreement) over any and all other liens on the Prepetition Revolving Collateral; and (b) are not subject to avoidance, reductions, recharacterization, set-off, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation.

(x)  *Prepetition Nalpropion Second Liens.* Pursuant to that Transitional Distribution Services Agreement, dated January 6, 2019 (as the same has been amended, amended and restated, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, the "TSA"), between Pernix Therapeutics, LLC ("Pernix Therapeutics") and Nalpropion, Pernix Therapeutics granted to Nalpropion to secure the

complete and prompt payment and performance of all the Secured Obligations (as defined in the TSA, the "Nalpropion Secured Obligations"), a second-priority security interest in and continuing lien (the "Prepetition Nalpropion Liens," and together with the Prepetition Term Liens and Prepetition Revolving Liens, the "Prepetition Liens") on certain assets relating to the pharmaceutical assets and proceeds thereof that are subject to the TSA (such assets granted or pledged as "Collateral" pursuant to the TSA, the "Nalpropion Collateral" and together with the Prepetition Revolving Collateral and Prepetition Term Collateral, the "Prepetition Collateral"). All obligations arising under the Prepetition Revolving Financing Documents, Prepetition Term Financing Documents, and the TSA (collectively, the "Prepetition Financing Documents") shall hereinafter be referred to as the "Prepetition Obligations."

(xi)    *Validity of Prepetition Nalpropion Liens.*  The Prepetition Nalpropion Liens (a) constitute valid, binding, enforceable, nonavoidable, properly perfected, second-priority liens in the Nalpropion Collateral; and (b) are not subject to avoidance, reductions, recharacterization, set-off, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation.

(xii)    *Intercreditor Agreement.*  The Prepetition Revolving Agent and Nalpropion are parties to that certain Intercreditor Agreement, dated January 6, 2019 (as the same may be amended, restated, supplemented, waived and/or otherwise modified from time to time in accordance with the terms thereof, the "Intercreditor Agreement"), which governs the respective rights, obligations and priorities of the Prepetition Revolving Lenders and Nalpropion with respect to certain Prepetition Collateral.  The DIP Loan Parties have acknowledged and

agreed to be bound by the terms of the Intercreditor Agreement, which is binding and enforceable against the DIP Loan Parties.

(xiii)    *No Claims.*  The Debtors have no valid claims (as such term is defined in Bankruptcy Code section 101(5)) or causes of action against, or with respect to, the Prepetition Revolving Lenders, Prepetition Term Lenders, Nalpropion (collectively, with the Prepetition Revolving Lenders and the Prepetition Term Lenders, the "Prepetition Secured Parties"), the Prepetition Agents, the Prepetition Treximet Notes Trustee or the Prepetition Treximet Noteholders under any agreements by and among the Debtors and any party that is in existence as of the Petition Date, including without limitation, any challenge, recharacterization, subordination, avoidance or other claims arising under or pursuant to Bankruptcy Code sections 105, 510, 541 or 542 through 553, other than any claim that constitutes a right to payment arising pursuant to and in accordance with the terms of the Services Agreement (as defined in the Sedor Declaration) or the TSA.  As of the date hereof, the net balance of such claims due and owing to the Debtors by Nalpropion under the Services Agreement or the TSA is equal to $0.

(xiv)    *Indemnity.*  The Debtors shall indemnify and hold harmless the DIP Agent, the DIP Lenders and each other Indemnified Person (as defined in the DIP Credit Agreement) in accordance with the terms and conditions of the DIP Credit Agreement.

(xv)    *Release.*  The Debtors hereby stipulate and agree that they forever and irrevocably release, discharge and acquit the DIP Agent, Prepetition Agents, Prepetition Treximet Notes Trustee, all former, current and future Prepetition Secured Parties, Prepetition Treximet Noteholders and DIP Lenders, in each case in their capacities as such, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents, past, present and future, and their respective heirs, predecessors,

successors and assigns (collectively, the "Releasees") of and from any and all claims,
controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without
limitation, reasonable attorneys' fees), debts, liens, actions and causes of action of any and every
nature whatsoever, in each case arising prior to the date hereof, and relating to, as applicable, the
DIP Facility, the DIP Loan Documents, Prepetition Financing Documents, the Prepetition
Treximet Notes Financing Documents and/or the transactions contemplated thereunder including,
without limitation, (x) any so-called "lender liability" or equitable subordination claims or
defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z)
any and all claims and causes of action with respect to the validity, priority, perfection or
avoidability of the liens or claims of the Prepetition Secured Parties, Prepetition Agents,
Prepetition Treximet Noteholders, Prepetition Treximet Notes Trustee, DIP Agent and the DIP
Lenders.  The Debtors further waive and release any defense, right of counterclaim, right of set-
off or deduction to the payment of Prepetition Secured Parties, Prepetition Treximet Noteholders
and the DIP Lenders which the Debtors now have or may claim to have against the Releasees,
arising out of, connected with or relating to any and all acts, omissions or events occurring prior
to this Court entering this Interim Order.  Notwithstanding the foregoing, nothing in this Interim
Order shall release or otherwise affect Nalpropion's contractual payment obligations to the
Debtors arising pursuant to and in accordance with the terms of the Services Agreement or the
TSA.

(xvi)   *Limitation of Liability.*  None of the Prepetition Secured Parties,
Prepetition Agents, Prepetition Treximet Notes Trustee, Prepetition Treximet Noteholders, DIP
Agent, or the DIP Lenders are control persons or insiders of the Debtors or any of their affiliates
by virtue of any of the actions taken with respect to, in connection with, related to, or arising

from the DIP Facility, the DIP Loan Documents, the Prepetition Financing Documents and/or the Prepetition Treximet Notes Financing Documents. The DIP Lenders shall not, by virtue of making the DIP Loans, be deemed to be in control of the operations of Debtors, to owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Debtors.

(xvii)    Any payment or obligation requested to be made by the Debtors in connection with the First Day Motions (as defined in the Sedor Declaration) is expressly provided for in the Approved Budget (as defined below).

F.    Cash Collateral. For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral" as defined in Bankruptcy Code section 363, in which the Prepetition Secured Parties have a lien or security interest, in each case whether existing on the Petition Date, arising pursuant to this Interim Order or any Final Order, or otherwise. The Debtors represent and stipulate that all of the cash, cash equivalents, negotiable instruments, investment property, and securities of the Prepetition Revolving Borrowers constitute Cash Collateral.

G.    Use of DIP Facility and Cash Collateral. The Debtors have an immediate and critical need to use proceeds of the DIP Facility and Cash Collateral to, among other things, continue to operate their business in an orderly manner, maintain business relationships with vendors, fund the Debtors' marketing and sale process, and to satisfy other working capital and operational needs. Without the use of proceeds of the DIP Facility and Cash Collateral, the Debtors will have insufficient liquidity to conduct a successful sale process and otherwise preserve and maximize the value of the Debtors' estates. The adequate protection provided

herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent and to adequately protect the parties' interests in the Prepetition Collateral. Absent authorization to immediately use proceeds of the DIP Facility and Cash Collateral, the Debtors' estates and their creditors would suffer immediate and irreparable harm.

H.    Other Financing Unavailable. As discussed in the Erickson Declaration, the Debtors are unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(l) of the Bankruptcy Code or (b) under section 364(c)(l) of the Bankruptcy Code; (ii) adequate credit secured by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code or (y) a junior lien on encumbered assets of their estates under section 364(c)(3) of the Bankruptcy Code; or (iii) secured credit under section 364(d)(l) of the Bankruptcy Code on terms more favorable than the terms of the DIP Facility. The Debtors require financing under the DIP Facility and the continued use of Cash Collateral under the terms of this Interim Order to satisfy their post-petition liquidity needs.

I.    Best Financing Presently Available. The DIP Agent and the DIP Lenders have agreed to provide the Debtors with financing solely on the terms and conditions set forth in this Interim Order (and, subject to entry by the Court, the Final Order) and the other DIP Loan Documents. After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Lenders pursuant to the terms of this Interim Order (and, subject to entry by the Court, the Final Order) and the other DIP Loan Documents, represents the best financing presently available to the Debtors.

J.    <u>Good Cause for Immediate Entry</u>.  Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2.  In particular, the authorization granted herein for the Debtors to enter into the DIP Facility, to continue using Cash Collateral and to obtain interim financing, including on a priming lien basis, is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  Entry of this Interim Order is in the best interest of the Debtors, their estates and creditors.  The extensions of credit under the DIP Facility (including the Debtors' continued use of Cash Collateral) are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

K.    <u>Good Faith and Arm's Length Negotiation</u>.  The DIP Lenders are good faith financiers.  The Debtors, DIP Agent, and DIP Lenders have negotiated the terms and conditions of the DIP Facility and this Interim Order in good faith and at arm's length, and any credit extended and loans made to the DIP Loan Parties pursuant to this Interim Order shall be, and hereby are, deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

L.    <u>Application of Proceeds of the DIP Collateral</u>.  Subject to and effective upon entry of the Final Order, and notwithstanding anything to the contrary herein, the Debtors shall apply the cash proceeds from any sale of the DIP Collateral outside of the ordinary course of business to repay the then-outstanding amount of the DIP Obligations, with interest being paid first followed by principal, and any remaining proceeds in accordance with this Interim Order and the DIP Loan Documents.

M.    <u>Adequate Protection for the Prepetition Secured Parties</u>.  The Prepetition Secured

Parties and Prepetition Agents have negotiated and acted in good faith regarding the DIP Facility

and the Debtors use of Cash Collateral to fund the administration of the Debtors' estates and

continued operation of their businesses.  The Prepetition Secured Parties have agreed to permit

the Debtors to use the Prepetition Collateral, including the Cash Collateral, in accordance with

the terms hereof, the Approved Budget subject to Permitted Variances (each as defined below),

and the Intercreditor Agreement.  The Prepetition Secured Parties are entitled to the adequate

protection provided in this Interim Order as and to the extent set forth herein pursuant to

Bankruptcy Code sections 361, 362 and 363.  Based on the Motion and on the record presented

to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements

and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable,

reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent

value and fair consideration for the consent thereto of the Prepetition Collateral (including the

Cash Collateral); <u>provided</u>, that nothing in this Interim Order or the other DIP Loan Documents

shall (x) be construed as a consent by the Prepetition Secured Parties (or their respective agents)

that they would be adequately protected in the event debtor-in-possession financing is provided

by a third party (i.e., other than the DIP Lenders) or a consent to the terms of any other such

financing or any lien encumbering the DIP Collateral (whether senior or junior) or to the use of

Cash Collateral except as provided in this Interim Order and the DIP Loan Documents, or (y)

prejudice, limit or otherwise impair the rights of the Prepetition Secured Parties to seek new,

different or additional adequate protection in the event circumstances change after the date

hereof (subject to the Intercreditor Agreement).

N.      Sections 506(c) and 552(b).  In light of the Prepetition Secured Parties agreement
to subordinate their liens and claims to the Carve-Out, the DIP Liens, and the Adequate
Protection Liens, to permit the use of the DIP Facility and Cash Collateral for payments made in
accordance with the Approved Budget and the terms of this Interim Order, subject to entry of a
Final Order, the Prepetition Secured Parties are entitled to a waiver of (a) the provisions of
Bankruptcy Code section 506(c), and (b) any "equities of the case" claims under Bankruptcy
Code section 552(b).

O.      Order of the Court.  Based upon the foregoing findings, acknowledgements, and
conclusions, and upon the record made before this Court at the Interim Hearing, and good and
sufficient cause appearing therefor:

**IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED AND DECREED**
**THAT:**

1.      Motion Granted.  The Motion is granted on an interim basis, subject to the terms
set forth herein.  Any objections to the Motion with respect to the entry of the Interim Order that
have not previously been withdrawn or resolved are hereby denied and overruled on their merits.
This Interim Order shall be valid, binding on all parties in interest, and fully effective
immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h),
7062 and 9014.

2.      Authority to Enter Into the DIP Loan Documents.  The DIP Loan Parties are
hereby authorized to incur and perform the obligations arising from and after the date of this
Interim Order under the DIP Facility, on the terms set forth in this Interim Order and the DIP
Credit Agreement, and such additional documents, instruments and agreements as may be
reasonably required by the DIP Agent to implement the terms or effectuate the purposes of and

transactions contemplated by this Interim Order, the Final Order (when entered by the Court) and the DIP Credit Agreement (collectively, this Interim Order, the Final Order, the Approved Budget, the DIP Credit Agreement, the Guarantee and Security Agreement (as defined in the DIP Credit Agreement) and such other additional documents, instruments and agreements, including any fee letters, the "DIP Loan Documents").  Subject to paragraph 20 of this Interim Order, the DIP Loan Parties are hereby authorized to borrow money under the applicable DIP Loan Documents, on an interim basis, and perform all other obligations thereunder, provided that until the entry of the Final Order, the DIP Loan Parties are only authorized to borrow an aggregate principal amount of up to $20.1 million, comprised of (i) $6.0 million in Delayed Draw Commitments, and (ii) $14.1 million to refinance the outstanding amounts owed under the Prepetition Revolving Facility.  In furtherance of the forgoing and without further approval of the Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution and delivery of security agreements, mortgages and financing statements), and to pay all fees that may be reasonably required or necessary for the DIP Loan Parties' performance of their obligations under or related to the DIP Facility.

3.      Refinancing of Prepetition Revolving Facility.  Subject to the rights of any Committee or other parties-in-interest as and to the extent set forth in paragraph 33 below, the Debtors are hereby authorized to use proceeds of the DIP Facility and Cash Collateral to pay in full the Prepetition Revolving Debt.  The Prepetition Revolving Liens shall be automatically released and terminated upon the Revolver Discharge.[4]  Until then, subject to the terms and

---

[4]    "Revolver Discharge" means the indefeasible refinancing of the Prepetition Revolving Debt in full, including postpetition interest and fees through the date of repayment (at the non-default contract rate), which shall be deemed to have occurred if no adversary proceeding or contested matter is timely and properly asserted in

*(cont'd)*

conditions contained in this Interim Order (including, without limitation, the DIP Liens (as

defined below) granted hereunder and the Carve-Out (as defined below)), any and all prepetition

or postpetition liens and security interests (including, without limitation, any adequate protection

replacement liens at any time granted to the Prepetition Revolving Lenders by this Court) that

the Prepetition Revolving Lenders have or may have in the Prepetition Revolving Collateral shall,

subject to paragraph 33 of this Interim Order, (a) continue to secure the unpaid portion of the

Prepetition Revolving Facility (including, without limitation, any Prepetition Revolving

Obligations subsequently reinstated after the repayment thereof because such payment (or any

portion thereof) is required to be returned or repaid, and the liens securing the Prepetition

Revolving Facility shall not have been avoided) and (b) be junior and subordinate in all respects

to the Carve-Out and the DIP Liens (such junior liens and security interests of the Prepetition

Revolving Lenders, other than the Prepetition Revolving Adequate Protection Liens, are

hereinafter referred to as the "Contingent Revolving Liens," and any such reinstated Prepetition

Revolving Debt described in clause (a) of this paragraph is hereinafter referred to as the

"Contingent Prepetition Revolving Debt").

4. <u>Use of Cash Collateral and DIP Loans</u>.  The Debtors are hereby authorized to use

Cash Collateral and the proceeds of any DIP Loans (as defined below) solely in accordance with

the Approved Budget, this Interim Order, the DIP Loan Documents, and the Intercreditor

Agreement.

---

*(cont'd from previous page)*

accordance with this Interim Order with respect to the Prepetition Revolving Debt or against the Prepetition
Revolving Agent or the Prepetition Revolving Lenders, or if an adversary proceeding or contested matter is
timely and properly asserted, upon the final disposition of such adversary proceeding or contested matter in
favor of the Prepetition Revolving Lenders by order of a court of competent jurisdiction; *provided* that all
amounts of interest outstanding as of the Petition Date shall be waived by the Prepetition Revolving Lenders.

5.     <u>Validity of DIP Loan Documents</u>.  The DIP Loan Documents shall constitute valid and binding obligations of the DIP Loan Parties, enforceable against each DIP Loan Party thereto in accordance with the terms thereof.  No obligation, payment, transfer or grant of security under the DIP Loan Documents as approved under this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.     <u>DIP Loans</u>.  All loans made to or for the benefit of any of the DIP Loan Parties on or after the Petition Date in accordance with the DIP Loan Documents (collectively, the "<u>DIP Loans</u>"), (a) shall be evidenced by the books and records of the DIP Agent or the DIP Lenders and, upon the request of any DIP Lender, a note executed and delivered to such DIP Lender by the Borrower in accordance with the terms of the DIP Loan Documents, which note shall evidence such DIP Lender's DIP Loans in addition to such accounts and records; (b) shall bear interest payable and incur fees at the rates set forth in the DIP Credit Agreement; (c) shall be secured in the manner specified below; (d) shall be payable in accordance with the DIP Loan Documents; and (e) shall otherwise be governed by the terms set forth in this Interim Order and the other DIP Loan Documents.  All interest thereon and all fees, costs, expenses, indemnification obligations and other liabilities owing by the DIP Loan Parties to the DIP Lenders or the DIP Agent in accordance with and relating to this Interim Order and the other DIP Loan Documents shall hereinafter be referred to as the "<u>DIP Obligations</u>."

7.     <u>Conditions Precedent</u>.  The DIP Lenders and the DIP Agent shall have no obligation to make any DIP Loans or any other financial accommodation under the DIP Loan Documents unless the conditions precedent to make such extensions of credit under the DIP

Loan Documents have been satisfied in full or waived in accordance with such DIP Loan Documents.

8.    <u>Approved Budget</u>.

(a)    The budget attached hereto as <u>Exhibit 1</u> is hereby approved.  Proceeds of the DIP Loans and Cash Collateral under this Interim Order shall be used by the Debtors only in accordance with the Approved Budget[5] and this Interim Order, subject to any Permitted Variances.  Subject to the Carve-Out, the DIP Lenders' consent to the Approved Budget shall not be construed as consent to the use of DIP Loans or Cash Collateral beyond the occurrence of a Termination Event (as defined below), regardless of whether the aggregate funds shown on the Approved Budget have been expended.

(b)    Subject to paragraph 32 of this Interim Order, upon the written consent of the DIP Lenders and the Debtors, and without further order of the Court, the Approved Budget may be amended from time to time.  The Debtors shall provide a copy of any so amended revised budget to the U.S. Trustee and counsel to the Committee, if any.

9.    <u>Permitted Variance</u>.

(a)    Compliance with the Approved Budget shall be tested on a cumulative basis, beginning the fourth week after the Petition Date and each subsequent week thereafter. For each Budget Test Period[6], the Borrower will not permit:

---

[5]    "<u>Approved Budget</u>" means (i) the initial budget projecting operations for the ensuing thirteen (13) week period, including cash flow, forecasts of receipts, and disbursements, attached hereto as <u>Exhibit 1</u>, and (ii) each subsequent thirteen (13) week cash flow forecast of receipts and disbursements (in substantially the same format as the prior monthly cash flow forecast of receipts and disbursements) submitted by the Borrower to the DIP Lenders no less frequently than once every four (4) weeks commencing on the Thursday of the fourth (4th) week following the Petition Date.

[6]    "<u>Budget Test Period</u>" means the period, commencing on the Monday of the first week following the Petition Date, during which the Borrower's compliance with each Approved Budget shall be tested in accordance with the terms of this Interim Order or the Final Order.

(i)    the actual aggregate amount of net receipts collected to be less than 80% of the aggregate budgeted amount of net receipts set forth in the Approved Budget for such Budget Test Period ("Net Receipt Permitted Variance"); provided that the Required Lenders (as defined in the DIP Credit Agreement) may authorize the Borrower in writing to exceed the Net Receipt Permitted Variance for any Budget Test Period; or

(ii)    the actual aggregate amount of disbursements to be more than 120% of the aggregate budgeted amount of disbursements for such Budget Test Period set forth in the Approved Budget (excluding the fees and expenses of the DIP Lenders that are required to be reimbursed under the other provisions of this Agreement) ("Disbursements Permitted Variance" and together with the Net Receipt Permitted Variance, the "Permitted Variances"); provided that the Required Lenders (as defined in the DIP Credit Agreement) may authorize the Borrower in writing to exceed the Disbursements Permitted Variance for any Budget Test Period.

(b)    The Borrower shall deliver a Budget Reconciliation (as defined below) to the DIP Lenders in accordance with the terms of paragraph 45. In addition, the Borrower shall notify the DIP Lenders in writing as soon as reasonably practicable if the Borrower anticipates that it will violate the Net Receipt Permitted Variance or the Disbursements Permitted Variance for any Budget Test Period.

(c)    In the event that the Borrower projected a disbursement in the budget which is instead taken as a deduction to receipts, or vice versa, the Borrower will be permitted to apply the actual results to the category it was originally projected for budget testing purposes.

10.    <u>Continuation of Prepetition Liens</u>. Until (a) the Debtors have indefeasibly paid in full and in cash all DIP Obligations, all Prepetition Obligations and all Prepetition Treximet Notes Obligations, (b) the DIP Lenders' obligations under the DIP Facility have terminated, (c)

all objections and challenges to (i) the liens and security interests of the Prepetition Secured

Parties (including, without limitation, liens granted for adequate protection purposes) and the

Prepetition Treximet Noteholders, and (ii) the Prepetition Obligations and Prepetition Treximet

Notes Obligations, have been waived, denied or barred, and (d) all of the Debtors' stipulations

contained in this Interim Order have become binding upon their estates and parties in interest in

accordance with paragraph 33 below, all liens and security interests of the Prepetition Secured

Parties (including, without limitation, liens granted for adequate protection purposes) and the

Prepetition Treximet Noteholders shall remain valid and enforceable with the same continuing

priority as described herein; provided, that this paragraph shall not apply to any liens or security

interests of the Prepetition Secured Parties or the .Prepetition Treximet Noteholders to the extent

any such liens are successfully challenged in accordance with paragraph 33 below; provided,

further, that all Prepetition Revolving Liens and Contingent Revolving Liens shall be

indefeasibly released upon the Revolver Discharge.

11.    DIP Liens and Collateral.  Effective immediately upon entry of this Interim Order,

pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, and without the

necessity of the execution by the DIP Loan Parties (or recordation or other filing or notice) of

security agreements, control agreements, pledge agreements, copyright security agreements,

trademark security agreements, patent security agreements, financing statements, mortgages,

schedules or other similar documents, or the possession or control by the DIP Agent or any other

DIP Lenders of any DIP Collateral, the DIP Agent is hereby granted, as collateral agent for the

DIP Lenders, continuing valid, binding, enforceable, non-avoidable, priming and automatically

and properly perfected, *nunc pro tunc* to the Petition Date, post-petition security interests in and

liens (the "DIP Liens") on any and all owned and hereafter acquired assets and real and personal

property of the DIP Loan Parties (the "DIP Collateral"), including, without limitation, the

following: (a) all Prepetition Revolving Collateral; (b) all Nalpropion Collateral; (c) all money,

accounts, chattel paper, deposit accounts, documents, equipment, contract rights, general

intangibles, payment intangibles, instruments, inventory, patents, trademarks, copyrights, and

licenses therefor, letter-of-credit rights, and investment property and support obligations;

(d) commercial tort claims; (e) all books and records pertaining to the other property described in

this paragraph; (f) all property of such DIP Loan Party held by any DIP Lenders, including all

property of every description, in the custody of or in transit to such DIP Lender for any purpose,

including safekeeping, collection or pledge, for the account of such DIP Loan Party or as to

which such DIP Loan Party may have any right or power, including but not limited to cash;

(g) all other goods (including but not limited to fixtures) and personal property of such DIP Loan

Party, whether tangible or intangible and wherever located; and (h) to the extent not covered by

the foregoing, all other assets or property of the DIP Loan Parties, whether tangible, intangible,

real, personal or mixed, and all proceeds and products of each of the foregoing and all accessions

to, substitutions and replacements for, and rents, profits and products of, each of the foregoing,

any and all proceeds of any insurance, indemnity, warranty or guaranty payable to any DIP Loan

Party from time to time with respect to any of the foregoing, and in each case to the extent of any

such DIP Loan Party's respective interest therein; provided, however, the DIP Collateral shall

not include (i) Excluded Property (as defined in the DIP Credit Agreement) but shall include any

proceeds of Excluded Property that do not otherwise constitute Excluded Property in their own

right; (ii) all claims and causes of action under Chapter 5 of the Bankruptcy Code or any other

avoidance actions under the Bankruptcy Code, whether pursuant to federal law or applicable

state law (collectively, the "Avoidance Actions") of the DIP Loan Parties, provided, however

that DIP Collateral shall include, subject to entry of the Final Order all proceeds of any

Avoidance Actions ("Avoidance Proceeds"); (iii) the Prepetition Treximet Notes Collateral; and

(iv) the Prepetition Term Collateral.  The DIP Liens shall not, without the consent of the DIP

Agent, be made subject to, or *pari passu* with, any other lien or security interest (other than to

the extent expressly provided herein and subject to the Carve-Out, or by any court order

heretofore or hereafter entered in the Chapter 11 Cases) and shall be valid and enforceable

against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter

11 Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to

any of the foregoing (such cases or proceedings, "Successor Cases"), and/or upon the dismissal

of any of the Chapter 11 Cases.  The DIP Liens, Prepetition Liens (subject to investigation), and

Adequate Protection Liens shall not be subject to sections 510, 549, 550 or 551 of the

Bankruptcy Code or, subject to and effective upon entry of the Final Order, the "equities of the

case" exception of section 552 of the Bankruptcy Code or section 506(c) of the Bankruptcy Code.

   12. Priority of DIP Liens.

   (a) The DIP Liens (i) shall constitute first-priority security interests in and

liens upon all the DIP Collateral that is not otherwise subject to any valid, perfected, enforceable

and nonavoidable lien in existence as of the Petition Date, pursuant to section 364(c)(2) of the

Bankruptcy Code; and (ii) shall, pursuant to section 364(c)(3) and 364(d)(1) of the Bankruptcy

Code, be senior to and prime all other liens and security interests in the DIP Collateral, including,

without limitation, the Prepetition Revolving Liens, Prepetition Nalpropion Liens, and Adequate

Protection Liens, and shall be junior only to (I) any pre-existing liens as of the Petition Date held

by a third party other than the Prepetition Revolving Lenders or Nalpropion, but solely to the

extent that such liens and security interests were, in each case, as of the Petition Date (x) valid,

enforceable, perfected and non-avoidable liens or were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and (y) expressly permitted by the terms of the Prepetition Revolving Financing Documents and senior to the Prepetition Revolving Liens (the "Permitted Prior Liens") and (II) validly existing statutory liens that existed in the Prepetition Revolving Collateral as of the Petition Date (together with the Permitted Prior Liens, the "Prior Liens").

(b)     The following table sets forth the relative priorities of the Carve-Out, Prior Liens, DIP Liens, Adequate Protection Liens, Contingent Revolving Liens, Prepetition Revolving Liens and Prepetition Nalpropion Liens on some or all of the DIP Collateral upon entry of this Interim Order:

| Priority Schedule[7] | | |
|---|---|---|
| | *Prepetition Revolving Collateral (other than collateral held at Pernix Therapeutics)* | *DIP Collateral held at Pernix Therapeutics* | *Other DIP Collateral* |
| 1. | Carve-Out | Carve-Out | Carve-Out |
| 2. | Prior Liens | Prior Liens | Prior Liens |
| 3. | DIP Liens | DIP Liens | DIP Liens |
| 4. | • Prepetition Term Loan Adequate Protection Liens<br>• Prepetition Revolving Adequate Protection Liens | Prepetition Revolving Adequate Protection Liens | • Prepetition Term Loan Adequate Protection Liens<br>• Prepetition Revolving Adequate Protection Liens |
| 5. | Prepetition Revolving Liens/Contingent Revolving Liens | Prepetition Revolving Liens/Contingent Revolving Liens (Prepetition Revolving Collateral Only) | |
| 6 | | Nalpropion Adequate Protection Liens | |
| 7 | | Prepetition Nalpropion Liens (Nalpropion Collateral Only) | |
| 8. | | Prepetition Term Loan Adequate Protection Liens | |

13.    <u>Automatic Effectiveness of Liens</u>.  The automatic stay imposed under

section 362(a) of the Bankruptcy Code is hereby vacated and modified to permit the DIP Loan

Parties to grant (or continue to grant) the liens and security interests to the Prepetition Secured

---

[7]    This chart provides an overview of the respective lien priorities upon some or all of the DIP Collateral and is qualified in its entirety by the applicable Prepetition Financing Documents, DIP Loan Documents, and Intercreditor Agreement.  For the avoidance of doubt, the Contingent Revolving Liens, Prepetition Revolving Liens, and Prepetition Nalpropion Liens do not have liens upon all the DIP Collateral, but rather, certain assets of the Prepetition Collateral.

Parties (and their respective agents), the DIP Agent, and the DIP Lenders contemplated by this Interim Order and the other DIP Loan Documents.

14.    <u>Automatic Perfection</u>.  The DIP Liens and Adequate Protection Liens granted pursuant to this Interim Order shall constitute valid, enforceable, nonavoidable and duly perfected security interests and liens, and the DIP Agent, DIP Lenders, Prepetition Secured Parties and Prepetition Agents (collectively, the "<u>Adequate Protection Parties</u>") shall not be required to file or serve financing statements, notices of lien, mortgage deeds, deeds of trust or similar instruments which otherwise may be required under federal, state or local law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the DIP Loan Parties to execute any documentation relating to the DIP Liens or Adequate Protection Liens shall in no way affect the validity, enforceability, perfection or priority of such liens.  The DIP Agent, the DIP Lenders and the Adequate Protection Parties are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent, DIP Lenders or Adequate Protection Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, nonavoidable and not subject to challenge, dispute or subordination, at the time and as of the date of entry of this Interim Order; provided, that notwithstanding anything to the contrary herein, none of the liens granted pursuant to this Interim Order shall relate back to any

date that precedes the Petition Date.  Upon the request of the DIP Lenders or the Prepetition

Secured Parties, the DIP Loan Parties, without any further consent of any party, are authorized to

take, execute and deliver such instruments (in each case without representation or warranty of

any kind except as set forth in the DIP Loan Documents) to enable the DIP Agent the DIP

Lenders or the applicable Adequate Protection Party to further validate, perfect, preserve and

enforce the DIP Liens and/or the Adequate Protection Liens.  A certified copy of this Interim

Order may be filed with or recorded in filing or recording offices in addition to or in lieu of such

financing statements, mortgages, deeds of trust, notices of lien or similar instruments, and all

filing offices are hereby authorized ~~and directed~~ to accept such certified copy of this Interim

Order for filing and recording.

15.    <u>Other Automatic Perfection Matters</u>.  To the extent that the Prepetition Agents are

secured parties under any account control agreements, listed as loss payee under any of the DIP

Loan Parties' insurance policies or is the secured party under any Prepetition Financing

Document, the DIP Agent, on behalf of the DIP Lenders, is also deemed to be the secured party

under such account control agreements, loss payee under the DIP Loan Parties' insurance

policies and the secured party under each the Prepetition Financing Documents, and shall have

all rights and powers in each case attendant to that position (including, without limitation, rights

of enforcement), and shall act in that capacity and distribute any proceeds recovered or received

in accordance with the terms of this Interim Order and/or the Final Order, as applicable, and the

other DIP Loan Documents.  The Prepetition Revolving Agent shall serve as agent for the DIP

Agent for purposes of perfecting the DIP Agent's security interests in and liens on all DIP

Collateral that is of a type such that perfection of a security interest therein may be accomplished

only by possession or control by a secured party.

31

16.    <u>DIP Superpriority Claims</u>.  In addition to the liens and security interests granted to the DIP Agent on behalf of the DIP Lenders pursuant to this Interim Order, subject to the Carve-Out and in accordance with sections 364(c)(1), 503 and 507 of the Bankruptcy Code, the DIP Obligations shall constitute allowed superpriority administrative expense claims (the "<u>DIP Superpriority Claims</u>") with priority over any and all administrative expenses of the Debtors, whether heretofore or hereafter incurred, of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113, 1114 or any other provisions of the Bankruptcy Code.

17.    <u>Contingent Liens and Adequate Protection of Prepetition Revolving Lenders</u>. Until the occurrence of the Revolver Discharge, the Prepetition Revolving Lenders are entitled to (a) the Contingent Revolving Liens and (b) pursuant to Bankruptcy Code sections 361, 362, 363(e), 364(d)(1) and 507, adequate protection of their interests in the Prepetition Revolving Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in the value of the Prepetition Revolving Lenders' interests in the Prepetition Revolving Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the DIP Loan Parties (or other decline in value) of the Prepetition Revolving Collateral, the priming of the Prepetition Revolving Liens by the DIP Liens pursuant to the DIP Loan Documents and this Interim Order and the imposition of the automatic stay pursuant to Bankruptcy Code section 362 (the "<u>Prepetition Revolving Adequate Protection Claim</u>").  In consideration of the foregoing, the Prepetition Revolving Lenders are hereby granted the following, in each case, subject to the Carve-Out and the provisions of

paragraph 33 of this Interim Order (collectively, the "Prepetition Revolving Lenders Adequate Protection Obligations"):

(a)    Contingent Revolving Liens and Prepetition Revolving Adequate Protection Liens. The Prepetition Revolving Agent (for itself and for the benefit of the Prepetition Revolving Lenders) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), (i) in the amount of any Contingent Prepetition Revolving Debt, the Contingent Revolving Liens, and (ii) in the amount of the Prepetition Revolving Adequate Protection Claim, a valid, perfected replacement security interest in and lien (the "Prepetition Revolving Adequate Protection Liens") (subject to the limitations and priorities set forth above) upon the DIP Collateral;

(b)    Prepetition Revolving Superpriority Claim. The Prepetition Revolving Lenders are hereby granted an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code to the extent that the Prepetition Revolving Adequate Protection Claim is insufficient to protect the Prepetition Revolving Lenders' interests in the Prepetition Revolving Collateral with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "Prepetition Revolving Superpriority Claim"), which Prepetition Revolving Superpriority Claim shall be payable from and have recourse to all DIP Collateral. The Prepetition Revolving Superpriority Claim shall be subject and subordinate only to the Carve-Out and the DIP Superpriority Claims granted in respect of the DIP Obligations and shall sit *pari passu* with the Prepetition Term Lenders Superpriority Claim (as defined below). Except to the extent expressly set forth in this Interim Order or the DIP Credit Agreement, the

Prepetition Revolving Lenders shall not receive or retain any payments, property or other amounts in respect of the Prepetition Revolving Superpriority Claim unless and until the DIP Obligations and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have indefeasibly been paid in cash in full;

(c)    <u>Contingent Prepetition Revolving Debt</u>.  In the event that the Prepetition Revolving Agent or any Prepetition Revolving Lender (each in their capacities as such) is ordered by this Court to disgorge, refund or in any manner repay to any of the Debtors or their estates any amounts ("<u>Disgorged Amounts</u>") leading to Contingent Prepetition Revolving Debt, the Disgorged Amounts, unless otherwise ordered by the Court, shall be placed in a segregated interest bearing account, pending a further final, non-appealable order of a court of competent jurisdiction regarding the distribution of such Disgorged Amounts (either returning the Disgorged Amounts to the Prepetition Revolving Agent and the Prepetition Revolving Lenders, distributing such amounts to the Debtors or otherwise).

18.    <u>Adequate Protection of Prepetition Term Lenders.</u>  The Prepetition Term Lenders are entitled, pursuant to Bankruptcy Code sections 361, 362, 363(e), 364(d)(1) and 507, to adequate protection of their interests in the Prepetition Term Collateral, including Cash Collateral, for and equal in amount to the aggregate diminution in the value of the Prepetition Term Lenders' interests in the Prepetition Term Collateral from and after the Petition Date, if any, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the Debtors (or other decline in value) of the Prepetition Term Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "<u>Prepetition Term Lenders Adequate Protection Claim</u>").  In consideration of the foregoing, the Prepetition Term Lenders are hereby granted the following, in each case subject to the Carve-Out

34

and the provisions of paragraph 33 of this Interim Order (the "Prepetition Term Loan Adequate Protection Obligations"):

(a)    Prepetition Term Loan Adequate Protection Liens.  The Prepetition Term Lenders are hereby granted, in the amount of the Prepetition Term Lenders Adequate Protection Claim, a replacement security interest in and lien (the "Prepetition Term Loan Adequate Protection Liens") (subject to the limitations and priorities set forth above) upon the DIP Collateral and the Prepetition Term Collateral;

(b)    Prepetition Term Lenders Superpriority Claim.  The Prepetition Term Lenders are hereby granted, subject to the Carve-Out, an allowed superpriority claim as provided for in section 507(b) of the Bankruptcy Code, junior to the DIP Superpriority Claims (the "Prepetition Term Lenders Superpriority Claim" and, together with the Prepetition Revolving Superpriority Claim, the "Superpriority Claims"). The Prepetition Term Lenders Superpriority Claim shall be subject and subordinate to only the Carve-Out and the DIP Superpriority Claims granted in respect of the DIP Obligations and shall sit *pari passu* with the Prepetition Revolving Superpriority Claim.  Except to the extent expressly set forth in this Interim Order or the DIP Credit Agreements, the Prepetition Term Lenders shall not receive or retain any payments, property or other amounts in respect of the Prepetition Term Lenders Superpriority Claim unless and until the DIP Obligations and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have indefeasibly been paid in cash;

19.    Adequate Protection of Nalpropion.  Nalpropion is entitled, pursuant to Bankruptcy Code sections 361, 363(e), and 364(d)(1), to adequate protection of its interests in the Nalpropion Collateral, including Cash Collateral, for and equal in amount to the aggregate diminution in the value of Nalpropion's interest in the Nalpropion Collateral from and after the

Petition Date, if any, including without limitation, any such diminution resulting from the depreciation, sale, lease or use by the DIP Loan Parties (or other decline in value) of the Nalpropion Collateral, the priming of the Prepetition Nalpropion Liens by the DIP Liens pursuant to the DIP Loan Documents and this Interim Order and the imposition of the automatic stay pursuant to Bankruptcy Code section 362.  In consideration of the foregoing, Nalpropion is hereby granted, in each case subject to the Carve-Out and paragraph 33 of this Interim Order, (the "Nalpropion Adequate Protection Obligations," and together with the Prepetition Revolving Lenders Adequate Protection Obligations and Prepetition Term Loan Adequate Protection Obligations, the "Adequate Protection Obligations"):

> (a)    Nalpropion Adequate Protection Liens.  Nalpropion is hereby granted a replacement security interest in and lien upon the DIP Collateral held by Pernix Therapeutics (the "Nalpropion Adequate Protection Liens," and together with the Prepetition Term Loan Adequate Protection Liens and Prepetition Revolving Adequate Protection Liens, the "Adequate Protection Liens") (subject to the limitations and priorities set forth above) securing the amount of the Nalpropion Secured Obligations equal to the diminution in the value of Nalpropion's interest in the Nalpropion Collateral from and after the Petition Date.  Notwithstanding anything to the contrary herein, the Nalpropion Adequate Protection Liens shall be junior to the DIP Liens, Prepetition Revolving Adequate Protection Liens, Prepetition Revolving Liens and Contingent Revolving Liens, but senior to the Prepetition Term Loan Adequate Protection Liens.  As a condition to the granting of such Nalpropion Adequate Protection Liens, Nalpropion waives its right to any superpriority claim as provided for in Section 507(b) of the Bankruptcy Code; provided, however, that for the avoidance of doubt, the foregoing shall not constitute a waiver of any administrative claim which Nalpropion may have pursuant to Bankruptcy Code Section

503(b)(1) in respect to transactions occurring under the TSA or Services Agreement from and after the Petition Date.

(b)    Segregation of Payments.  As additional adequate protection of Nalpropion's security interests in the Nalpropion Collateral, the DIP Loan Parties are authorized and directed to segregate from their other cash, in a manner satisfactory to Nalpropion, cash in an amount equal to any and all amounts due and owing under the TSA, including all amounts relating to the Nalpropion Secured Obligations, whether incurred before, on or after the Petition Date, and all amounts that become due and payable under the TSA, in each case as they come due.

20.    DIP Fees and Expenses.  The Debtors are authorized to pay any and all reasonable and documented out-of-pocket expenses of the DIP Agent and DIP Lenders in connection with the DIP Facility and as provided in the DIP Loan Documents, whether incurred before, on or after the Petition Date and whether or not the transactions contemplated hereby are consummated or such fees and expenses are set forth in the Approved Budget, including, without limitation, fees and expenses, subject to the Carve-Out, incurred in connection with (i) the preparation, negotiation and execution of the DIP Loan Documents; (ii) the funding of the DIP Facility; (iii) the creation, perfection or protection of the liens under the DIP Loan Documents (including all search, filing and recording fees); (iv) the on-going administration of the DIP Loan Documents (including the preparation, negotiation and execution of any amendments, consents, waivers, assignments, restatements or supplements thereto) and the Chapter 11 Cases; (v) the enforcement of the DIP Loan Documents; and (vi) any legal proceeding relating to or arising out of the DIP Facility or the other transactions contemplated by the DIP Loans Documents, including the Chapter 11 Cases.  Payment of all such professional fees and expenses shall not be subject to

allowance by the Court; provided, that notice of any such expenses shall be provided to counsel

to the Committee (if any).  The Debtors shall pay the uncontested, invoiced, reasonable and

documented accrued and unpaid out-of-pocket professional fees and expenses within ten (10)

days following the presentment of any invoices to the Debtors and the U.S. Trustee.  Any written

objection raised by the Debtors or the U.S. Trustee with respect to such invoices (with notice

provided to the DIP Agent) within ten (10) days of receipt thereof will be resolved by the Court

(absent prior consensual resolution thereof).  Pending such resolution, the undisputed portion of

any such invoice shall be promptly paid by the Debtors.  Such fees and expenses shall not be

subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature

whatsoever.

21.    Carve-Out.

(a)    *Carve-Out.*  Upon the DIP Agent's issuance of a Default Notice (as

defined below), all liens, claims and other security interests held by any party, including the

Superpriority Claims, Adequate Protection Liens, DIP Liens, Prepetition Liens and Prepetition

Treximet Notes Liens shall remain subject and subordinate to the payment of the Carve-Out.

"Carve-Out" shall mean the sum of: (i) all fees required to be paid to the Clerk of this Court and

to the U.S. Trustee under section 1930(a) of title 28 of the United States Code (without regard to

the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by

a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in

(iii) below); (iii) subject to the terms of this Interim Order, to the extent allowed at any time,

whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the

"Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to

section 327, 328 or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee

pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") (excluding fees and expenses of persons or firms retained by Committee members) at any time before or on the first day following delivery by a DIP Agent of a Default Notice, whether allowed by this Court prior to or after delivery of a Default Notice (the "Pre-Default Notice Amount"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1.5 million incurred after the first day following delivery by the DIP Agent of a Default Notice to the extent allowed at any time, whether by interim order, procedural order or otherwise (the "Post-Default Notice Carve-Out Cap").  Notwithstanding anything to the contrary herein or in the DIP Loan Documents, the DIP Loans and Carve-Out shall not be used to fund aggregate cumulative expenditures for Professional Persons that exceed the maximum amount with respect thereto set forth in the Approved Budget (after giving effect to any Permitted Variance).

(b)     *Delivery of Weekly Fee Estimates.*  Not later than 7:00 p.m. EST time on the third business day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement (each such statement, a "Weekly Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unpaid fees and expenses incurred through the applicable Calculation Date (collectively, "Estimated Fees and Expenses") and a statement of the amount of such fees and expenses that have been paid to date by the Debtors.  No later than one business day after the delivery of a Default Notice, each Professional Person shall deliver one additional statement (the "Final Statement") to the Debtors setting forth a good-faith estimate of the amount of fees

and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has already been delivered and concluding on the date of the Default Notice.

    (c) *Carve-Out Account.* Upon the occurrence and during the continuance of a Termination Event, the DIP Agent may deliver a written Default Notice, which may be delivered by any means permitted under the DIP Credit Agreement, to the Debtors (such day, the "Termination Declaration Date").  The Default Notice shall (x) constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund an account (the "Carve-Out Account"), and (y) be deemed a draw request and notice of borrowing by the DIP Loan Parties for Delayed Draw Loans under the Delayed Draw Commitment (each as defined in the DIP Credit Agreement) (on a pro rata basis based on the then outstanding Delayed Draw Commitments), after taking into account the funding described in the previous clause (x), in an amount equal to the lesser of (1) the Carve-Out and (2) the remaining availability under the Delayed Draw Commitments at the time the Default Notice is given (any such amounts actually advanced shall constitute a Loan (as defined in the DIP Credit Agreement)).  Such amounts shall be held in trust in the Carve-Out Account to pay the Pre-Default Notice Amount and the Post-Default Notice Carve-Out Cap.  Notwithstanding anything to the contrary in the DIP Loan Documents, this Interim Order or the Final Order, following delivery of a Default Notice (x) the DIP Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Account has been funded in accordance with the terms of this paragraph.

    (d) *Requirement to Fund Carve-Out Account.* On the first business day after the Termination Declaration Date, notwithstanding anything in the DIP Credit Agreement to the

contrary, including with respect to the existence of a Default (as defined in the DIP Credit Agreement) or Event of Default, the failure of the DIP Loan Parties to satisfy any or all of the conditions precedent for Delayed Draw Loans under the DIP Facility, any termination of the Delayed Draw Commitments following an Event of Default, or the occurrence of the Maturity Date (each as defined in the DIP Credit Agreement), each DIP Lender with an outstanding Delayed Draw Commitment (on a pro rata basis based on the then outstanding Delayed Draw Commitments) shall extend Delayed Draw Loans pursuant to a deemed draw and borrowing equal to such DIP Lender's pro rata share of the total amount required to fund the borrowings set forth in paragraph 21(c). Notwithstanding anything to the contrary herein, in no event shall the DIP Agent or the DIP Lenders be required to (x) extend Delayed Draw Loans to fund the Carve-Out other than pursuant to paragraph 21(c) or (y) extend Delayed Draw Loans pursuant to a deemed draw and borrowing pursuant to this paragraph 21 in an aggregate amount exceeding the total available Delayed Draw Commitments as of the Termination Declaration Date.

(e)     *Application of Carve-Out Account.* All funds in the Carve-Out Account shall be used first to pay the obligations set forth in clauses (i) through (iv) of the definition of Carve-Out set forth above until paid in full, and then, to the extent the Carve-Out Account has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash and all Commitments (as defined in the DIP Credit Agreement) have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. All payments and reimbursements made from the Carve-Out Account shall permanently reduce the Carve-Out on a dollar-for-dollar basis. The DIP Agent shall have a security interest in any residual amounts in the Carve-Out Account, which shall secure the DIP Obligations.

(f)      Furthermore, notwithstanding anything to the contrary in the DIP Loan Documents, this Interim Order or the Final Order, (i) disbursements by the Debtors from the Carve-Out Account shall not constitute a Loan (as defined in the DIP Credit Agreement) or increase or reduce the DIP Obligations, (ii) the failure of the Carve-Out Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out and (iii) disbursements by the Debtors from the Carve-Out Account shall be included in the Debtors' monthly operating reports filed with the Court.  Finally, while the terms of this Interim Order place limitations on the payment of Allowed Professionals Fees from borrowings under the DIP Facility, Cash Collateral and the Carve-Out Account, such provisions shall not operate to create a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.

(g)      The payment of any Allowed Professional Fees pursuant to the Carve-Out shall not, and shall not be deemed to (i) reduce the Debtors' obligations owed to the DIP Agent, DIP Lenders, the Prepetition Agents, or the Prepetition Secured Parties (whether under this Interim Order or otherwise) or, (ii) other than as necessary to permit the payment of such Allowed Professional Fees (in each case, subject to the terms of and as expressly provided in this Interim Order with respect to the Carve-Out), modify, alter or otherwise affect any of the liens and security interests of such parties (whether granted under this Interim Order or otherwise) in the Prepetition Collateral or the DIP Collateral (or their claims against the Debtors).  The DIP Agent, DIP Lenders, Prepetition Agents, and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any Allowed Professional Fees, or any fees or expenses of the U.S. Trustee or Clerk of the Court (or of any other entity) incurred in connection with the Chapter 11 Cases or any Successor Cases.

22.    <u>Excluded Professional Fees</u>.  The Debtors shall not assert or prosecute, and no portion of the DIP Facility, the DIP Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Approved Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with (a) asserting or prosecuting any claims, causes of action, or lodging an objection against the Prepetition Secured Parties, Prepetition Agents, Prepetition Treximet Noteholders, Prepetition Treximet Notes Trustee, DIP Agent, or DIP Lenders, (b) asserting or prosecuting any claims, causes of action, or lodging an objection to the Prepetition Obligations, Prepetition Treximet Notes Obligations, DIP Obligations, DIP Liens, Prepetition Treximet Notes Liens or Prepetition Liens, (c) lodging an Objection (as defined below), or (d) objecting to, contesting, delaying, preventing or interfering with in any way the exercise of rights and remedies by the DIP Agent and the DIP Lenders with respect to the DIP Collateral once a Termination Event has occurred (except that the Borrower may contest or dispute whether a Termination Event has occurred and the Borrower shall be entitled to any notice provisions provided in this Interim Order).  Notwithstanding the foregoing, (i) the Debtors shall be permitted to enforce the terms of the DIP Facility or this Interim Order, and (ii) no more than $50,000 of the proceeds of the DIP Facility, DIP Collateral, or Cash Collateral may be used by the Committee in connection with the investigation of, but not litigation, objection or any challenge to, the Prepetition Liens or Prepetition Obligations (the "<u>Investigation Budget</u>").

23.    <u>506(c) Waiver; Marshaling</u>.  Subject only to and effective upon the entry of the Final Order, the Debtors (on behalf of themselves and their estates) shall irrevocably waive, and shall be prohibited from asserting, any surcharge claim under Bankruptcy Code section 506(c) or otherwise for any costs and expenses incurred in connection with the preservation, protection or

enhancement of, or realization by the Prepetition Secured Parties upon, the Prepetition Collateral. In no event shall the DIP Lenders, Prepetition Revolving Lenders or Nalpropion be subject to the equitable doctrine of marshaling or any similar doctrine with respect to the DIP Collateral.

24.    <u>Restrictions on Granting Post-Petition Liens; Collateral Rights; Limitations in Respect of Subsequent Court Orders and Subordination of Liens</u>.  Except for the Carve-Out or as otherwise expressly set forth in this Interim Order, it shall constitute a Termination Event if any of the Debtors incur or request authority to incur a claim or grant a lien (or a claim or lien is allowed) having a priority superior to or *pari passu* with those granted pursuant to this Interim Order to the Prepetition Agents or Prepetition Secured Parties at any time during which any portion of the DIP Obligations, Prepetition Obligations, and Adequate Protection Obligations remains outstanding.  Without limiting any other provisions and protections of this Interim Order, unless the DIP Lenders have provided their prior written consent, there shall not be entered in these proceedings, or in any Successor Cases, any order which authorizes the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status which is superior to or *pari passu* with those granted pursuant to this Interim Order for any purpose other than as set forth in the Approved Budget.  Without limiting the provisions and protections of this paragraph, if at any time prior to the indefeasible repayment and satisfaction in full and in cash of all DIP Obligations and the Prepetition Obligations, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt in violation of this Interim Order or the other DIP Loan Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent or the Prepetition Agents, as the case may be, for application in

accordance with this Interim Order, the DIP Loan Documents, the Prepetition Financing

Documents, the Intercreditor Agreement, as applicable, and under applicable law.

      25.    <u>Binding Nature of Order</u>.  The provisions of this Interim Order shall be binding

upon the Debtors and their respective successors and assigns, including, without limitation, any

trustee or other fiduciary hereafter elected or appointed for or on behalf of any of the Debtors.

      26.    <u>Survival of Order</u>.  With respect to the DIP Lenders, Prepetition Agents,

Prepetition Secured Parties, Prepetition Treximet Notes Trustee and Prepetition Treximet

Noteholders, the provisions of this Interim Order and any actions taken pursuant thereto (a) shall

survive the entry of any order: (i) confirming any plan of reorganization in any of the Chapter 11

Cases; (ii) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy

Code; or (iii) dismissing any of the Chapter 11 Cases; and (b) shall continue in full force and

effect notwithstanding the entry of any such order, and the claims, liens, and security interests

granted pursuant to this Interim Order shall maintain their priority as provided by this Interim

Order until all of the DIP Obligations are indefeasibly paid in full and discharged in accordance

with the DIP Loan Documents.  The DIP Obligations shall not be discharged by the entry of any

order confirming any plan of reorganization in any of the Chapter 11 Cases that does not provide

for the payment in full and in cash of the DIP Obligations, and upon the entry of any such order,

the Debtors shall, and shall be deemed to, waive any such discharge pursuant to section

1141(d)(4) of the Bankruptcy Code.

      27.    <u>Protection under Section 364(e) of the Bankruptcy Code</u>.  If any or all of the

provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal,

modification, vacatur or stay shall not affect (i) the validity of any DIP Obligations or Adequate

Protection Obligations incurred prior to the actual receipt by the DIP Lenders and the Prepetition

Secured Parties of written notice of the effective date of such reversal, modification, vacation or

stay, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized

or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations or

Adequate Protection Obligations.  Notwithstanding any such reversal, modification, vacatur or

stay, any use of Cash Collateral or the incurrence of DIP Obligations or Adequate Protection

Obligations by the DIP Loan Parties prior to the actual receipt by the Prepetition Secured Parties

and Prepetition Agents of written notice of the effective date of such reversal, modification,

vacatur, or stay, shall be governed in all respects by the provisions of this Interim Order, and DIP

Lenders, DIP Agent, Prepetition Secured Parties, and Prepetition Agents shall be entitled to all of

the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy

Code, this Interim Order, the Intercreditor Agreement, and the other DIP Loan Documents with

respect to all uses of Cash Collateral and the incurrence of DIP Obligations and Adequate

Protection Obligations.

28.    _Termination Events_.  The following shall constitute a termination event under this

Interim Order and the DIP Loan Documents unless waived in writing by the DIP Agent (each, a

"Termination Event"): (a) The occurrence of any "Event of Default" as defined under the DIP

Credit Agreement; (b) any other failure of the Debtors to comply with the terms and provisions

of this Interim Order in any material respect; and (c) unless otherwise agreed by the Debtors and

the DIP Lenders or to the extent necessary to accommodate the Court's calendar, the Debtors'

failure to timely comply with the Milestones (as defined in the DIP Credit Agreement).  Any

Milestone that would otherwise fall on a Saturday, Sunday or Federal holiday will be treated in

accordance with Bankruptcy Rule 9006.

29.    <u>Modification of Stay; Rights and Remedies Upon Termination</u>.

(a)    Upon the occurrence and during the continuance of any Termination Event,

and five (5) business days' after written notice thereof (the "<u>Default Notice</u>," and such period of

time, the "<u>Default Notice Period</u>") is provided by the DIP Agent to Debtors' counsel,

Committee's counsel (if any), and the U.S. Trustee, the automatic stay provisions of section 362

of the Bankruptcy Code shall be automatically vacated and modified to the extent necessary to

permit the DIP Agent, the DIP Lenders, the Prepetition Agents and/or the Prepetition Secured

Parties, as applicable, to exercise all rights and remedies provided in this Interim Order, the DIP

Loan Documents, the Intercreditor Agreement, or Prepetition Financing Documents, as

applicable, and to take any or all of the following actions without further order of or application

to this Court: (i) immediately terminate the Debtors' use of Cash Collateral and cease making

any DIP Loans to the DIP Loan Parties; (ii) immediately declare all DIP Obligations to be

immediately due and payable; (iii) immediately terminate the DIP Facility and the availability of

any DIP Loans thereunder; (iv) immediately set off any and all amounts in accounts maintained

by the DIP Loan Parties with (or subject to a security interest in favor of) the DIP Agent, DIP

Lenders, Prepetition Agents, or Prepetition Secured Parties, as applicable, against the DIP

Obligations or the Prepetition Obligations, or otherwise enforce rights against the DIP Collateral

in the possession of, or subject to a lien in favor of the DIP Agent, DIP Lenders, Prepetition

Agents, or the Prepetition Secured Parties, as applicable, in each case for application towards the

DIP Obligations or the Prepetition Obligations, as applicable; (v) immediately exercise any of

their rights with respect to the Specified Contracts (as defined in the DIP Credit Agreement)

under paragraph 30 herein; (vi) direct any Debtor to file and prosecute pleadings before this

Court seeking relief under Bankruptcy Code section 363 (including, without limitation,

subsections (b), (f), (k), and (m) thereof) and Bankruptcy Code section 365 in order to sell and

transfer the Prepetition Collateral and/or the DIP Collateral to the DIP Agent, Prepetition

Revolving Agent, Prepetition Term Agent, as applicable, or the designees of any of the foregoing;

and (vii) take any other actions or exercise any other rights or remedies permitted under this

Interim Order, the DIP Loan Documents, the Intercreditor Agreement, the Prepetition Financing

Documents or applicable law to effect the repayment of the DIP Obligations and the Prepetition

Obligations.  During the Default Notice Period, the Debtors shall be entitled to an emergency

hearing before the Court, with proper notice to the DIP Agent and Prepetition Agents, for the

purpose of contesting whether a Termination Event has occurred and/or is continuing.

      (b)     Subject to the Default Notice Period, the automatic stay under section

362(a) of the Bankruptcy Code shall be automatically vacated and modified as provided above,

unless and until, the Court has determined that a Termination Event has not occurred and/or is

not continuing, and in such case, the Debtors shall not seek to enjoin, hinder, delay or object to

the (x) DIP Agent's exercise of rights and remedies in accordance with the DIP Loan Documents,

or (y) the Prepetition Term Agent's and/or the Prepetition Term Lenders' exercise of rights and

remedies in accordance with the Prepetition Term Financing Documents.

      (c)     The rights and remedies of the DIP Agent, DIP Lenders, Prepetition

Agents, Prepetition Secured Parties, Prepetition Treximet Notes Trustee and Prepetition

Treximet Noteholders specified herein are cumulative and not exclusive of any rights or

remedies that the DIP Agent, DIP Lenders, Prepetition Agents, Prepetition Secured Parties,

Prepetition Treximet Notes Trustee and/or Prepetition Treximet Noteholders may respectively

have under the DIP Loan Documents, the Prepetition Financing Documents, the Intercreditor

Agreement, the Prepetition Treximet Notes Financing Documents or otherwise.  The Debtors

shall cooperate fully with the DIP Lenders and the Prepetition Secured Parties in their exercise of rights and remedies under this Interim Order (including, without limitation, paragraph 30 herein), DIP Loan Documents, Prepetition Financing Documents, and the Intercreditor Agreement, as applicable.

30.    <u>Assignment of Specified Contracts</u>.  As a requirement and precondition to the DIP Lenders' willingness to fund the Debtors' Chapter 11 Cases, permit the use of Cash Collateral, and in furtherance of the Superpriority Claims, which are payable from, among other things, all of the Specified Contracts (as defined in the DIP Credit Agreement), the DIP Lenders shall have the following protections with respect to the Specified Contracts, which protections shall be enforced by the DIP Agent as authorized, approved, and granted pursuant to the provisions of this Interim Order and in accordance with the terms of the DIP Credit Agreement:[8]

(a)    *Remedies Upon a Termination Event.*  If a Termination Event has occurred and is continuing, the DIP Agent shall, with respect to the Specified Contracts, be permitted, and is hereby authorized: (i) to exercise the Debtors' rights pursuant to section 365(f) of the Bankruptcy Code with respect to any such Specified Contract(s) and, subject to this Court's approval after notice and hearing, assign any such Specified Contract(s) in accordance with section 365 of the Bankruptcy Code notwithstanding any language to the contrary in such Specified Contract; (ii) to require any Debtor to complete promptly, pursuant to Section 363 of the Bankruptcy Code, subject to the rights of the DIP Lenders to credit bid pursuant to Bankruptcy Code section 363(k) or otherwise, a sale or disposition of any such Specified

---

[8]    Until the indefeasible repayment in full in cash of the Prepetition Term Obligations, the Prepetition Term Agent and Prepetition Term Lenders shall be deemed to have the protections afforded the DIP Agent and DIP Lenders, respectively, under this paragraph 30 with respect to the Specified Contract(s) relating to the Prepetition Term Collateral.  All references to the DIP Agent and the DIP Lenders solely in this paragraph 30 shall be deemed substituted in their entirety by reference to the Prepetition Term Agent or Prepetition Term Lenders, as applicable.

Contract(s); (iii) (a) find an acceptable (in the DIP Agent's good faith and reasonable discretion) replacement counterparty, which may include the DIP Agent or any of its affiliates, to whom such Specified Contract(s) may be assigned, and/or (b) notify the Debtors of the selection of any replacement counterparty pursuant to this paragraph, upon such notification the Debtors shall promptly (1) file a motion seeking, on an expedited basis, approval of the Debtors' assumption and assignment of such Specified Contract(s) to such proposed assignee, and (2) cure any defaults, if any, that have occurred and are continuing under such Specified Contract(s) to the extent required by the Court, subject to the DIP Agent's right to cure any defaults as set forth under paragraph 30(d); or (iv) direct the Debtors to (a) assign any such Specified Contract(s) to the DIP Agent and as Collateral securing the DIP Obligations, subject to clause (b), if applicable, (b) seek this Court's approval of the assumption of any such Specified Contract(s) to the extent that this Court determines pursuant to a final order that an assumption is required in order to assign such contract as Collateral, and (c) promptly cure any default that has occurred and is continuing under such Specified Contract(s) to the extent required by the Court.

(b)      *Right to Credit Bid.*  The DIP Agent, on behalf of the applicable DIP Lenders, shall be permitted to credit bid pursuant to Bankruptcy Code section 363(k) some or all of the outstanding DIP Obligations as consideration in exchange for any Specified Contract(s). Pursuant to Bankruptcy Code section 364(e), absent a stay pending appeal, the DIP Lenders' right to credit bid shall not be affected by the reversal or modification on appeal of the Debtors' authorization pursuant to this Interim Order to obtain credit and incur debt as and in accordance with the terms set forth herein.

(c)      *Assumption Orders.*  Any order of this Court approving the assumption of any Specified Contract(s) in accordance with this paragraph 30 shall specifically provide that the

50

applicable Debtor shall be authorized to assign such Specified Contract pursuant to, and to enjoy the protections of, Bankruptcy Code section 365 subsequent to the date of such assumption.

(d) *DIP Agent's Right to Cure Defaults.* If any of the Debtors is required to cure any monetary defaults under any Specified Contract pursuant to any order of this Court or otherwise in connection with any assumption and assignment of any such Specified Contract pursuant to section 365 of the Bankruptcy Code, and such monetary default is not, within five (5) business days of the receipt by such Debtor of notice from the DIP Agent pursuant to the applicable provision(s) of the DIP Credit Agreement or any other notice from the DIP Agent requesting the cure of such monetary default, cured in accordance with the provisions of such applicable court order as arranged by the DIP Agent, the DIP Agent may cure any such monetary defaults on behalf of the applicable Debtor(s).

31. <u>Limitations on Borrowings</u>. It shall constitute a Termination Event if any of the Debtors seeks authorization for the Debtors or their estates to borrow money from any person other than the DIP Lenders to the extent that the repayment of such borrowings is to be secured pursuant to section 364(d)(1) of the Bankruptcy Code by a security interest, lien or mortgage that is senior to or *pari passu* with any of the security interests, liens or mortgages held by the DIP Lenders or Prepetition Secured Parties, unless (i) such authorization is sought with the prior written consent of the DIP Lenders or (ii) in connection with such borrowings, the DIP Obligations and any remaining Prepetition Obligations are indefeasibly paid in full in cash as a condition to the closing of such borrowings.

32. <u>Modifications of DIP Loan Documents and Budgets</u>. The DIP Loan Parties are hereby authorized, without further order of this Court, to enter into agreements with the DIP Agent and the DIP Lenders providing for any modifications to the Approved Budget or non-

material modifications to the DIP Loan Documents, or any other modifications to the DIP Loan Documents necessary to conform the terms of the DIP Loan Documents to this Interim Order; provided, however, that the DIP Loan Parties shall provide notice of any material modification or amendment to the Approved Budget or the DIP Loan Documents that is adverse to the Debtors' estates to Committee's counsel (if any), and the U.S. Trustee, each of whom shall have five (5) days from the date of such notice within which to object in writing to such material modification or amendment. If any Committee or the U.S. Trustee timely objects to any such material modification or amendment to the Approved Budget or the DIP Loan Documents, such modification or amendment shall only be permitted pursuant to a further order of this Court.

33.    Objections to Prepetition Obligations. The Debtors' admissions, stipulations, acknowledgements, agreements, releases and waivers contained in this Interim Order with respect to, among other things, the extent, legality, validity, perfection, enforceability and other matters noted in this Interim Order with respect to the Prepetition Financing Documents, Prepetition Treximet Notes Financing Documents, Prepetition Liens and Prepetition Treximet Notes Liens, shall be binding upon all other parties in interest, including a Committee, any Chapter 7 trustee or Chapter 11 trustee or examiner appointed or elected for any of the Debtors, for all purposes subject only to the rights of any party in interest with requisite standing for a period of the earlier of (x) for any Committee appointed by the date that is fifteen (15) days after the Petition Date, sixty (60) days after the appointment of such Committee, or (y) for any other party in interest, seventy-five (75) days from the Petition Date (such period hereafter referred to as the "Challenge Period"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Secured Parties, or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge

Period, to seek to (a) challenge in any manner the Prepetition Obligations, and/or assert claims or causes of action of any nature in any way arising out of, relating to, or in connection with, the Prepetition Obligations, Prepetition Treximet Notes Obligations, Prepetition Financing Documents or the Prepetition Treximet Notes Documents including, without limitation, any payments made in respect thereof, or (b) assert or allege any other matters in any way arising out of, relating to, or in connection with, the Prepetition Obligations, Prepetition Treximet Notes Obligations, Prepetition Financing Documents or Prepetition Treximet Notes Financing Documents or (c) challenge the extent, legality, validity, perfection and/or enforceability of any Prepetition Liens or Prepetition Treximet Notes Liens pursuant to the Bankruptcy Code (the actions described in clause (a), (b) and/or (c) above, collectively referred to herein as an "Objection").  If an Objection is not timely and properly filed within such Challenge Period or the Court does not rule in favor of the plaintiff or moving party in any such proceeding, (i) the Prepetition Obligations and Prepetition Treximet Notes Obligations shall be deemed allowed in full, and the Prepetition Liens and Prepetition Treximet Notes Liens shall be recognized and allowable as legal, valid, binding, in full force and effect, non avoidable, perfected and senior to all other liens (other than as provided herein) upon and claims against the Prepetition Collateral and the Prepetition Treximet Notes Collateral, as applicable, with respect to all parties in these Chapter 11 Cases and not be subject to any counterclaims, setoff, recoupment, deduction, or claim of any kind or any defenses, or any further objection or challenge by any party at any time, and (ii) the Releasees shall be deemed released and discharged from all claims and causes of action arising out of or in any way relating to the Prepetition Obligations, Prepetition Financing Documents, Prepetition Treximet Notes Obligations or Prepetition Treximet Notes Financing Documents prior to the entry of this Interim Order.  Nothing in this Interim Order shall be

deemed to confer standing to commence any action or proceeding, including any Committee or party in interest. If an Objection is timely lodged, the stipulations contained in this Interim Order shall be binding on the Debtors' estates and all parties in interest except to the extent such stipulations are specifically challenged in such Objection, as and when originally filed (ignoring any relation back principles); provided, that if and to the extent an Objection is withdrawn, denied or overruled, the stipulations specifically challenged in such Objection shall be binding on the Debtors' estates and all parties in interest. For the avoidance of doubt, any chapter 7 or 11 trustee appointed or elected in these cases during the investigation period shall, until the expiration of the periods provided herein for asserting lender claims and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to the Challenge Period (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates) be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations, stipulations, releases and waivers of the Debtors in this Interim Order.

34.    Waiver of Requirement to File Proofs of Claim.

(a)    The DIP Agent and the DIP Lenders shall not be required to file proofs of claim in the Chapter 11 Cases or any Successor Case in order to maintain their claims for payment of principal, interest, fees, expenses and other amounts owing in respect of the DIP Obligations under, and as provided in, the DIP Loan Documents. The statements of claim in respect of the DIP Obligations set forth in this Interim Order, together with the evidence accompanying the Motion and presented at the Interim Hearing are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

(b)    The Prepetition Agents, the Prepetition Revolving Lenders, the Prepetition Term Lenders, the Prepetition Treximet Notes Trustee and the Prepetition Treximet Noteholders shall not be required to file proofs of claim in the Chapter 11 Cases or any Successor Case in order to maintain their claims for payment of principal, interest, fees, expenses and other amounts owing in respect of the obligations under, and as provided in, the applicable Prepetition Financing Documents or Prepetition Treximet Notes Financing Documents.  The statements of claim in respect of the Prepetition Obligations and Prepetition Treximet Notes Obligations set forth in this Interim Order, together with the evidence accompanying the Motion and presented at the Interim Hearing are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

35.    <u>Final Hearing</u>.  The Final Hearing is scheduled for _March 14_, 2019, at _2_:00 p.m. (prevailing Eastern Time) before this Court.  Any objections by creditors or other parties in interest to any provisions of this Interim Order shall be deemed waived unless timely filed and served in accordance with this paragraph.  The Debtors shall promptly serve notice of entry of this Interim Order and the Final Hearing on the appropriate parties in interest in accordance with the Bankruptcy Rules and the Local Rules.  Without limiting the foregoing, the Debtors shall promptly serve a notice of entry of this Interim Order and the Final Hearing, together with a copy of this Interim Order, by first class mail, postage prepaid, facsimile, electronic mail or overnight mail upon the Notice Parties.  The notice of the entry of this Interim Order and the Final Hearing shall state that objections to the entry of a Final Order shall be filed with the United States Bankruptcy Court for the District of Delaware by no later than ~~5:00~~ _4:00_ p.m. (prevailing Eastern Time) on _March 7_ , 2019 (the "<u>Objection Deadline</u>").

36.    <u>DIP Agent and Prepetition Agents Authorization</u>.  Notwithstanding any provision of the Prepetition Financing Documents or the DIP Loan Documents, the DIP Agent and Prepetition Agents are hereby authorized to make any and all account transfers requested by the Debtors in accordance with the Approved Budget, and is further authorized to take any other action reasonably necessary to implement the terms of this Interim Order.

37.    <u>No Modification of Interim Order</u>.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent of the DIP Lenders and no such consent shall be implied by any action, inaction or acquiescence of the DIP Lenders.

38.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly the DIP Agent's, the DIP Lenders', the Prepetition Agents', Prepetition Secured Parties', Prepetition Treximet Notes Trustee's or Prepetition Treximet Noteholders' right to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection (subject to the Intercreditor Agreement).  Nothing contained herein shall be deemed a finding by the Court or an acknowledgement by the Prepetition Agents or the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect the Prepetition Secured Parties against any diminution in value of the Prepetition Collateral.

39.    <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the Motion, any other order of this Court (other than the Final Order), or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, the terms and provisions of this Interim Order shall govern.

40.    <u>Entry of Interim Order; Effect</u>.  This Interim Order shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(h), 7062, 9014, or otherwise.

41.    <u>Limitation of Liability</u>.  In determining to make any DIP Loans, permitting the use of Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order (or any Final Order), the DIP Loan Documents, the Prepetition Treximet Notes Financing Documents or the Prepetition Financing Documents, the DIP Agent, DIP Lenders, Prepetition Agents, Prepetition Secured Parties, Prepetition Treximet Noteholders or Prepetition Treximet Notes Trustee shall not be deemed to be in control of the operations of the Debtors or any affiliate (as defined in section 101(2) of the Bankruptcy Code) of the Debtors, or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or any affiliate of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Furthermore, nothing in this Interim Order, DIP Loan Documents, Prepetition Financing Documents or Prepetition Treximet Financing Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the Prepetition Agents, Prepetition Secured Parties, Prepetition Treximet Notes Trustee or Prepetition Treximet Noteholders of any liability for any claims arising from the prepetition or postpetition activities of the Debtors or any affiliate of the Debtors.

42.    <u>Credit Bidding</u>.  (a) The DIP Agent, on behalf of the DIP Lenders, shall have the unqualified right to credit bid up to the full amount of the DIP Obligations in any sale of the DIP Collateral (or any part thereof), (b) the Prepetition Agents, on behalf of the Prepetition Revolving

Lenders and Prepetition Term Lenders (as applicable), shall have the unqualified right to credit bid up to the full amount of the Prepetition Revolving Obligations and Prepetition Term Obligations, as applicable, in any sale of the Prepetition Collateral and/or Prepetition Term Collateral (or in each case, any part thereof), and (c) the Prepetition Treximet Notes Trustee, on behalf of the Prepetition Treximet Noteholders, shall have the right to credit bid up to the full amount of Prepetition Treximet Notes Obligations in any sale of the Prepetition Treximet Notes Collateral (or any part thereof), in each case pursuant to Bankruptcy Code section 363(k), without the need for further Court order authorizing the same, and whether such credit bid is submitted in connection with the "Sale" under the Sale Procedures Order  (as defined in the DIP Credit Agreement) or any other sale effectuated through sections 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.  A credit bid submitted by the DIP Agent, DIP Lenders, Prepetition Revolving Lenders, Prepetition Term Lenders, Prepetition Agents, Prepetition Treximet Notes Trustee and/or Prepetition Treximet Noteholders shall be considered a "Qualified Bid" under the Sale Procedures Order.

43.     <u>Disposition of Collateral.</u>  Other than pursuant to the Sale Procedures Order or Sale Order (as defined in the DIP Credit Agreement), or as provided in this Interim Order and in the DIP Loan Documents, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral or any Prepetition Collateral other than in the ordinary course of business (or enter into any binding agreement to do so) and shall not permit any of their subsidiaries to sell, transfer, lease, encumber, or otherwise dispose of any assets (other than in the ordinary course of business) without the prior written consent of the DIP Lenders.

44.    Equities of the Case.  Subject to and effective upon entry of a Final Order, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to the proceeds, product, offspring, or profits of any of the Prepetition Collateral.

45.    Reporting Requirements.  Notwithstanding any procedures or requirements under the Prepetition Financing Documents or the DIP Loan Documents, the Debtors shall (a) prepare and furnish to counsel for the DIP Lenders, in form and substance reasonably acceptable to the DIP Lenders, a weekly report of receipts, disbursements, and a reconciliation of actual receipts and disbursements with those set forth in the Approved Budget, on a line-by-line basis, showing any percentage variance to the proposed corresponding line item of the Approved Budget (i) for the immediately preceding weekly period, (ii) on a cumulative basis for the period of the Approved Budget or such other budget period, as applicable, and showing a calculation of the covenants and Debtors' compliance or noncompliance, and (iii) provide an explanation for all variances, on a line-item and cumulative basis, between the budgeted amounts and the actual amounts (the "Budget Reconciliation").  The Budget Reconciliation shall (i) be certified as true and correct by an officer of the Borrower and (ii) certify that no Termination Event, including any Event of Default, has occurred or, if such Termination Event has occurred, specifying the nature and extent thereof and any corrective action taken or proposed to be taken with respect thereto.  The Debtors shall also provide to DIP Agent's counsel (i) a list of any and all prepetition claims paid during such period, each with a notation regarding which order authorized such payments, and (ii) the cumulative total of all prepetition claims paid, each with a notation regarding which order authorized such payments (the "Other Reporting Obligations").

Such Budget Reconciliation and Other Reporting Obligations shall be provided to counsel to the DIP Lenders so as actually to be received within four (4) business days following the end of each applicable period.  The Debtors and their professionals shall make themselves available to discuss the Budget Reconciliation and any other reports provided pursuant to this Interim Order with the professionals retained by the DIP Lenders on such basis as may be reasonably requested by the DIP Lenders.

46.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any party, creditor, equity holder or other entity other than the DIP Agent, DIP Lenders, Prepetition Agents, Prepetition Secured Parties, Prepetition Treximet Notes Trustee, Prepetition Treximet Noteholders and the Debtors, and their respective successors and assigns.

47.    <u>Enforceability</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.  Any findings of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

48.    <u>Retention of Jurisdiction</u>.  Notwithstanding any provision in the DIP Loan Documents or the Prepetition Financing Documents, this Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Interim Order, DIP Facility, and DIP Loan Documents.

Dated:  February 21, 2019
Wilmington, Delaware

_____
The Honorable Christopher S. Sontchi
Chief United States Bankruptcy Judge