IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PERNIX SLEEP, INC., *et al.*[1] | : | Case No. 19-10323 (CSS) |
| | : | |
| Debtors. | : | Re. Doc. No. 26 |
| | : | **Hearing Date: March 14, 2019 @ 2:00 p.m.** |

**OBJECTION OF ENDURANCE AMERICAN INSURANCE COMPANY TO MOTION OF DEBTORS FOR ENTRY OF ORDERS (I)(A) APPROVING SALE PROCEDURES FOR SALE OF DEBTORS' ASSETS, (B) APPROVING STALKING HORSE BID PROTECTIONS, (C) SCHEDULING AUCTION FOR, AND HEARING TO APPROVE SALE OF DEBTORS' ASSETS, (D) APPROVING FORM AND MANNER OF NOTICES OF SALE, AUCTION AND SALE PROCEDING, (E) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (F) GRANTING RELATED RELIEF AND (II)(A) APPROVING SALE OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (C) GRANTING RELATED RELIEF**

Endurance American Insurance Company ("ENDURANCE"), by and through its undersigned counsel, a party in interest of the Debtors, hereby files this objection to Motion of Debtors For Entry Of Orders (Debtors' Sale Motion") (I)(A) Approving Sale Procedures For Sale Of Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction For, And Hearing To Approve Sale Of Debtors' Assets, (D) Approving Form And Manner Of Notices Of Sale, Auction And Sale Proceeding, (E) Approving Assumption And Assignment Procedures, (F) Granting Related Relief And (II) (A) Approving Sale Of Debtors' Assets Free And Clear Of Liens, Claims, Interests And Encumbrances, (B) Authorizing Assumption and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are: Pernix Therapeutics, Holdings, Inc. (4736), Pernix Therapeutics, LLC (1128), Pernix Manufacturing, LLC (1236, Pernix Sleep, Inc. ( 1599), Cypress Pharmaceuticals, Inc. (1860), Hawthorn Pharmaceuticals, Inc. (2769), Macoven Pharmaceuticals, L.L.C. (4549), Gaine, Inc. (3864), Respicopea, Inc. (1303), Pernix Ireland Limited (3106PH), Pernix Ireland Pain Designated Activity Company (0190LH), Pernix Holdco 1, LLC, Pernix Holdco 2, LLC, Pernix Holdco 3, LLC.

{01568923;v1} 1

Assignment Of Executory Contracts And Unexpired Leases And (C) Granting Related Relief. (the "Objection"). In support of the Objection, ENDURANCE states as follows:

### I.     Background

1.     ENDURANCE maintains a Commercial Excess Liability occurrence insurance policy ("Policy") for Pernix Therapeutics Holdings, Inc. ("Pernix" or the "Debtor"). A true and correct copy of the Declarations Page of the Policy (with the Premium redacted) is attached hereto as **Exhibit "A."** ENDURANCE provided the Policy for the policy dates 11/30/2017-11/30/2018. ENDURANCE notified Pernix that the Policy would not be renewed upon its expiration. On or about November 28, 2018, the Debtor sought a six months extension of the Policy, and the parties agreed the Policy would terminate after six months, on May 30, 2019.[2] No temporary policy was issued for this extension. ENDURANCE agreed to extend the Policy by endorsement for the requested six months with no right to renew. A copy of the e-mails creating the endorsement extending the Policy (with the premium redacted) are attached hereto as **Exhibit "B."** The premium for the Policy and for its extension were paid prior to the filing of Pernix's bankruptcy case.

2.     At this time, there are three (3) lawsuits (the "Opioid Lawsuits") that have been noticed to Endurance brought against Pernix alleging that it improperly marketed opioids for the treatment of chronic pain:  (1) *UFCW, Local 23 and Employers Health Fund v. Endo Pharmaceuticals, Inc. et al*, Case No.: 18-04-03485, filed in the Court of Common Pleas of

---

[2] Navigators Insurance Company ("Navigators") issued a Commercial General Liability Policy and Umbrella Policy over which the ENDURANCE Policy is excess. The Endurance Policy "follows the form" of the Navigators Umbrella Policy. Navigators filed a complaint for a declaratory judgment against Pernix Therapeutics Holdings Inc. on or about October 26, 2018 in the United States District Court for the Eastern District of Pennsylvania, Case No. 18-CV-04638-JS, which is apparently stayed by this bankruptcy filing. A copy of the Navigator complaint without exhibits is attached hereto as **Exhibit "C."** Navigator denied coverage for the Opioid Lawsuits under the Commercial General Liability and Umbrella Policies and declined to defend or indemnify Pernix by letter dated October 23, 2018. Exhibit C, ¶ 53. Navigator then commenced the declaratory judgment action seeking a declaration that it had no obligation to defend or indemnify Pernix under the aforesaid policies.

Philadelphia County Pennsylvania (the "UFCW Lawsuit"); (2) *Iron Workers District Council of Philadelphia and Vicinity Benefit Fund v. Abbott Laboratories, Inc. et al*, Case Number. 18-05-02442 filed in the Court of Common Pleas of Philadelphia County, Pennsylvania (the "Iron Workers Lawsuit," and collectively with the UFCW lawsuit, the "Pennsylvania Lawsuits"); and (3) *State of Arkansas et al. v. Purdue Pharma, L.P. et al.*, Case No. CV-2018-268, filed in the Circuit Court of Crittenden County, Arkansas (the "Arkansas Lawsuit"). Copies of the Pennsylvania Lawsuits and Arkansas Lawsuit are attached hereto as **Exhibits "C-1" to "C-3."**

3.  Plaintiffs in the Pennsylvania Lawsuits attribute the opioid epidemic to actions by one class of defendants; namely, the "Manufacturer Defendants", which includes Pernix Therapeutics Holdings, Inc. Specifically, the Pennsylvania Lawsuits allege that Zogenix originally obtained FDA approval for Zohydro ER in 2013, but thereafter sold its interest in the product to Pernix in 2015. The allegation is that "At all times relevant hereto, Zogenix and Pernix through their respective corporate subsidiaries, authorized agents, servants, employees, and/or other representatives regularly manufactured, advertised, promoted, marketed, sold and distributed Zohydro ER throughout the Commonwealth of Pennsylvania and the City and County of Philadelphia, including but not limited to the FUND and its participants, retirees, and their dependents." Exhibit C-1, ¶¶ 46-48; Exhibit C-2, ¶¶ 34-36.

4.  The allegations of the Pennsylvania Lawsuits are nearly identical. Both allege that Pernix and the other defendants "engaged in an intentional, decades-long pattern of deceptive and misrepresentative conduct" regarding the risks of using opioids, leading to a vast increase in overdose-related deaths in the Commonwealth of Pennsylvania and in Philadelphia. Each of the Pennsylvania Lawsuits alleges the following four causes of action against Pernix:

(a) Count One: Civil insurance fraud. Specifically, Pernix and the other defendants are alleged to have knowingly and intentionally defrauded the plaintiffs, who are considered insurers, through the misrepresentation of the dangers and benefits of opioids.

(b) Count Two: Disgorgement of profits. Specifically, Pernix and the other defendants are alleged to have been unjustly enriched through their deceptive and wrongful conduct related to the sale of opioids.

(c) Count Three: Breach of implied warranties. Specifically, Pernix and the other defendants are alleged to have impliedly warranted that opioids were appropriate for long-term use even though they knew or should have known that opioids were ineffective and dangerous when used in the long term.

(d) Count Four: Civil conspiracy. Specifically, Pernix and the other defendants are alleged to have conspired amongst themselves to commit unlawful acts, including the insurance fraud alleged in Count One, and to present false or misleading information about opioids in order to drive sales.[3] The plaintiffs in the Pennsylvania Lawsuits seek damages for Pernix' intentional conduct, restitution, disgorgement and statutory penalties.

5.   Plaintiff in the Arkansas Lawsuit alleges that Pernix and other defendants engaged in a marketing scheme to increase opioid sales by, among other things, downplaying the risk of opioid addiction, promoting the concept of "pseudoaddiction," exaggerating the effectiveness of addiction prevention and screening tools, claiming that opioid dependence and withdrawal are easily managed, denying the risks of increasing opioid dosages, and falsely touting the benefits of long-term opioid use. The alleged actions purportedly resulted in a

---

[3] Navigator Declaratory Judgment Complaint, ¶¶ 14-16, Exhibit C.

dramatic increase in demand for public services and in associated costs to Arkansas and its political subdivisions. The Arkansas Lawsuit asserts nine causes of action against Pernix:

    (a) Count One: Negligence/gross negligence. Specifically, Pernix and the other defendants are alleged to have breached their duty of reasonable care in the "manufacture, distribution, dispensing, and prescribing of opioids" and their duty "not to endanger public health, welfare, or safety."

    (b) Count Two: Common law public nuisance. Specifically, Pernix and the other defendants are alleged to have created or participated in the creation of a nuisance in the form of the over-saturation of opioids and widespread use of opioids for non-medical purposes.

    (c) Count Three: Violations of the Arkansas Uniform Narcotic Drug Act, Ark. Code Ann. §§ 20-64-201 *et seq*. Specifically, Pernix and the other defendants are alleged to have, *inter alia*, disregarded statutory and regulatory rules regarding safe distribution and dispensing methods and consciously oversupplied the Arkansas market with opioids.

    (d) Count Four: Accomplice to violations of the Arkansas Uniform Narcotic Drug Act, Ark. Code Ann. §§ 5-2-403; 20-64-201 *et seq*. Specifically, Pernix and 5 of the other defendants are alleged to have actively aided in, agreed to aid in, and failed to prevent one another from violating the Arkansas Uniform Narcotic Drug Act as set forth in Count Three.

    (e) Count Five: Civil conspiracy to violate the Arkansas Uniform Narcotic Drug Act. Specifically, Pernix and the other defendants are alleged to have agreed to oversupply prescription opioids in disregard of the Arkansas Uniform Narcotic Drug Act.

(f) Count Six: Violations of the Arkansas Uniform Controlled Substances Act, Ark. Code Ann. §§ 5-64-101 *et seq*. Specifically, Pernix and the other defendants are alleged to have possessed, delivered, manufactured, and trafficked controlled substances in knowing violation of their statutory and regulatory duties to maintain effective controls against opioid diversion.

(g) Count Seven: Accomplice to violations of the Arkansas Uniform Controlled Substance Act. Specifically, Pernix and the other defendants are alleged to have actively aided in, agreed to aid in, and failed to prevent one another from violating the Arkansas Uniform Controlled Substances Act as set forth in Count Six.

(h) Count Eight: Civil conspiracy to violate the Arkansas Uniform Controlled Substances Act. Specifically, Pernix and the other defendants are alleged to have agreed to oversupply prescription opioids in disregard of the Arkansas Uniform Controlled Substances Act.

(i) Count Nine: Violations of the Arkansas Drug Dealer Liability Act, Ark. Code Ann. §§ 16-124-101 *et seq*. Specifically, Pernix and the other defendants are alleged to have knowingly participated in the illegal drug market in violation of the Arkansas Drug Dealer Liability Act.

Plaintiff in the Arkansas Lawsuit seeks damages for Pernix' intentional conduct, restitution, disgorgement, statutory penalties and multiplied damages.[4] The Debtor and its related companies, (the "Debtors") filed voluntary petitions under Chapter 11 of the United States Code (the "Bankruptcy Code") on February 19, 2019.  One of the Debtors' first day motions was the Debtors' Motion for an Order to Continue and Renew Insurance on an interim basis. ENDURANCE learned about the Debtors' bankruptcy case through one of its attorneys who

---

[4] Navigator Declaratory Judgment Complaint, ¶¶ 18-20, Exhibit C.

happened to see it on a list of new Chapter 11 filings.  ENDURANCE has not been able to verify service of the bankruptcy case to this day.

## II.    The Objection

6.    ENDURANCE objects to the Debtors' Sale Motion and proposed sale procedures because, *inter alia*, the treatment of ENDURANCE is unclear – and in fact not referenced in the Sale Motion or in the Purchase Agreement.  The Purchase Agreement refers to a Disclosure Letter, which, according to the Purchase Agreement, provides the treatment of the insurers.  See Purchase Agreement, Paragraph 2.1 (xv). While the reference is made, there is no attached Disclosure Letter.

7.    By not clearly stating how the Debtors intend to deal with ENDURANCE in either the Purchase Agreement or the Debtors' Sale Motion, it stands to reason that any plan in this case will have a substantial impact on ENDURANCE and the other insurers.  As this Court knows, a plan of reorganization must be insurance neutral, and a plan is not insurance neutral if it may have a substantial impact on the insurers.

8.    Upon request, Debtors' counsel confirmed for the undersigned counsel via telephone with ENDURANCE's counsel that ENDURANCE"s Policy was an included asset. That means it is an asset to be transferred.  However, Debtors' counsel stated "he was not going to get into whether it was transferable at that time."

9.    Because it is being treated as an asset that may be transferred by the Debtors, the Debtors' proposed sale raises the issue of how or whether the Debtors intend to transfer or assign a Policy that is already cancelled and will lapse by its own terms on May 30, 2019.  To the extent that an assignment increases the risk to the insurer, it is not assignable.

10. The sale procedures also do not address adequate assurance if in fact the Policy is to be assigned. In fact, the Debtors give themselves three (3) days after the entry of an order approving the sale procedures to file a potential assumption and assignment notice on the counterparties, but the procedures do not require any buyer to finalize a list of assumed contracts until after the hearing on the approval of the sale. Sale Motion, Paragraph 28 d.ii.

11. Furthermore, the Sale Motion also does not clearly state where the proceeds of the sale will go – just that the sale is the best for the stakeholders—apparently without identifying who the stakeholders are. See Motion, paragraph 2. Precisely who or what the stakeholders are is unclear. Thus, the Debtor's vague proposed sale procedures are related to the Debtors' request to continue and/or renew insurance in their sole discretion.

12. The Debtors have not indicated how they intend to assess the risks posed by and their role in the nationwide opioid epidemic, especially considering the likely lack of insurance coverage due to the Debtors' alleged criminal, intentional, and willful misconduct. Attempting to force their insurers to continue to do business with the Debtors is not the solution and nor is fast-tracking a sale of the Debtors' assets without consideration of these liabilities.

13. Based on the foregoing, ENDURANCE requests that this Court deny the Debtors' sale procedures at this time.

### III. Reservation of Rights

14. ENDURANCE reserves all of its rights, including its rights to further object to the Debtors' Motion regarding this sale once it is known how the Debtors intend to treat ENDURANCE, and/or the Court rules an Order on Debtor's Motion to Continue and Renew Insurance. and to reply to the Debtors' response to this Objection.

**FINEMAN KREKSTEIN & HARRIS PC**

By: /s/Deirdre M. Richards
Deirdre M. Richards (No. 4191)
1300 N. King Street
Wilmington, DE 19801
Telephone: (302) 538-8331
Facsimile: (302) 394-9228
drichards@finemanlawfirm.com
*Attorneys for Endurance American Insurance Company.*

Date: 3/7/19