# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| PERNIX SLEEP, INC., *et al.*[1] | Case No. 19-10323  (CSS) |
| Debtors. | Jointly Administered |
|  | **Ref. No. 26** |

### ORDER (I) APPROVING SALE PROCEDURES FOR SALE OF DEBTORS' ASSETS, (II) APPROVING STALKING HORSE BID PROTECTIONS, (III) SCHEDULING AUCTION FOR, AND HEARING TO APPROVE, SALE OF DEBTORS' ASSETS, (IV) APPROVING FORM AND MANNER OF NOTICES OF SALE, AUCTION AND SALE HEARING, (V) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "Sale Motion")[2] of Pernix Sleep, Inc. and its affiliates that are debtors in possession in the above captioned chapter 11 cases (each, a "Debtor" and together, the "Debtors") for entry of an order, pursuant to sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006 and 9014 and Local Bankruptcy Rules 2002-1, 6004-1 and 9006-1, (i) authorizing and approving the Sale Procedures, substantially in the form attached hereto as Exhibit 1, in connection with the sale of the Assets, (ii) approving the Expense Reimbursement Amount for the Stalking Horse Bidder in accordance with the terms and conditions set forth in the Stalking Horse Agreement and the Sale Procedures, (iii) scheduling the Auction and the Sale Hearing to consider approval of the proposed Sale, (iv)

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are: Pernix Therapeutics Holdings, Inc. (4736), Pernix Therapeutics, LLC (1128), Pernix Manufacturing, LLC (1236), Pernix Sleep, Inc. (1599), Cypress Pharmaceuticals, Inc. (1860), Hawthorn Pharmaceuticals, Inc. (2769), Macoven Pharmaceuticals, L.L.C. (4549), Gaine, Inc. (3864), Respicopea, Inc. (1303), Pernix Ireland Limited (3106PH), Pernix Ireland Pain Designated Activity Company (0190LH), Pernix Holdco 1, LLC, Pernix Holdco 2, LLC, Pernix Holdco 3, LLC.  The Debtors' corporate headquarters and mailing address is 10 North Park Place, Suite 201, Morristown, NJ 07960.

[2] Each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to it in the Sale Motion.

authorizing and approving the Noticing Procedures and (v) approving the Assumption and Assignment Procedures, in each case, as more fully described in the Sale Motion; and the Court having reviewed and considered the Sale Motion, the Sedor Declaration and the Erickson Declaration; and the Court having held a hearing on the Sale Motion (the "Sale Procedures Hearing"); and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    The Court has jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O).  Venue of the Chapter 11 Cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.    The Debtors' proposed notice of the Sale Motion, the Sale Procedures, the Sale Procedures Hearing and the proposed entry of this Order is (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules and (iii) adequate and sufficient under the circumstances of the Chapter 11

Cases, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion (including, without limitation, with respect to the Sale Procedures and Expense Reimbursement Amount) has been afforded to all interested persons and entities, including, but not limited to, the Notice Parties.

D.      The Sale Procedures in the form attached hereto as <u>Exhibit 1</u> are fair, reasonable and appropriate, are designed to maximize creditor recoveries from a sale of the Assets and permit the Debtors to comply with their obligations under the DIP Credit Agreement and DIP Orders (as each is defined in the DIP Motion).

E.      The Sale Procedures and the Stalking Horse Agreement were each negotiated in good faith and at arm's length among the Debtors and the Stalking Horse Bidder. The Stalking Horse Agreement represents the highest or otherwise best offer that the Debtors have received to date to purchase the Transferred Assets. The selection of the Stalking Horse Bidder was fair and appropriate under the circumstances and in the best interests of the Debtors' estates.

F.      The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Order and thereby: (i) approve of the Sale Procedures as contemplated by the Stalking Horse Agreement, (ii) authorize the Expense Reimbursement Amount, under the terms and conditions set forth in the Stalking Horse Agreement and the Sale Procedures, (iii) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing and other deadlines set forth in the Sale Procedures, (iv) approve the Noticing Procedures and the forms of notice and (v) approve the Assumption and Assignment Procedures and the forms of relevant notice. Such compelling and sound business justification, which was set forth in the Sale Motion, the Sedor Declaration, the Erickson Declaration and on the record at the Sale Procedures Hearing, are

incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

G.    The Expense Reimbursement Amount, as approved by this Order, is fair and reasonable and provides a benefit to the Debtors' estates and stakeholders.

H.    If triggered in accordance with the terms of the Stalking Horse Agreement, the payment of the Expense Reimbursement Amount, under this Order and upon the conditions set forth in the Stalking Horse Agreement and the Sale Procedures, is (i) an actual and necessary cost of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (ii) reasonably tailored to encourage, rather than hamper, bidding for the Assets, by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Assets, (iii) of substantial benefit to the Debtors' estates and stakeholders and all parties in interest herein, (iv) reasonable and appropriate, (v) a material inducement for, and conditions necessary to, ensure that the Stalking Horse Bidder will continue to pursue its proposed agreement to purchase the Transferred Assets and (vi) reasonable in relation to the Stalking Horse Bidder's efforts and to the magnitude of the Sale and the Stalking Horse Bidder's lost opportunities resulting from the time spent pursuing such transaction.    Without the Expense Reimbursement Amount, the Stalking Horse Bidder is unwilling to remain obligated to consummate the Sale or otherwise be bound under the Stalking Horse Agreement (including the obligation to maintain its committed offer while such offer is subject to higher or better offers as contemplated by the Sale Procedures).

I.      The Stalking Horse Bidder is a third-party purchaser and none of its affiliates, subsidiaries, officers, directors, members, partners or principals, or any of their respective representatives, successors or assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

J.      The legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest herein.

K.      The Bidding Procedures comply with the requirements of Local Rule 6004-(1)(c).

L.      The form and manner of notice to be delivered pursuant to the Noticing Procedures and the Assumption and Assignment Procedures (including the Sale Notice attached hereto as Exhibit 2 and the Potential Assumption and Assignment Notice attached hereto as Exhibit 3) are reasonably calculated to provide each Contract Counterparty to the Transferred Contracts with proper notice of the potential assumption and assignment of such Transferred Contracts by the Successful Bidder(s) (including the Stalking Horse Bidder) or any of their known proposed assignees (if different from the Successful Bidder) and the requirement that each such Contract Counterparty assert any objection to the proposed Cure Claims prior to the Assumption and Assignment Objection Deadline or otherwise be barred from asserting claims arising from events occurring following assumption and assignment of such Transferred Contracts.

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The relief requested in the Sale Motion is hereby granted as set forth herein.

2.      All objections to the Sale Motion solely as it relates to the relief requested therein that have not been adjourned, withdrawn or resolved are overruled in all respects on the merits.

3.      The Sale Procedures, in substantially the form attached hereto as <u>Exhibit 1</u>, are approved and fully incorporated into this Order and the Debtors are authorized, but not directed, to act in accordance therewith.  The failure to specifically include a reference to any particular provision of the Sale Procedures in this Order shall not diminish or impair the effectiveness of such provision.

4.      The Stalking Horse Bidder is deemed a Qualified Bidder for all purposes, and the Stalking Horse Bid as set forth in the Stalking Horse Agreement is deemed a Qualified Bid.  In the event that no other Qualified Bids are submitted, the Stalking Horse Bidder shall be deemed the Successful Bidder.

5.      Subject to final Court approval at the Sale Hearing, the Debtors are authorized to enter into the Stalking Horse Agreement with the Stalking Horse Bidder

6.      <u>Bid Deadline</u>.  As further described in the Sale Procedures, the Bid Deadline shall be at **5:00 p.m.**[3] **on April 5, 2019**.

7.      <u>Auction</u>.  In the event the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids in addition to the Stalking Horse Bid, an Auction shall be conducted at the offices of Davis Polk & Wardwell LLP, 450 Lexington Ave., New York, New York 10017 at **10:00 a.m. on April 11, 2019**, or such later time on such day or such other place as the Debtors shall notify all Qualified Bidders (including the Stalking Horse Bidder).  The Debtors are authorized to conduct the Auction in accordance with the Sale Procedures.

8.      The schedule of events set forth below relating to the Sale Procedures is hereby approved in its entirety:

---

[3] All times set forth herein are prevailing Eastern Time.

| | |
|---|---|
| **April 5, 2019, at 5:00 p.m.** | Bid Deadline |
| **April 8, 2019, at 4:00 p.m.** | Sale Objection Deadline |
| **April 8, 2019, at 4:00 p.m.** | Cure Objection Deadline/Adequate Assurance Objection Deadline for Stalking Horse Bidder |
| **April 9, 2019, at 12:00 p.m.** | Deadline for Debtors to notify Potential Bidders of their status as Qualified Bidders |
| **April 11, 2019, at 10:00 a.m.** | Auction to be held at offices of Davis Polk (if necessary) |
| **Prior to or at Sale Hearing** | Adequate Assurance Objection Deadline if Stalking Horse Bidder is not Successful Bidder |
| **April 15, 2019, at ~~9:30 a.m.~~** *at 1:00 pm* | Sale Hearing |

9.      If no Qualified Bids with respect to the Assets other than the Stalking Horse Bid are received on or before the Bid Deadline, the Debtors shall not conduct the Auction with respect to the Assets, and instead shall seek approval of the sale of the Transferred Assets pursuant to the Stalking Horse Agreement at the Sale Hearing.  If the Auction is not conducted, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the Case Information Website a notice (i) indicating that the Auction for the Transferred Assets has been cancelled, (ii) indicating that the Stalking Horse Bidder is the Successful Bidder with respect to the Transferred Assets, (iii) listing the Executory Contracts designated as Transferred Contracts by the Stalking Horse Bidder and (iv) setting forth the date and time of the Sale Hearing.

10.      The Noticing Procedures as set forth in this Order and the Sale Motion, including the form of Sale Notice attached hereto as Exhibit 2, is hereby approved.

11.      Within one Business Day after entry of this Order, or as soon as reasonably practicable thereafter, the Debtors shall serve the Sale Notice by first-class mail upon the Sale Notice Parties.  On or about the same date, the Debtors will publish the Sale Notice on the Case Information Website.

12.     Service of the Sale Notice on the Sale Notice Parties in the manner described in the Order constitutes good and sufficient notice of the Auction and the Sale Hearing. No other or further notice is required.

13.     <u>Sale Objections</u>. Objections to the relief sought in the Sale Order must be (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than **4:00 p.m. on April 8, 2019** and (d) be served on (i) proposed counsel for the Debtors, (y) Davis Polk & Wardwell LLP, 450 Lexington Ave., New York, New York 10017, Attn: Marshall S. Huebner (marshall.huebner@davispolk.com), Eli J. Vonnegut (eli.vonnegut@davispolk.com) and Christopher S. Robertson (christopher.robertson@davispolk.com) and (z) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis (landis@lrclaw.com) and Kerri K. Mumford (mumford@lrclaw.com), (ii) counsel to the Stalking Horse Bidder, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Sq., New York, NY 10036, Attn: Lisa Laukitis (lisa.laukitis@skadden.com) and Evan A. Hill (evan.hill@skadden.com), (iii) counsel to the Committee, (y) Akin Gump Strauss Hauer & Feld LLP, Bank of America Tower, 1 Bryant Park, New York, NY 10036, Attn: Arik Preis (apreis@akingump.com) and Gary A. Ritacco (gritacco@akingump.com) and (z) Potter Anderson & Corroon LLP, 1313 N. Market St., Sixth Floor, P.O. Box 951, Wilmington, DE 19801, Attn: Jeremy W. Ryan (jryan@potteranderson.com) and R. Stephen McNeill (rmcneill@potteranderson.com); and (iv) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, Attn.: Benjamin A. Hackman, Esq. (Benjamin.a.hackman@doj.gov) (collectively, the "<u>Objection Notice Parties</u>").

14.    <u>Sale Hearing</u>.  The Sale Hearing shall be held in the United States Bankruptcy Court for the District of Delaware, Courtroom 6, 824 North Market Street, 5th Floor, Wilmington, Delaware 19801, on **April 15, 2019 at 9:30 a.m.**; provided, however, that the Sale Hearing may be adjourned (with the reasonable consent of the Stalking Horse Bidder if the Stalking Horse Bidder is the Successful Bidder), from time to time, without further notice to creditors or parties in interest other than by filing a notice on the Court's docket.

15.    <u>Stalking Horse Protections</u>.  Pursuant to sections 105, 363, 364, 503 and 507 of the Bankruptcy Code, the Debtors are hereby authorized and directed to pay the Expense Reimbursement Amount to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse Agreement without further order of this Court.  The dollar amount of the Expense Reimbursement Amount (as defined in the Stalking Horse Agreement) is hereby approved.  The Expense Reimbursement Amount shall be allowed as an administrative expense claim in the Chapter 11 Cases under section 364(c)(1) of the Bankruptcy Code.  The Stalking Horse Bidder shall be entitled to receive the Expense Reimbursement Amount in accordance with the terms and conditions of the Stalking Horse Agreement and the Sale Procedures.  The Debtors' obligation to pay the Expense Reimbursement Amount shall be the joint and several obligations of the Debtors and shall survive termination of the Stalking Horse Agreement, dismissal or conversion of any of the Chapter 11 Cases, and confirmation of any plan of reorganization or liquidation.

16.    <u>Credit Bidding.</u> Unless the Court orders otherwise, the Stalking Horse Bidder shall have the right to credit bid any portion and up to the entire amount of its outstanding secured claims, including without limitation, on account of its secured claims under the DIP Facility,  Prepetition DDTL Term Facility or pursuant to the Prepetition Treximet Notes.

Notwithstanding anything to the contrary in this Order or the Sale Procedures, every dollar of a credit bid shall be treated the same as a dollar from a cash bid, and a cash bid shall not be deemed higher or otherwise better solely for the reason that it is a cash bid and not a credit bid.

17.    <u>Assumption and Assignment Procedures</u>.    The assumption and assignment procedures set forth in the Sale Motion  and as modified by this Order (the "<u>Assumption and Assignment Procedures</u>") are hereby approved.

18.    Within one Business Day of entry of this Order, or as soon a reasonably practicable thereafter, the Debtors shall file with the Court, and cause to be published on the Case Information Website, the Potential Assumption and Assignment Notice and the Executory Contract List, each of which shall be in form and substance acceptable to the Stalking Horse Bidder.    The Potential Assumption and Assignment Notice shall (a) identify the potential Transferred Contracts, (b) list the Debtors' good faith calculation of the Cure Claims with respect to such contracts, (c) expressly state that assumption or assignment of an Assumed Contract is not guaranteed and is subject to Court approval, (d) prominently display the deadline to file an Assumption and Assignment Objection and (e) prominently display the date, time and location of the Sale Hearing.

19.    Simultaneously with the filing of the initial Executory Contract List with the Court, the Debtors shall also serve the Potential Assumption and Assignment Notice and the Executory Contract List on each relevant Contract Counterparty and all other parties requesting notice pursuant to Bankruptcy Rule 2002, via first class mail or electronic mail.    The Stalking Horse Bidder shall promptly provide Adequate Assurance Information to any Contract Counterparty that requests it from the contacts provided on the Potential Assumption and Assignment Notice.

20.     <u>Objection Deadlines</u>.  Any Contract Counterparty may file an objection to the calculation of Cure Claims with respect to the Contract Counterparty's Executory Contracts, or to the assumption and assignment to the Stalking Horse Bidder of the Contract Counterparty's Executory Contracts, including with respect to adequate assurance of future performance of the Stalking Horse Bidder (any such objection, an "<u>Assumption and Assignment Objection</u>").  All Assumption and Assignment Objections filed by Contract Counterparties listed on the initial proposed Executory Contract List filed with the Court pursuant to paragraph 18 hereof must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Claims the Contract Counterparty believes is required to cure defaults under the relevant Assumed Contract, (d) be filed by no later than **April 8, 2019, at 4:00 p.m.** (the "<u>Assumption and Assignment Objection Deadline</u>") and (e) be served on Objection Notice Parties.

21.     <u>Resolution of Assumption and Assignment Objections</u>.  If a Contract Counterparty files a timely Assumption and Assignment Objection by the Assumption and Assignment Objection Deadline and such objection is not resolved among the parties prior to the Sale Hearing, the Court will hear and determine such objection at the Sale Hearing.

22.     <u>Failure To File Timely Assumption and Assignment Objection</u>.  If a Contract Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Assumption and Assignment Objection, the Contract Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Assumed Contract, and notwithstanding anything to the contrary in the Assumed Contract, or any other document, the Cure Claims set forth in the Potential Assumption and Assignment Notice or the Supplemental Assumption and Assignment Notice shall be controlling and will be the only

amount necessary to cure outstanding defaults under the applicable Assumed Contract under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the closing of the Sale, whether known or unknown, due or to become due, accrued, absolute, contingent or otherwise, and the Contract Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Assumed Contract against the Debtors, the Successful Bidder or the property of any of them.

23.    The Stalking Horse Bidder may modify the Executory Contract List and list of Transferred Contracts in accordance with the Stalking Horse Agreement and the Assumption and Assignment Procedures described in the Sale Motion and in this Order.

24.    At any time at least three (3) Business Days before the date of the Auction (the "Pre-Auction Designation Date"), the Stalking Horse Bidder may designate in writing any Executory Contract as a Transferred Contract.

25.    The Stalking Horse Bidder and/or the Successful Bidder(s) shall continue to be entitled to designate in writing any Executory Contract as a Transferred Contract following the Pre-Auction Designation Date; provided, that, unless otherwise agreed to in writing by and among the Debtors, the Successful Bidder(s) and the applicable counterparty, the Successful Bidder(s) shall pay all Cure Claims associated with the assumption of any such Transferred Contract, which payment shall be made at the Closing Date or, if later, on the effective date of the assumption and assignment of a Transferred Contract as set forth in a Supplemental Assumption and Assignment Notice (as defined below) (or, in either case, as soon as reasonably practicable thereafter) and, in the case of any Disputed Cure Claim, pursuant to an order of the Court.

26.    In the event that an Executory Contract is not listed on the initially-filed Executory Contract List and is subsequently designated as a Transferred Contract, is designated a Transferred Contract pursuant to paragraph 25 hereof, or if the previously-stated Cure Claims in the initial Potential Assumption and Assignment Notice are modified, in each case in accordance with the Stalking Horse Agreement and the Assumption and Assignment Procedures, the Debtors shall promptly (x) serve a supplemental assumption and assignment notice (each, a "Supplemental Assumption and Assignment Notice") by first class mail or electronic mail on the applicable Contract Counterparties setting forth the Debtors' intention to assume and assign such Executory Contracts to the Successful Bidder (which notice shall include the applicable proposed Cure Claims) and (y) file with the Court, and cause to be published on the Case Information Website, the Supplemental Assumption and Assignment Notice.    Each Supplemental Assumption and Assignment Notice will include the same information with respect to the applicable Assumed Contract as is required to be included in the Potential Assumption and Assignment Notice.

27.    Any Contract Counterparty to an Executory Contract listed on a Supplemental Assumption and Assignment Notice may object to the proposed assumption or assignment of such Executory Contract, the Debtors' proposed Cure Claims, if any, or the ability of the Stalking Horse Bidder or Successful Bidder to provide adequate assurance of future performance (a "Supplemental Assumption and Assignment Objection"). All Supplemental Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Claims the Contract Counterparty believes is required to cure defaults under the relevant Assumed Contract, (d) be filed by no later than

**fourteen (14) days from the date of service of such Supplemental Assumption and Assignment Notice** and (e) be served on the Objection Notice Parties.

28.    <u>Resolution of Supplemental Assumption and Assignment Objections</u>.    If a Contract Counterparty files a timely Supplemental Assumption and Assignment Objection at least two Business Days prior to the Sale Hearing, the Court will hear and determine such objection at the Sale Hearing. If a Contract Counterparty files a timely Supplemental Assumption and Assignment Objection after two Business Days prior to the Sale Hearing, the Court will hear and determine such objection on an expedited basis, and if reasonably practicable no later than the closing of the Sale.  If such objection has not been resolved prior to the closing of the Sale (whether by an order of the Court or by agreement with the Contract Counterparty), the Successful Bidder(s) shall pay as soon as reasonably practicable after the Closing Date any Disputed Cure Claim pursuant to an Order of the Bankruptcy Court or mutual agreement between the Debtors, the Successful Bidder(s) and the Contract Counterparty.

29.    Promptly following the selection of the Successful Bid(s) and Alternate Bid(s), the Debtors shall file the Notice of Auction Results with the Court (which shall include the list of assumed Executory Contracts submitted with the Successful Bidder(s) Qualified Bid), cause the Notice of Auction Results to be published on the Case Information Website and serve the Notice of Auction Results and, if the Successful Bidder is not the Stalking Horse Bidder, Adequate Assurance Information for the Successful Bidder on (i) each Contract Counterparty for a contract designated by the Successful Bidder for assumption and assignment, and (ii) each Contract Counterparty to any known Contract that may later be designated by the Successful Bidder for assumption and assignment, in each case by overnight mail or electronic mail.  Objections of any Contract Counterparty related solely to the adequate assurance of future performance provided

by the Successful Bidder, if the Successful Bidder is not the Stalking Horse Bidder, must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof, (d) be filed prior to or at than the Sale Hearing[4] and (e) be served on the Objection Notice Parties.

30.    The Contract Counterparties shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether adequate assurance requirements under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), have been satisfied, and (ii) to support any objection to adequate assurance filed by the Contract Counterparty. The Debtors shall provide Adequate Assurance Information to applicable Contract Counterparties on a public basis with any confidential information redacted.  The Contract Counterparties wishing to receive confidential Adequate Assurance Information shall enter into a nondisclosure agreement in form and substance acceptable to (x) the Debtors and (y) the Stalking Horse Bidder or Successful Bidder(s), as applicable.

31.    For the avoidance of doubt and notwithstanding anything herein to the contrary, except as expressly set forth herein, nothing in this Sale Procedures Order, the Sale Procedures or the Sale Motion shall, or shall be construed to, in any way amend, impair, prejudice, alter or otherwise modify the terms of the Stalking Horse Agreement or the Stalking Horse Bidder's rights thereunder, and the Stalking Horse Agreement shall remain in full force and effect unless terminated in accordance with its terms.

32.    The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

---

[4] If the Stalking Horse Bidder is the Successful Bidder, objections to adequate assurance must be filed by the deadlines set forth in paragraphs 20 or 27 hereof, as applicable.

33.    Compliance with the notice provisions set forth herein shall constitute sufficient notice of the Debtors' proposed sale of the Debtors' assets free and clear of liens, claims, interests and encumbrances, pursuant to Bankruptcy Code section 363(f) and otherwise, and except as set forth in this Order, no other or further notice of the sale shall be required to be provided by the Debtors.

34.    The Sale Hearing may be continued, from time to time, without further notice to creditors or parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or in the hearing agenda for such hearing.

35.    Except for the Stalking Horse Bidder, no other party submitting an offer or bid for the Assets shall be entitled to any expense reimbursement, break-up, termination or similar fee or payment.

36.    Notwithstanding anything in this Order to the contrary, unless Cigna (as defined in the Objection of Cigna Entities to the Sale Motion [D.I. 103] (the "Cigna Objection")) and the Debtors agree otherwise, Debtors shall provide to Cigna, through its counsel of record, no later than five (5) business days prior to the Sale Hearing: (i) written notice of the Debtors' irrevocable decision as to whether or not it proposes to assume and assign any or all the Cigna Contracts (as defined in the Cigna Objection) as part of the Sale; (ii) the identity of the proposed assignee; and (iii) adequate assurance information for the proposed assignee, including a good faith estimate as to the number of employees of the Debtors who will become employees of the assignee.

37.    Except as otherwise provided in the Stalking Horse Agreement, this Order or the Sale Procedures, the Debtors further reserve the right as they may reasonably determine to be in the best interests of their estates (in consultation with the  Committee) to: (a) determine which

bidders are Qualified Bidders; (b) determine which bid are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Sale Procedures or the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (d) impose additional terms and conditions with respect to all potential bidders; (e) extend the deadlines set forth herein; and/or (f) continue or cancel the Auction and/or Sale Hearing in open court without further notice.

38.    All persons or entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the Transferred Assets, the Auction and any transaction contemplated herein.

39.    This Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

40.    Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014) or Local Bankruptcy Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

41.    For the reasons set forth in the Sale Motion, Bankruptcy Rule 6003 is satisfied.

42.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

43.    Proper, timely, adequate and sufficient notice of the Sale Motion has been provided in accordance with and satisfaction of the Bankruptcy Code, the Bankruptcy Rules and

the Local Bankruptcy Rules and no other or further notice of the Sale Motion or the entry of this Order shall be required.

44.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Stalking Horse Bidder to deliver any notice provided for in the Stalking Horse Agreement, including, without limitation, a notice terminating the Stalking Horse Agreement.

45.     The Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order.    All matters arising from or related to the implementation of this Order may be brought before the Court as a contested matter, without the necessity of commencing an adversary proceeding.    To the extent any provisions of this Order shall be inconsistent with the Sale Motion or the Sale Procedures, the terms of this Order shall control.

Dated:    March 22, 2019
          Wilmington, Delaware

_____
The Honorable Christopher S. Sontchi
Chief United States Bankruptcy Judge