# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PERNIX SLEEP, INC., *et al.*[1] | Case No. 19-10323 (CSS) |
| Debtors. | Jointly Administered |
| | **Related Doc. No. 26** |

## ORDER (I) APPROVING SALE OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Sale Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Sale Order"): *a) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (b) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (c) Granting Related Relief* and this Court having entered an order on March 22, 2019 [Docket No. 191] (the "Sale Procedures Order") approving the Sale Procedures in connection with the Sale of all or substantially all of the Debtors' assets and attached as Exhibit 1 to the Sale Procedures Order (the "Sale Procedures"), including, among other things, the proposed form of notice of the Sale Hearing; and the Debtors having determined after an extensive marketing and sale process and the Debtor having received no Qualified Bids by the Bid Deadline, that Phoenix Top

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are: Pernix Therapeutics Holdings, Inc. (4736), Pernix Therapeutics, LLC (1128), Pernix Manufacturing, LLC (1236), Pernix Sleep, Inc. (1599), Cypress Pharmaceuticals, Inc. (1860), Hawthorn Pharmaceuticals, Inc. (2769), Macoven Pharmaceuticals, L.L.C. (4549), Gaine, Inc. (3864), Respicopea, Inc. (1303), Pernix Ireland Limited (3106PH), Pernix Ireland Pain Designated Activity Company (0190LH), Pernix Holdco 1, LLC, Pernix Holdco 2, LLC, Pernix Holdco 3, LLC.  The Debtors' corporate headquarters and mailing address is 10 North Park Place, Suite 201, Morristown, NJ 07960.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Sale Motion or the Agreement, as applicable.

Holdings LLC (the "Buyer"), an entity formed by certain of the Prepetition Secured Parties for purposes of effectuating the purchase of the Transferred Assets, has submitted the highest or otherwise best bid for the Transferred Assets; and having selected the Buyer as the Successful Bidder in accordance with the Sale Procedures; and upon due, adequate, and sufficient notice of the Sale Motion, the cancellation of the Auction, the asset purchase agreement attached to this Sale Order as Exhibit 1 (the "Agreement"), and all other related transactions contemplated thereunder and in this Sale Order (such transactions collectively, the "Sale"); and upon the *Declaration of John A. Sedor in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 3] (the "Sedor Declaration"), the *Declaration of Stuart Erickson in Support of Motion of Debtors for Entry of Orders (I)(A) Approving Sale Procedures for Sale of Debtors Assets, (B) Approving Stalking Horse Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief*, exhibited to the Sale Motion as Exhibit A (the "Erickson Declaration") and the *Supplemental Declaration of Stuart Erickson in Support of Motion of Debtors for Entry of Order (A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 306] (the "Supplemental Erickson Declaration" and, together with the Erickson Declaration, the "Erickson Declarations"); and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and the

Court having reviewed and considered the Sale Motion, the Agreement, and all relief related thereto and any objections and other responses thereto, and the arguments of counsel made, and the evidence adduced, at the Sale Hearing and the entire record of the Sale Hearing; and this Court having conducted the Sale Hearing to consider entry of the Sale Order on April 15, 2019; and upon the full record in support of the relief requested by the Debtors in the Sale Motion; and this Court having core jurisdiction over this matter; and that this Court may enter a final order on the Sale and the Sale Motion consistent with Article III of the United States Constitution; and this Court having found that venue of the above-captioned chapter 11 cases (the "Chapter 11 Cases") and the Sale Motion in this district is proper; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and upon the full record of these Chapter 11 Cases and all other pleadings and proceedings, including the Sale Motion; and after due deliberation thereon, and good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:**[3]

**I.    Jurisdiction, Final Order, and Statutory Predicates.**

A.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). This Court may enter a final order with respect to the Sale

---

[3]    These findings and determinations constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.

Motion, the Sale, and all related relief, in each case, consistent with Article III of the United States Constitution. Venue of these Chapter 11 Cases and the Sale Motion is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014 and Rules 2002-1 and 6004-1 of the Local Bankruptcy Rules.

C.    This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Time is of the essence in closing the Sale, the Debtors and the Buyer intend to close the Sale as soon as practicable, and there is no just reason for delay in the implementation of this Sale Order. Specifically, the Sale must be approved and consummated promptly in order to preserve the viability of the business as a going concern, and to maximize the value of the Debtors' Assets to the Debtors, their estate, their creditors, and all other parties in interest. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004(h) and 6006(d).

## II.    Notice.

D.    Actual written notice of the Sale Motion, the assumption and assignment of the Transferred Contracts (as defined in the Agreement), and the Sale Hearing, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein and to the entry of this Sale Order, has been afforded to all known interested entities, including, but not limited to, the Notice Parties.

E.    With respect to entities or persons whose identities are not reasonably ascertainable by the Debtors, publication of the Sale Notice on the Debtors' case information website (located at https://cases.primeclerk.com/pernix) (the "Case Information Website"), was

sufficient and reasonably calculated under the circumstances to reach all such entities and persons.

F.      As further evidenced by the affidavits of service previously filed with the Court [Docket Nos. 92, 207, 213], and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale Hearing, the cancellation of the Auction, the Sale, and the assumption and assignment of the Transferred Contracts to be assumed and assigned to the Buyer at Closing pursuant to this Sale Order has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014 and the Local Bankruptcy Rules and in compliance with the Sale Procedures Order.  Notice of the Sale Motion, the Sale Hearing, the cancellation of the Auction, the Sale, and the assumption and assignment of the Transferred Contracts to be assumed and assigned to the Buyer at Closing pursuant to this Sale Order was and is timely, proper, sufficient, appropriate under the particular circumstances, and reasonably calculated to provide the Notice Parties and all other interested parties with timely and proper notice under the circumstances of these Chapter 11 Cases.  Such notice is fair and equitable under the circumstances and complied in all respects with the Sale Procedures, sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, and 9007 and Local Rule 6004-1. No other or further notice with respect to such matters is, or shall be, required.

G.      The Potential Assumption and Assignment Notice and Supplemental Assignment and Assumption Notice provided the Buyer and each Contract Counterparty with proper notice of the potential assumption and assignment of the applicable Transferred Contract and any Cure

Claim relating thereto, and the procedures set forth therein with regard to any such Cure Claim to satisfy Bankruptcy Code section 365 and Bankruptcy Rule 6006.

H.     A reasonable opportunity to object and be heard with respect to the Sale, the Sale Motion, and the relief requested therein, has been afforded to all interested Persons (as defined in the Agreement).

I.     The disclosures made by the Debtors concerning the Sale Motion, the Agreement, the Sale Procedures, the cancellation of the Auction and the Sale Hearing were good, complete and adequate.

**III.    Corporate Authority.**

J.     Each Debtor (i) has full requisite corporate or other organizational power and authority to execute, deliver, and perform the Agreement and the Ancillary Agreements, and consummate the transactions contemplated thereby (including the Sale), and such execution, delivery, and performance have been duly and validly authorized by all necessary corporate or other organizational action of each of the Debtors, (ii) has taken all requisite corporate or other organizational action and formalities necessary to authorize and approve the execution, delivery, and performance of the Agreement and the Ancillary Agreements and the consummation by the Debtors of the transactions contemplated thereby (including the Sale), including as required by their respective organizational documents, and, upon execution thereof, each of the Agreement and each Transaction Document executed by such Debtor will be duly and validly executed and delivered by such Debtor and enforceable against such Debtor in accordance with its terms and, assuming due authorization, execution, and delivery thereof by the other parties thereto, will constitute a valid and binding obligation of such Debtor, and (iii) no government, regulatory, or other consents or approvals, other than those expressly provided for in the Agreement, are required for the execution, delivery, and performance by the Debtors of the Agreement and the

Ancillary Agreements, or the consummation of the transactions (including the Sale) contemplated thereby, or take, or cause to be taken, all such other actions, as may be reasonably necessary to effectuate or evidence the transactions contemplated by the Agreement and the Ancillary Agreements (including the Sale).

## IV.    Compliance with Sale Procedures and Sale Procedures Order.

K.    As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have adequately marketed the Transferred Assets and conducted the sale process in compliance with the Sale Procedures and the Sale Procedures Order, and the bidding process was conducted in a noncollusive, fair, and good-faith manner. The Debtors and their professionals conducted the sale process in compliance with the Sale Procedures and the Sale Procedures Order and have afforded potential purchasers a full and fair opportunity to participate in the bidding process for the Transferred Assets and make higher or better offers.  In accordance with the Sale Procedures Order, the Agreement was deemed a Qualified Bid and the Buyer was a Qualified Bidder eligible to participate at the Auction.  In accordance with the Sale Procedures and the Sale Procedures Order, the Debtors determined that the bid submitted by the Buyer and memorialized by the Agreement is the highest and otherwise best offer for the Purchased Assets received by the Debtors.

## V.    Good Faith of Buyer.

L.    The Debtors and the Buyer have not engaged in any conduct that would cause or permit the Agreement or the consummation of the Sale to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n). The Buyer has not acted in a collusive manner with any Person, and the purchase price was not controlled by any agreement among bidders, all of whom acted in good-faith, at arm's length, and in a noncollusive manner. The Agreement was

negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions. Among other things (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Transferred Assets; (ii) the Buyer complied with the provisions of the Sale Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Sale Procedures Order as modified by the Debtors in their business judgment; (iv) all payments to be made by the Buyer, and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; and (v) no common identity of directors or controlling stockholders exists between the Buyer, on the one hand, and the Debtors, on the other hand. The Buyer is purchasing the Transferred Assets in good faith and for fair and reasonable consideration, and the Buyer is a good-faith Buyer within the meaning of section 363(m) of the Bankruptcy Code and is not an "insider" of any Debtor (as defined under section 101(31) of the Bankruptcy Code). The Buyer is therefore entitled to the full rights, benefits, privileges, and protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and nonbankruptcy law.

M.    An injunction against creditors of the Debtors and third parties pursuing Liens, Claims and Excluded Liabilities is necessary to induce the Buyer to close the Sale; the issuance of such an injunction is therefore necessary to avoid irreparable injury to the Debtors' estates, and will benefit all creditors of the Debtors.

N.    Pursuant to the Agreement and sections 363(b) and 363(k) of the Bankruptcy Code, Buyer, in addition to the other consideration offered under the Agreement, credit bid the Credit Bid Consideration (as defined in the Agreement) (the "Credit Bid"). With respect to the Credit Bid, the Court finds and determines that (i) the Credit Bid was a valid and proper offer

pursuant to the Sale Procedures Order; (ii) there is no cause to limit the amount of the Credit Bid pursuant to section 363(k) of the Bankruptcy Code; and (iii) in accordance with Bankruptcy Code section 363(k), the Debtors valued each dollar of the Credit Bid as equivalent to one dollar of cash, and such valuation was appropriate and represents a reasonable exercise of the Debtors' business judgment.

## VI.    Highest and Best Offer.

O.    The Sale Procedures are reasonable and appropriate and represent the best available method for conducting the sale process in a manner that maximizes value for the benefit of the Debtors' estates.

P.    As demonstrated by the Erickson Declarations, the Sedor Declaration, the evidence proffered or adduced at the Sale Hearing and the arguments of counsel made on the record at the Sale Hearing, the Debtors' marketing and sales process with respect to the Transferred Assets in accordance with the Sale Procedures (including the Debtors' prepetition and postpetition marketing process with respect to the Transferred Assets and the marketing and auction process set forth in the Sale Procedures and the Sale Procedures Order), afforded a full, fair, and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase the Transferred Assets. The Debtors conducted a marketing and auction process in accordance with, and have otherwise complied in all respects with, the Sale Procedures and the Sale Procedures Order. As of the Bid Deadline, no higher or otherwise better offers for the Purchased Assets have been made, and a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Transferred Assets.

Q.    As demonstrated by the Erickson Declarations, the Sedor Declaration, the evidence proffered or adduced at the Sale Hearing and the arguments of counsel made on the record at the Sale Hearing, the Agreement constitutes the highest and best offer for the

9

Transferred Assets, and the Debtors' determination that the Agreement maximizes value for the benefit of the Debtors' estates and constitutes the highest and best offer for the Transferred Assets each constitutes a valid and sound exercise of the Debtors' business judgment and is in accordance and compliance with the Sale Procedures and the Sale Procedures Order. The Agreement provides fair and reasonable terms for the purchase of the Transferred Assets.

R.      Approval of the Sale Motion and the Agreement and the prompt consummation of the transactions contemplated thereby will maximize the value of each of the Debtors' estates and are in the best interests of the Debtors, their chapter 11 estates, their creditors, and other parties in interest.

**VII.    No Merger; Buyer Not an Insider; No Successor Liability.**

S.      The Buyer is not a "successor" to, a mere continuation of, or alter ego of the Debtors or their estates, and there is no continuity of enterprise or common identity between the Buyer and the Debtors. The Buyer is not holding itself out to the public as a successor to or a continuation of the Debtors or their estates. The Buyer is not a successor to any of the Debtors or their estates by reason of any theory of law or equity, and the Sale does not amount to a consolidation, succession, merger, or de facto merger of Buyer and the Debtors. Immediately prior to the Closing Date, the Buyer was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders existed between the Debtors and the Buyer. The transfer of the Transferred Assets to the Buyer, and the assumption of the Assumed Liabilities by the Buyer, except as otherwise explicitly set forth in the Agreement, does not, and will not, subject the Buyer to any liability whatsoever, with respect to the Debtors or the operation of the Debtors' businesses prior to the Closing or by reason of such transfer, including under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or any

10

foreign jurisdiction, based, in whole or in part, directly or indirectly, on any, or any theory of, successor, vicarious, antitrust, environmental, revenue, pension, ERISA, tax, labor (including any WARN Act), employment or benefits, de facto merger, business continuation, substantial continuity, alter ego, derivative, transferee, veil piercing, escheat, continuity of enterprise, mere continuation, product line, or products liability or law, or other applicable law, rule, or regulation (including filing requirements under any such law, rule, or regulation), or theory of liability, whether legal, equitable, or otherwise (collectively, the "<u>Successor or Other Liabilities</u>"). Pursuant to the Agreement, the Buyer shall have no liability for the Excluded Liabilities.

**VIII.   Ownership of Assets.**

T.    The Transferred Assets constitute property of the Debtors' estates and good title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

**IX.    Validity of Transfer.**

U.    The Agreement is a valid and binding contract between the Debtors and the Buyer. The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia, or foreign jurisdiction. As demonstrated by the Erickson Declarations and the Sedor Declaration, the consideration provided by the Buyer for the Transferred Assets pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Transferred Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia, and any foreign jurisdiction (including the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent

11

Transfer Act, and similar laws and acts). Neither the Debtors nor the Buyer is entering into the transactions contemplated by the Agreement fraudulently for the purpose of statutory and common-law fraudulent conveyance and fraudulent transfer claims.

**X.      Section 363(f) Is Satisfied.**

V.      The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full with respect to each Interest in the Transferred Assets; therefore, the Debtors may sell the Transferred Assets free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities).

W.      The Buyer would not have entered into the Agreement and would not consummate the transactions contemplated thereby if (i) the sale of the Transferred Assets to the Buyer were not free and clear of all Interests (other than Permitted Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever, or (ii) if the Buyer would, or in the future could, be liable for any of the Interests (other than the Permitted Encumbrances and the Assumed Liabilities). The Buyer will not consummate the transactions contemplated by the Agreement unless this Court expressly orders that none of the Buyer, its Affiliates, its members or shareholders, or the Transferred Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, or by payment, setoff, recoupment, or otherwise, directly or indirectly, any Interests (other than Permitted Encumbrances and the Assumed Liabilities), including rights or claims based on any Successor or Other Liabilities. The total consideration to be provided under the Agreement reflects the Buyer's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to and possession of the Transferred Assets free and clear of all Interests (other than Permitted Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever (including, without limitation, any potential Successor or Other Liabilities).

12

X.    Not transferring the Transferred Assets free and clear of all Interests (other than Permitted Encumbrances and Assumed Liabilities), including rights or claims based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state, federal, or foreign law or otherwise, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Transferred Assets other than pursuant to a transfer that is free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

Y.    The Debtors may sell the Transferred Assets free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests who did not timely object to the Sale or the Sale Motion in accordance with the Sale Procedures Order or withdrew objections to the Sale or the Sale Motion are deemed to have consented to the Sale and the Sale Motion pursuant to section 363(f)(2) of the Bankruptcy Code. All Interests (except to the extent that such Interests are Permitted Encumbrances or Assumed Liabilities) fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code. All holders of Interests are adequately protected by having their Interest, if any, in each instance against the Debtors, their estates, or any of the Transferred Assets attach to the net cash proceeds of the Sale ultimately attributable to the Transferred Assets in which such holder alleges an Interest, in the same order of priority, with the same validity, force, and effect that such Interest had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess thereto.

## XI.    Cure Claims and Adequate Assurance of Future Performance.

Z.    The assumption and assignment of the Transferred Contracts pursuant to the terms of this Sale Order is integral to the Agreement and is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  The assumption and assignment of the Transferred Contracts (i) is necessary to sell the Transferred Assets to the Buyer, (ii) allows the Debtors to maximize the value of the Transferred Assets, including the Transferred Contracts, (iii) limits the losses suffered by Contract Counterparties, and (iv) maximizes the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Transferred Contracts.  For these reasons, the Debtors have exercised sound business judgment in assuming and assigning the Transferred Contracts and such assumption and assignment is in the best interests of the Debtors' estates.

AA.    Pursuant to section 365(f) of the Bankruptcy Code, each Transferred Contract required to be assumed and assigned under the Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in such contract prohibiting its assignment or transfer.  No section of any of the Transferred Contracts that would prohibit, restrict, or condition, whether directly or indirectly, the use, assumption, or assignment of any of the Transferred Contracts in connection with the Sale shall have any force or effect.

BB.    The Debtors' and Buyer's obligations to pay the Cure Claims under the Agreement, and the Buyer's agreement to perform the obligations under the Transferred Contracts in accordance with the terms of the Agreement shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the

Bankruptcy Code to the extent that any such assurance is required and not waived by the

Contract Counterparties.

**XII.    Not a Sub Rosa Plan.**

CC.    The Sale does not constitute a sub rosa chapter 11 plan for which approval has

been sought without the protection that a disclosure statement would afford.  The Sale neither

impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a

liquidating plan for the Debtors.

**XIII.   Compelling Circumstances for an Immediate Sale.**

DD.    The Debtors' decision to enter into the Agreement, the Ancillary Agreements, and

the Sale represents an exercise of sound business judgment.  The sale of the Transferred Assets

must be approved and consummated promptly in order to preserve the value of the Transferred

Assets.  The Debtors have demonstrated both (i) good, sufficient, and sound business purposes

and justifications for approving the Agreement and (ii) compelling circumstances for the

immediate approval and consummation of the transactions contemplated by the Agreement and

the Ancillary Agreements outside the ordinary course of business, pursuant to section 363(b) of

the Bankruptcy Code before, and outside of, a plan of reorganization, in that the prompt

consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the

Debtors' estates.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules

6004 and 6006 with respect to the transactions contemplated by this Sale Order.

**THE COURT HEREBY ORDERS THAT:**

**I.    General Provisions.**

1.    The findings and conclusions set forth herein constitute the Court's findings of

fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Chapter

11 Cases pursuant to Bankruptcy Rule 9014.  To the extent that any of the findings of fact

constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

2.      The Sale Motion and the relief requested therein is granted and approved, and the Sale and transactions contemplated in the Sale Motion, Agreement, and Ancillary Agreements are approved, in each case as set forth herein and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this Sale Order.

3.      All objections to, reservations of rights regarding, or other responses to the Sale Motion or the relief requested therein, the Agreement, the Ancillary Agreements, the Sale, the entry of this Sale Order, or the relief granted herein that have not been withdrawn, waived, or settled, or that have not otherwise been resolved pursuant to the terms hereof, as announced to the Court at the Sale Hearing, or by stipulation filed with the Court, are hereby denied and overruled on the merits with prejudice. Those parties who did not timely object to the Sale Motion or the entry of this Sale Order in accordance with the Sale Procedures Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code. Timely filed Assumption and Assignment Objections, if not announced and heard at the Sale Hearing, shall be heard on an expedited basis prior to the Closing Date.

4.      The Court's findings of fact and conclusions of law in the Sale Procedures Order, including the record of the Sale Procedures Hearing, are incorporated herein by reference.

**II.      Approval of the Agreement.**

5.      The Agreement and the Ancillary Agreements, including, in each case, any amendments, supplements, and modifications thereto, and all of the terms and conditions thereof, are hereby approved.

6.      Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Agreement and the Ancillary Agreements, (b) close the Sale as contemplated in the Agreement and this Sale Order, and (c) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of their obligations as contemplated by the Agreement or the Ancillary Agreements, including the assumption and assignment to the Buyer of the Transferred Contracts and the entry into any transition services agreements or employee secondment agreements contemplated by the Agreement, in each case without further notice to or order of this Court and including any actions that otherwise would require further approval by the Contract Counterparties, shareholders, members, or its board of directors, as the case may be, without the need of obtaining such approvals, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the Sale. The Debtors are further authorized to pay, without further order of this Court, whether before, at or after the Closing, any amounts that become payable by the Debtors pursuant to the Agreement (and related agreements executed in connection with the Sale), together with other fees and expenses approved by the Court. Such amounts shall (i) constitute allowed administrative expenses of the Debtors' estates under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; (ii) be treated with such priority if the Chapter 11 Cases convert to cases under chapter 7 of the Bankruptcy Code; and (iii) not be discharged, modified or otherwise affected by any reorganization or liquidation plan for any of the Debtors, except by written agreement with the Buyer (such agreement to be provided in the Buyer's sole discretion).

7.        The Agreement, this Sale Order, and the Ancillary Agreements shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of Claims (whether known or unknown) against the Debtors, any holders of Liens or other Interests against, in, or on all or any portion of the Transferred Assets, all counterparties to any executory contract or unexpired lease of the Debtors (including all Contract Counterparties), the Buyer, and all successors and assigns of each of the foregoing, including, without limitation, any trustee subsequently appointed in these Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code, and any Person seeking to assert rights on behalf of any of the foregoing or that belong to the Debtors' estates.

**III.      Transfer of the Transferred Assets.**

8.        Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtors shall transfer the Transferred Assets, including but not limited to, the Transferred Contracts, to the Buyer on the Closing Date in accordance with the terms of the Agreement and the Ancillary Agreements; such transfer shall constitute a legal, valid, binding, and effective transfer of such Transferred Assets; and the Buyer shall take title to and possession of such Transferred Assets free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities).  Any and all valid and perfected Interests in the Transferred Assets shall attach solely to the proceeds of the Sale with the same validity, force, and effect, if any, and in the same order of priority, that they have now as against the Transferred Assets, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

9.        At the Closing, the Debtors shall remit all proceeds and value of the Sale that are attributable to the collateral securing the Prepetition Treximet Notes under the Prepetition Treximet Notes Indenture, to the Prepetition Treximet Notes Trustee.  The Prepetition Treximet

Notes Trustee is authorized to distribute such proceeds pursuant to and in accordance with the Prepetition Treximet Notes Indenture.

10.    Effective as of the Closing, the transfer of the Transferred Assets to the Buyer will be a legal, valid, enforceable, and effective sale and transfer of the Transferred Assets and the Assumed Liabilities and (i) will vest the Buyer with all legal, equitable, and beneficial right, title, and interest of the Debtors to the Transferred Assets free and clear of all Interests (as defined below) (other than Permitted Encumbrances or Assumed Liabilities (each as defined in the Agreement)) of any kind or nature whatsoever, including without limitation, rights or claims based on any Successor or Other Liabilities, and (ii) will render the Buyer fully liable for any and all Assumed Liabilities, and assumption of any Assumed Liabilities by the Buyer shall constitute a legal, valid and effective delegation of any Assumed Liabilities to the Buyer and shall divest the Debtors of all liability with respect to any Assumed Liabilities.

11.    The transfer of each of the Transferred Assets to the Buyer will be, as of the Closing Date, a legal, valid, and effective transfer of the Transferred Assets, which transfer vests or will vest the Buyer with all right, title, and interest to the Transferred Assets free and clear of (i) all liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code) and Encumbrances (as defined in the Agreement) relating to, accruing, or arising any time prior to the Closing Date (collectively, the "Liens"), and (ii) all debts (as that term is defined in section 101(12) of the Bankruptcy Code) arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, deeds of trust,

security interests or similar interests, conditional sale or other title retention agreements and other similar impositions, restrictions on transfer or use, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, alter ego liability, suits, credits, allowances, options, limitations, causes of action, choses in action, rights of first refusal or first offer, rebate, chargeback, credit, or return, proxy, voting trust or agreement or transfer restriction under any shareholder or similar agreement or encumbrance, easements, rights of way, encroachments, Liabilities (as defined in the Agreement), and matters of any kind and nature, whether arising prior to or subsequent to the Petition Date, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, rights with respect to Claims (as defined below) and Liens (A) that purport to give to any party a right or option to effect a setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or the Buyer's interests in the Transferred Assets, or any similar rights, if any, or (B) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attribute of ownership) (collectively, as defined in this clause (ii), the "Claims," and together with the Liens and other interests of any kind or nature whatsoever, the "Interests"), relating to, accruing, or arising any time prior to entry of this Sale Order, with the exception of the Permitted Encumbrances and the Assumed Liabilities.  Notwithstanding anything to the contrary herein, the Agreement, the Sale Procedures Order, the Sale Motion or any Ancillary Agreement,

"Interests" shall not include, and the assets shall not be sold free and clear of, rights of setoff asserted pre-petition, recoupment, or other affirmative defenses.

12.     Except as expressly assumed by the Buyer under the Agreement, the transfer of the Transferred Assets to the Buyer and the assignment to the Buyer of the Transferred Contracts will not subject the Buyer to any liability whatsoever which may become due or owing under the Transferred Contracts prior to the Closing Date, or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or foreign jurisdiction, based, in whole or in part, directly or indirectly, on any theory of law or equity, including any Successor or Other Liabilities.

13.     The Agreement is a valid and binding contract between the Debtors and the Buyer and shall be enforceable pursuant to its terms. The Agreement, the Sale, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed in these Chapter 11 Cases or any converted or successor cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person. The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia, or foreign jurisdiction. As demonstrated by the Erickson Declarations and the Sedor Declaration, the consideration provided by the Buyer for the Transferred Assets pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Transferred Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the

District of Columbia, and any foreign jurisdiction (including the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and similar laws and acts). Neither the Debtors nor the Buyer is entering into the transactions contemplated by the Agreement with any fraudulent or otherwise improper purpose, including for the purpose of statutory and common-law fraudulent conveyance and fraudulent transfer claims.

14.    Each and every federal, state, local, and other governmental agency, governmental department, filing agent, filing officer, title agent, recording agency, secretary of state, federal, state, and local official, and any other persons and entity who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Transferred Assets, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement. Neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments or documents in order to effectuate, consummate, and implement the provisions of this Sale Order. The Buyer may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county, or other territory or jurisdiction in which any of the Debtors is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Sale Order as of the Closing Date.

15.    On the Closing Date, each of the Debtors' creditors is authorized to execute such documents and take all other actions as may be reasonably necessary to release its Liens, if any,

in the Transferred Assets, as such Liens may otherwise exist.  If any Person that has filed a

financing statement, mortgage, mechanic's lien, *lis penden*s, or other statement, document, or

agreement evidencing an Interest in any portion of the Transferred Assets (other than statements

or documents with respect to Permitted Encumbrances or Assumed Liabilities) shall not have

delivered to the Debtors prior to the Closing, in proper form for filing and executed by the

appropriate parties, termination statements, instruments of satisfaction, releases, and/or other

similar documents necessary for the purpose of documenting the release of all Interests that such

Person has in the Transferred Assets, then (i) the Debtors are hereby authorized to execute and

file such statements, instruments, releases, and/or other similar documents on behalf of such

Person with respect to the Transferred Assets, (ii) the Buyer is hereby authorized to file, register,

or otherwise record a certified copy of this Sale Order that, once filed, registered, or otherwise

recorded, shall constitute conclusive evidence of the release of all Interests of any kind or nature

in the Transferred Assets, and (iii) the Buyer may seek in this Court, or any other court of

appropriate jurisdiction, to compel the appropriate parties to execute termination statements,

instruments of satisfaction, releases, and/or other similar documents with respect to all Interests

that such Person has in the Transferred Assets.  This Sale Order is deemed to be in recordable

form sufficient to be placed in the filing or recording system of each and every federal, state, or

local government agency, department, or office.

      16.     The Debtors and the Buyer shall have no obligation to proceed with the Closing

until all conditions precedent to its obligations to proceed have been met, satisfied or waived in

accordance with the terms of the Agreement.

      17.     Unless the Buyer otherwise consents, all Persons that are in or come into

possession of any portion of the Transferred Assets, at any time prior to the Closing Date, are

hereby directed to surrender possession of such Transferred Assets to the Buyer on the Closing

Date, or at such time thereafter as the Buyer may request.  Subject to the terms of this Sale Order,

all Persons are hereby forever prohibited and enjoined from taking any action that would

adversely affect or interfere with the ability of the Debtors to sell and transfer the Transferred

Assets to the Buyer in accordance with the terms of the Agreement and this Sale Order.

18.     This Sale Order is and shall be binding upon and govern the acts of all Persons

(including, without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, federal, state, and local officials, and all other

persons or entities) who may be required by operation of law, the duties of their office, or

contract, to accept, file, register, or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any lease; and each of

the foregoing Persons shall accept for filing any and all of the documents and instruments

necessary and appropriate to release, discharge, and terminate any of the Interests or to otherwise

consummate the transactions contemplated by the Agreement, the Ancillary Agreements, and

this Sale Order.

19.     To the extent permitted under applicable law, the Buyer shall be authorized, as of

the Closing Date, to operate under any license, permit, registration, and governmental

authorization or approval of the Debtors with respect to the Transferred Assets, and all such

licenses, permits, registrations, and governmental authorizations or approvals are deemed to have

been, and hereby are, directed to be transferred to the Buyer as of the Closing Date.  To the

extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke,

suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the

Transferred Assets on account of the filing or pendency of these Chapter 11 Cases or the

consummation of the transactions contemplated by the Agreement, including the Sale and the

assumption and assignment of the Transferred Contracts.  To the extent any license or permit

necessary for the operation of the business of the Debtors is determined not to be an executory

contract assumable and assignable under section 365 of the Bankruptcy Code or otherwise

transferable to the Buyer, the Buyer may apply for and obtain any necessary license or permit

promptly and the Debtors are hereby authorized to cooperate with the Buyer in connection with

any such application as the Buyer deems reasonably necessary or desirable, pursuant to the

provisions of the Agreement.

20.     Notwithstanding anything to the contrary herein, as of or following the Closing

Date, as applicable, the Buyer shall assume and pay, discharge, perform or otherwise satisfy the

Assumed Liabilities, subject to the terms of the Agreement.

**IV.     Assumption and Assignment of Transferred Contracts.**

21.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to

and conditioned upon the Closing of the Sale and the resolution of all timely filed Assumption

and Assignment Objections, the Debtors' assumption and assignment to the Buyer, and the

Buyer's acceptance of the Transferred Contracts, on the terms set forth in the Agreement, is

hereby approved, and the requirements of section 365(b)(1) with respect thereto are hereby found

and deemed to be satisfied.

22.     The Debtors are hereby authorized and, unless the Debtors and the Buyer

otherwise agree, directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy

Code to (a) assume and assign to the Buyer, effective upon the Closing Date, the Transferred

Contracts free and clear of all Interests (other than the Permitted Encumbrances and the Assumed

Liabilities) and (b) execute and deliver to the Buyer such documents or other instruments as Buyer deems may be necessary to assign and transfer the Transferred Contracts to the Buyer.

23.     With respect to the Transferred Contracts, and with respect to the Sale of the Transferred Assets to the Buyer: (a) the Debtors may assume each of the Transferred Contracts in accordance with section 365 of the Bankruptcy Code; (b) the Debtors may assign each Transferred Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and, to the extent provided in section 365 of the Bankruptcy Code, any provisions in any Transferred Contract that prohibit or condition the assignment of such Transferred Contract or allow the party to such Transferred Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Transferred Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of each Transferred Contract have been satisfied; and (d) effective upon the Closing, the Transferred Contracts shall be transferred and assigned to, and from and following the Closing remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any Transferred Contract that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Transferred Contracts after such assumption and assignment to the Buyer, except as provided in the Agreement.  To the extent any provision in any Transferred Contract assumed and assigned pursuant to this Sale Order (i) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, such assumption and assignment (including, without limitation, any "change of control" provision), or (ii) is modified, breached, or terminated, or deemed modified, breached,

or terminated by any of the following: (A) the commencement of these Chapter 11 Cases, (B) the insolvency or financial condition of any of the Debtors at any time before the closing of these Chapter 11 Cases, (C) the Debtors' assumption and assignment of such Transferred Contract, (D) a change of control or similar occurrence, or (E) the consummation of the Sale, then such provision shall be deemed modified so as not to entitle the non-Debtor party thereto to prohibit, restrict, or condition such assumption and assignment, to modify, terminate, or declare a breach or default under such Transferred Contract, or to exercise any other default-related rights or remedies with respect thereto. With respect to the Sale of the Transferred Assets to the Buyer, all such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

24.    All defaults or other obligations of the Debtors under the Transferred Contracts arising or accruing prior to the Closing of the Sale, or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Transferred Contracts shall be cured by the Debtors or the Buyer, as applicable, to the extent set forth in the Agreement and this Sale Order.

25.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Transferred Contracts have been satisfied. Each of the Transferred Contracts shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms as of the Closing, subject to any amendments or modifications agreed to between a Contract Counterparty and the Buyer. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Transferred Contracts, and each Transferred Contract shall be fully

enforceable by the Buyer in accordance with its respective terms and conditions, except as limited or modified by this Sale Order. To the extent provided in the Agreement, the Debtors shall cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

26.    Upon payment of the Cure Claims pursuant to the terms hereof and the Agreement, and the Debtors' assignment of the Transferred Contracts to the Buyer under the provisions of this Sale Order, no default or other obligations arising prior to the Closing shall exist under any Transferred Contract, and each Contract Counterparty is forever barred, estopped, and permanently enjoined from (a) declaring a default by the Debtors or the Buyer under such Transferred Contract based on acts or occurrences arising prior to or existing as of the Closing of the Sale, (b) raising or asserting against the Debtors or the Buyer, or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Transferred Contracts, or (c) taking any other action against the Buyer as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Transferred Contract. Each Contract Counterparty hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the Buyer, or the property of any of them, any default or Claim arising out of any indemnity or other obligation or warranties for acts or occurrences arising prior to or existing as of the Closing of the Sale, and (ii) imposing or charging against Buyer or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignments to Buyer of the Transferred Contracts.

27.    Subject to the terms and conditions of the Agreement, and upon the Closing, the Debtors shall have: (i) to the extent necessary, cured or provided adequate assurance of cure of,

any default existing prior to the date hereof under the Transferred Contracts, within the meaning

of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code and (ii) to the extent

necessary, provided compensation or adequate assurance of compensation to any party for any

actual pecuniary loss to such party resulting from a default prior to the date hereof under the

Transferred Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(B) of the

Bankruptcy Code.  The Debtors' and Buyer's obligations to pay the Cure Claims under the

Agreement and the Buyer's agreement to perform the obligations under the Transferred

Contracts in accordance with the terms of the Agreement shall constitute adequate assurance of

future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the

Bankruptcy Code to the extent that any such assurance is required and not waived by the

Contract Counterparties.

28.     To the furthest extent permitted by law, any party that may have had the right to

consent to the assumption or assignment of a Transferred Contract is deemed to have consented

to such assumption and assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy

Code if such party failed to timely object to the assumption or assignment of such Transferred

Contract in accordance with the Sale Procedures Order, and the Buyer shall be deemed to have

demonstrated adequate assurance of future performance with respect to such Transferred

Contract pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Any

Contract Counterparties to a Transferred Contract designated to be assumed and assigned to the

Buyer who has not timely filed and served an objection in accordance with the Sale Procedures

Order shall be barred from objecting, or asserting monetary or non-monetary defaults, with

respect to any such Transferred Contract, and such Transferred Contract shall be deemed

assumed by the Debtors and assigned to the Buyer on the Closing Date pursuant to this Sale Order.

29.    To the extent a Contract Counterparty fails to timely object to the Cure Claims for such Transferred Contract in accordance with the Sale Procedures Order, such Cure Claims shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Claims at any time.

30.    Upon and as of the Closing, the Buyer shall be deemed to be substituted for the applicable Debtor as a party to the applicable Transferred Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Transferred Contracts.

31.    The Contract Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Transferred Assets.

32.    From the date of the entry of the Sale Order, the Debtors may, in their sole discretion, settle objections to assumption and assignment of any Transferred Contract, including to proposed Cure Claims, without any further notice to or action by any party or order of the Court (including by paying any agreed Cure Claim); *provided* that notice to and consent of the Buyer shall be required to the extent the Buyer is liable for such Cure Claim pursuant to the Agreement as modified by this Sale Order.  Unless the Court orders otherwise, contemporaneously with the resolution of any such objection, the executory contract or unexpired lease underlying such objection shall be deemed a Transferred Contract to the Buyer without the necessity of obtaining any further order of the Court.

33.     Notwithstanding anything to the contrary herein or in the Sale Procedures, no executory contract or unexpired lease as to which a Contract Counterparty timely files and serves an objection in accordance with the Assumption and Assignment Procedures shall be considered a Transferred Contract under this Sale Order unless and until any timely objection to the assumption and assignment of such executory contract or unexpired lease has been resolved or overruled.

34.     Nothing in this Sale Order, the Sale Motion, the Sale Procedures Order, any Potential Assumption and Assignment Notice, or any other  notice or any other document is or shall be deemed an admission by the Debtors that any contract is an executory contract or must be assumed and assigned pursuant to the Agreement or in order to consummate the Sale.

**V.      No Successor Liability; Prohibition of Actions Against the Buyer.**

35.     The Buyer is not a "successor" to, continuation of, or alter ego of, any of the Debtors or their estates by reason of any theory of law or equity.  Except with respect to the Permitted Encumbrances and Assumed Liabilities, the Buyer shall not have, assume, or be deemed to assume, or in any way be responsible for, any liability or obligation of any of the Debtors or their estates, or any of the Debtors' predecessors or Affiliates with respect to the Transferred Assets or otherwise.  Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Agreement, the Buyer shall not be liable for any Interests against, or with respect to, the Debtors, their estates, or any of the Debtors' predecessors, or Affiliates, including but not limited to, any Successor or Other Liabilities.  Neither the purchase of the Transferred Assets by the Buyer nor the fact that the Buyer is using any of the Transferred Assets previously operated by the Debtors will cause the Buyer to be deemed a successor to, combination of, or alter ego of, in any respect, any of the Debtors or the Debtors' businesses, or incur any liability derived therefrom within the meaning of any foreign, federal, state, or local

revenue, pension, ERISA, tax, antitrust, environmental, labor law (including any WARN Act), employment or benefits law, de facto merger, business continuation, substantial continuity, successor, vicarious, alter ego, derivative, or transferee liability, veil piercing, escheat, continuity of enterprise, mere continuation, product line, or other law, rule, regulation (including filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine, whether now known or unknown, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether matured or unmatured, whether contingent or noncontingent, whether liquidated or unliquidated, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, liabilities on account of warranties, intercompany loans, and receivables among the Debtors, and any taxes, arising, accruing, or payable under, out of, in connection with, or in any way relating to the cancellation of debt of the Debtors or their Affiliates, or in any way relating to the operation of any of the Transferred Assets prior to the Closing Date, in each case other than the Permitted Encumbrances and Assumed Liabilities.

36.      Except with respect to Permitted Encumbrances, Assumed Liabilities and to the extent otherwise specifically agreed in the Agreement, the Buyer shall not have any liability, responsibility, or obligation for any Interests of the Debtors or their estates, including any claims, liabilities, or other obligations related to the Transferred Assets which may become due or owing (a) prior to the Closing Date or (b) from and after the Closing Date but which arise out of or relate to any act, omission, circumstance, breach, default, or other event occurring prior to the Closing Date.

37.    Except with respect to Permitted Encumbrances, Assumed Liabilities, or as otherwise set forth in the Agreement, all Persons (including but not limited to, all debt holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, contract counterparties, customers, landlords, licensors, employees), and other holders of Interests against or in any of the Debtors or any portion of the Transferred Assets (whether legal or equitable, secured or unsecured, matured or unmatured, known or unknown, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, asserted or unasserted, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Transferred Assets, the operation of the Debtors' business prior to the Closing, or the transfer of the Transferred Assets to the Buyer (including without limitation any Successor or Other Liabilities or rights or claims based thereon) shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing against the Buyer, any of the Buyer's Affiliates or Subsidiaries, or any of their respective officers, directors, partners, principals, shareholders, professionals, or representatives, successors, or assigns, or their respective assets or properties, including, without limitation, the Transferred Assets, the Interests of any kind or nature whatsoever such Person had, has, or may have against or in the Debtors, their estates, officers, directors, shareholders, or the Transferred Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding) against the Buyer, the Buyer's Affiliates or Subsidiaries, or any of their respective officers, directors, partners, principals, shareholders, professionals, or

representatives, successors, or assigns, or their respective assets or properties, including the Transferred Assets; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, any of the Buyer's Affiliates or Subsidiaries, or any of their respective officers, directors, partners, principals, shareholders, professionals, or representatives, successors, or assigns, or their respective assets or properties, including the Transferred Assets; (c) creating, perfecting, or enforcing any Interest against the Buyer, any of the Buyer's Affiliates or Subsidiaries, or any of their respective officers, directors, partners, principals, shareholders, professionals, or representatives, successors, or assigns, or their respective assets or properties, including the Transferred Assets; (d) asserting any setoff not asserted prepetition, or right of subrogation, of any kind against any obligation due the Buyer, any of its Affiliates or Subsidiaries, or any of their respective officers, directors, partners, principals, shareholders, professionals, or representatives, successors, or assigns, or their respective assets or properties, including the Transferred Assets; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) to the extent prohibited by Section 525 of the Bankruptcy Code, revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Transferred Assets or conduct any of the businesses operated with the Transferred Assets. Nothing contained herein, the Agreement, the Sale Motion, the Sale Procedures Order or any Ancillary Agreement shall enjoin any party from asserting any affirmative defenses.

38.    Except as provided in the Agreement and without limiting other applicable provisions of this Sale Order, the Buyer is not, by virtue of the consummation of the Sale,

assuming, nor shall it be liable or responsible for any liabilities, debts, commitments, or

obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate,

fixed, or otherwise) in any way whatsoever relating to or arising from the Debtors, the

Transferred Assets, or the Debtors' operation of their businesses or use of the Transferred Assets

on or prior to the Closing Date or any such liabilities, debts, commitments, or obligations that in

any way whatsoever relate to periods on or prior to the Closing Date or are to be observed, paid,

discharged, or performed on or prior to the Closing Date (in each case, including, without

limitation, Successor or Other Liabilities and any liabilities that result from, relate to, or arise out

of tort or product liability claims), or any liabilities calculable by reference to the Debtors or

their assets or operations (including, without limitation, by reference to the Debtors' experience

or similar ratings), or relating to continuing conditions existing on or prior to the Closing Date,

including with respect to any of the Debtors' predecessors or Affiliates, which liabilities, debts,

commitments, and obligations are hereby extinguished insofar as they may give rise to Successor

or Other Liability.

## VI.    Other Provisions.

39.    The consideration provided by the Buyer to the Debtors pursuant to the

Agreement for the Transferred Assets is fair and reasonable and shall be deemed for all purposes

to constitute reasonably equivalent value, fair value, and fair consideration, including under the

Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and

under the laws of the United States, any state, territory, possession, the District of Columbia, or

any foreign jurisdiction.

40.    The transactions contemplated by the Agreement, the Ancillary Agreements, and

this Sale Order are undertaken by the Buyer without collusion and in good faith, as that term is

defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification

on appeal of the authorization provided herein to consummate the Sale shall not alter, affect, limit, or otherwise impair the validity of the Sale (including the assumption, assignment, and/or transfer of the Transferred Contracts), unless such authorization and consummation of the Sale are duly stayed pending such appeal. The Buyer is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code. As a good-faith purchaser of the Transferred Assets, the Buyer has not entered into any agreement with any other potential bidders and has not colluded with any potential or actual bidders, and therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

41.    Notwithstanding anything to the contrary herein, the Agreement, the Sale Procedures Order, the Sale Motion or any Ancillary Agreement, the Sale shall not be exempt from taxes under Section 1146(c) under the Bankruptcy Code. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated under the Agreement. No brokers were involved in consummating the Sale or the other such transactions, and no brokers' commissions are due to any person or entity in connection with the Sale or the other such transactions. The Buyer is not and will not become obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the consummation of the Sale based upon any arrangement made by or on behalf of the Debtors.

42.    For cause shown, pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6004(d) are

hereby expressly waived and shall not apply. Accordingly, the Debtors and Buyer are authorized and empowered to close the Sale immediately upon entry of this Sale Order.

43.    The failure to include or specifically reference any particular provision of the Agreement or the other Ancillary Agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

44.    To the extent that this Sale Order is inconsistent with the Sale Motion, the terms of this Sale Order shall control and govern. To the extent that there are any inconsistencies between the terms of this Sale Order, on the one hand, and the Agreement or any Ancillary Agreement, on the other hand, the terms of this Sale Order shall control and govern. To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these Chapter 11 Cases, the terms of this Sale Order shall govern. To the extent that any plan of reorganization or liquidation, or any order of any type or kind entered in these Chapter 11 Cases or any subsequent chapter 7 case into which these Chapter 11 Cases may be converted, conflicts with or derogates from the terms of the Agreement or this Sale Order, the terms of the Agreement and this Sale Order shall control and govern to the extent of any such conflict or derogation.

45.    The Agreement and the Ancillary Agreements may be modified, amended, or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, without further notice to or order of the Court, so long as any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates and does not otherwise conflict with this Sale Order.

46.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Buyer to deliver any notice provided for in the Agreement and allow the Buyer to take any and all actions permitted under the Agreement.

47.     Unless otherwise provided herein, to the extent this Sale Order is inconsistent with the Sale Procedures Order or any other prior order or pleading in these Chapter 11 Cases, or the terms of the Agreement (including all Ancillary Agreements), this Sale Order shall govern.

48.     Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or any other order in the Debtors' cases (including any order entered after any conversion of these cases into cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agreement or this Sale Order and, to the extent of any such conflict, the terms of this Sale Order and the Agreement shall control.

49.     From time to time, as and when requested by the other, the Debtors and the Buyer, as the case may be, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in the Buyer its right, title and interest in and to the Transferred Assets and the Transferred Contracts, subject to the provisions of the Agreement.

50.     Notwithstanding any provision to the contrary in the Sale Motion, this Order, and any implementing Sale documents, nothing shall: (1) authorize the assumption, sale, assignment or other transfer to the Buyer of any contracts, leases, agreements or other interests of the federal

government (collectively, "Federal Interests") without compliance with all applicable legal requirements and approvals under non-bankruptcy law; (2) require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (3) affect the government's rights to recoup any amounts due under, or relating to, the Federal Interests; (4) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (5) confer exclusive jurisdiction to the Bankruptcy Court with respect to the Federal Interests, except to the extent set forth in 28 U.S.C. Section 1334 (as limited by any other provisions of the United States Code).

51.      Pending the closing of the Sale, the Debtors shall continue to pay when due all amounts that have accrued under the Federal Interests, pursuant to this Court's *Order Authorizing (I) The Debtors To Honor Prepetition Obligations to Customers and Related Third Parties and to Otherwise Continue Customer and Sales Programs, (II) Grant Relief from Stay to Permit Setoff in Connection with the Customer and Sales Programs and (III) Financial Institutions To Honor and Process Related Checks and Transfers* [Docket No. 182] (the "Customer Programs Order"), and on and after the closing of the Sale, the Buyer shall be liable for (I) all accrued amounts then outstanding under the Federal Interests that have not yet been paid by the Debtors as well as (ii) all amounts that accrue under the Federal Interests on or after the closing.

52.      For the avoidance of doubt, the Cardinal Health contracts identified in Exhibit 2 to this Sale Order are Transferred Contracts (the "Cardinal Health Transferred Contracts") and the Buyer agrees to comply with all of the Debtors' obligations under the Debtors' Customer and Sales Programs as approved by the Customer Programs Order, to the extent those obligations

arise under the Cardinal Health Transferred Contracts; and (b) all of Cardinal Health's rights to assert any setoff or recoupment rights or other affirmative defenses to payment held by Cardinal Health, pursuant to the terms of the contracts giving rise to such accounts receivable and applicable law, including, without limitation, all return, refund, rebate, chargeback, and credit rights under such contracts shall be preserved.

53.    For the avoidance of doubt, (a) the contracts with AmerisourceBergen Drug and its affiliates, including but not limited to AmerisourceBergen Drug Corporation, AmerisourceBergen Global Manufacturing Services GmbH, Bellco Drug Corp., H.D. Smith, LLC, and Integrated Commercialization Solutions, (collectively, "Amerisource") identified in Exhibit 2 to this Sale Order are Transferred Contracts (the "Amerisource Transferred Contracts") and the Buyer agrees to comply with all of the Debtors' obligations under the Amerisource Transferred Contracts including those described in the Customer Programs Order to the extent those obligations arise under the Amerisource Transferred Contracts and regardless of when such obligations arose; and (b) all of Amerisource's rights to assert any setoff or recoupment rights or other affirmative defenses to payment held by Amerisource, pursuant to the terms of the contracts giving rise to such accounts receivable and applicable law, including, without limitation, all return, refund, rebate, chargeback, and credit rights under such contracts shall be preserved.

54.    For the avoidance of doubt, contract numbers 82-83, 217-223, and 242-250 (the counterparties to such contracts collectively, "McKesson") identified in Exhibit 1 in the *Notice of Cancellation of Auction for the Debtors' Assets* [Docket No. 281], are Transferred Contracts (the "McKesson Transferred Contracts") and the Buyer agrees to comply with all of the Debtors' obligations under the Debtors' Customer and Sales Programs as approved by the Customer

Programs Order, to the extent those obligations arise under the McKesson Transferred Contracts; and (b) all of McKesson's rights to assert any setoff or recoupment rights or other affirmative defenses to payment held by McKesson, pursuant to the terms of the contracts giving rise to such accounts receivable and applicable law, including, without limitation, all return, refund, rebate, chargeback, and credit rights under such contracts shall be preserved.

55.    Notwithstanding anything set forth on Exhibit 1 to the *Notice of Cancellation of Auction for the Debtors' Assets* [Docket No. 281], the Debtors shall assume and assign to the Buyer all of the relevant amendments to the Commercial Rebate Agreement with OptumRx, Inc. ("OptumRx") dated as of July 1, 2013 (the "Rebate Agreement"). Pending the Closing of the Sale, the Debtors shall continue to pay when due all amounts that have accrued under the Rebate Agreement and the Medicare Part D Rebate Agreement with OptumRx dated as of January 1, 2014 (the "Part D Rebate Agreement" and together with the Rebate Agreement, the "Rebate Agreements"), pursuant to the Customer Programs Order, and, notwithstanding anything herein to the contrary, on and after the Closing of the Sale, the Buyer shall be liable for (i) all accrued amounts then outstanding under the Rebate Agreements that have not yet been paid by the Debtors as well as (ii) all amounts that accrue under the Rebate Agreements on or after the Closing.

56.    The Debtors are authorized to assume the contracts (the "Recro Contracts") identified on line items 317 through 326 of Exhibit A to the *Notice of Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* [Docket No. 197] (the "Potential Assumption and Assignment Notice"). The Debtors are further authorized to assign the Recro Contracts to Buyer. The prepetition quarterly payments due and owing Recro

Gainesville LLC for the fourth quarter of 2018, in the amount of $263,062.43, shall be paid to Recro Gainesville LLC upon closing of the sale.

57.    Pending the closing of the Sale, the Debtors shall continue to pay when due all amounts that have accrued under the Recro Contracts, including but not limited to: (i) all quarterly royalty payments; (ii) all invoices for product shipped to the Debtors post-petition; (iii) any purchase price adjustments; or (iv) all amounts due pursuant to the Customer Programs Order. On and after the closing of the Sale, the Buyer shall be liable for (I) all accrued amounts then outstanding under the Recro Contracts that have not yet been paid by the Debtors as well as (II) all amounts that accrue under the Recro Contracts on or after the closing.

58.    The Buyer agrees to comply with all of the Debtors' obligations under the Debtors' Customer and Sales Programs as approved by the Customer Programs Order, to the extent those obligations arise under the Transferred Contracts; and (b) all rights to assert any setoff or recoupment rights or other affirmative defenses to payment held by counterparties to Transferred Contracts, pursuant to the terms of the contracts giving rise to such accounts receivable and applicable law, including, without limitation, all return, refund, rebate, chargeback, and credit rights under such contracts shall be preserved. On and after the closing of the Sale, the Buyer shall be liable for (i) all accrued amounts then outstanding under the Transferred Contracts that have not yet been paid by the Debtors as well as (ii) all amounts that accrue under the Transferred Contracts on or after the closing.

59.    Notwithstanding anything in the Agreement, this Sale Order, or any Notices related to the Sale to the contrary: (i) the Commercial Rebate Agreement between the Cigna Health and Life Insurance Company and Pernix Therapeutics, LLC, effective April 1, 2015, as amended, and the Medicare Part D Rebate Agreement between Cigna-HealthSpring and Pernix

Therapeutics, LLC, effective April 1, 2015, as amended, shall be assumed and assigned to the Buyer as of the Closing Date; and (ii) the Employee Benefits Agreements, as defined in the *Objection of Cigna Entities to Notice of Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount* [Docket No. 255] (the "Cigna Objection"), shall not be deemed Transferred Contracts for purposes of this Sale Order, and shall not be assumed and assigned pursuant to this Sale Order. This fully resolves the Cigna Objection.

60.     Notwithstanding anything in the Agreement, this Sale Order, or any Notices related to the Sale to the contrary, absent the prior written consent of Navigators Insurance Company and/or Endurance American Insurance Company (as applicable), the Insurance Policies, as defined in the *Joint Limited Objection of Navigators Insurance Company and Endurance American Insurance Company to Motion of Debtors for Entry of Orders (I)(A) Approving Sale Procedures for Sale of Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction For, and Hearing to Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 265] (the "Navigators/Endurance Objection"), shall not be deemed Transferred Contracts and/or Transferred Assets for purposes of this Sale Order and shall not be assumed and assigned pursuant to this Sale Order. In the event that the Debtors and/or Highbridge (as defined in the Navigators/Endurance Objection, and construed to include Currax Holdings LLC or any other entity deemed to be the ultimate purchaser under the Agreement, as well as their successors and assigns) shall seek the assumption and assignment of

43

the Insurance Policies at a later date, no such assumption or assignment may occur absent (1) written consent by Navigators Insurance Company and/or Endurance American Insurance Company (as applicable), and (2) payment by the Debtors and/or Highbridge of any adjustments in premium to Navigators Insurance Company and/or Endurance American Insurance Company (as applicable). Consent to the aforementioned assumption and assignment shall be granted at the sole discretion of Navigators Insurance Company and/or Endurance American Insurance Company (as applicable) and subject to the terms and conditions as either Navigators Insurance Company or Endurance American Insurance Company may set forth, including, but not limited to, any adjustments in premium. This fully resolves the Navigators/Endurance Objection.

61.    Notwithstanding anything in the Agreement, this Sale Order, or any Notices related to the Sale to the contrary, absent the prior written consent of Ironshore Insurance Services LLC, the Policies, as defined in the *Ironshore Insurance Services LLC Limited Objection to Motion of Debtors for Entry of Orders (I)(A) Approving Sale Procedures for Sale of Debtors' Assets, (B) Approving Stalking Horse Protections, (C) Scheduling Auction For, and Hearing to Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 271] (the "Ironshore Objection"), shall not be deemed Transferred Assets or Transferred Contracts for purposes of this Sale Order and shall not be transferred or assumed and assigned pursuant to this Sale Order. This fully resolves the Ironshore Objection.

62.     The Debtors and Nalpropion Pharmaceuticals, Inc. ("Nalpropion") acknowledge that the cure amount listed on the Potential Assumption and Assignment Notice only includes amounts which had become due and payable under that certain Services Agreement (as amended, the "Services Agreement") dated July 27, 2018 and that certain Transitional Distribution Services Agreement (the "TSA") dated January 5, 2019, as of January 31, 2019, and that additional amounts will be due to and from the applicable Debtors and Nalpropion under such agreements as of the Closing Date of the Sale.

63.     The Debtors and Nalpropion each agree to work together to reconcile and agree on an appropriate cure amount prior to the Closing Date or, if later, prior to the effective date of the assumption and assignment of the Services Agreement and TSA.  In the event that they are unable to reach agreement on the proper cure amount, the Debtors and Nalpropion each reserve all of their rights to have the Court determine such amount upon prior notice to each other and proper application.

64.     Neither the Debtors nor Nalpropion may amend, waive or modify any provisions of the preceding paragraphs 62 and 63 unless such amendment, waiver or modification is agreed to in writing and signed by the Debtors and Nalpropion.

65.     In accordance with the terms of the Settlement (as defined in, and approved by, the *Order Approving Settlement Between the Debtors and Official Committee of Unsecured Creditors*) [Docket No. 253] (the "Settlement Order"), (i) any account funded by the Debtors pursuant to the final order approving the Debtors' debtor-in-possession financing in connection with the Settlement and (ii) any estate causes of action against the current or former directors and officers of the Debtors, are not Transferred Assets and shall not be transferred to the Buyer in connection with the closing of the Sale.

66.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the Agreement, the Ancillary Agreements, and any amendments thereto and any waivers and consents given thereunder, and to adjudicate, if necessary, any and all disputes concerning or in any way relating to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Transferred Assets to the Buyer, (b) interpret, implement, and enforce the provisions of this Sale Order, including but not limited to the injunctions and limitations of liability set forth in this Sale Order, (c) protect the Buyer against any Interests in or against the Debtors or the Transferred Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (d) enter any orders under sections 105, 363, and 365 of the Bankruptcy Code with respect to the Transferred Assets and the Transferred Contracts.

67.     Nothing in this Sale Order or the Agreement releases, nullifies, precludes or enjoins the enforcement of any valid police or regulatory liability to a governmental unit, to which the Buyer may be subject to as the post-sale owner or operator of any property that is a Transferred Asset after the date of entry of this Sale Order.  Nothing in this Sale Order or the Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligations thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

Dated:  April _15_, 2019
Wilmington, Delaware

_____
The Honorable Christopher S. Sonchi
Chief United States Bankruptcy Judge