**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| PERNIX SLEEP, INC., *et al.*[1] | Case No. 19-10323 (CSS) |
| Debtors. | Jointly Administered |
| | **Ref. Nos. 391 & 484** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) CONFIRMING
THIRD AMENDED JOINT PLAN OF LIQUIDATION OF PERNIX SLEEP, INC. AND
ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION PURSUANT TO
CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) APPROVING THE
DISCLOSURE STATEMENT ON A FINAL BASIS**

The above-captioned debtors and debtors-in-possession (the "Debtors") having:

a.  filed, (i) on April 22, 2019, the *Joint Plan of Liquidation of Pernix Sleep, Inc. and Its Affiliated Debtors and Debtors-In-Possession Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 339] (as further modified, supplemented and amended including all attachments and exhibits thereto, the "Plan");[2]

b.  filed, (i) on April 22, 2019, the *Disclosure Statement for the Joint Plan of Pernix Sleep, Inc. and Its Affiliated Debtors-In-Possession Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 340] (as further modified, supplemented and amended, the "Disclosure Statement");

c.  filed, on May 6, 2019, a first amended Disclosure Statement and first amended Plan [D.I. Nos. 390, 391];

d.  filed, on April 8, 2019, the *Notice of (A) Interim Approval of the First Amended Disclosure Statement and (B) Combined Hearing to Consider Final Approval of the First Amended Disclosure Statement and Confirmation of the First Amended Plan and the Objection Deadline Related Thereto* [D.I. 392] (the "Confirmation Notice");

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are: Pernix Therapeutics Holdings, Inc. (4736), Pernix Therapeutics, LLC (1128), Pernix Manufacturing, LLC (1236), Pernix Sleep, Inc. (1599), Cypress Pharmaceuticals, Inc. (1860), Hawthorn Pharmaceuticals, Inc. (2769), Macoven Pharmaceuticals, L.L.C. (4549), Gaine, Inc. (3864), Respicopea, Inc. (1303), Pernix Ireland Limited (3106PH), Pernix Ireland Pain Designated Activity Company (0190LH), Pernix Holdco 1, LLC (N/A), Pernix Holdco 2, LLC (N/A), Pernix Holdco 3, LLC (N/A). The Debtors' corporate headquarters and the mailing address is 10 North Park Place, Suite 201, Morristown, NJ 07960.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan. The rules of interpretation set forth in Article I.B of the Plan shall apply to this order (the "Confirmation Order").

e.    distributed solicitations materials, including the ballots for voting on the Plan (the "Ballots") on or about May 6, 2019 in the form approved in that certain *Order (I) Approving the First Amended Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the First Amended Disclosure Statement and First Amended Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* [D.I. 389] (the "Interim Approval/Procedures Order"), to holders of Claims and Interests and contract and lease counterparties, and parties-in-interest, in compliance with the procedures contained in the Interim Approval/Procedures Order, title 11 of the United States Code (as amended, the "Bankruptcy Code"), and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as set forth in the *Affidavit of Service of Solicitation Materials* (and any supplements thereto), dated May 15, 2019 [D.I. 418] (the "Solicitation Affidavit");

f.    filed, on June 19, 2019, a second amended Plan [D.I. No. 474];

g.    filed, on June 19, 2019, the *Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the First Amended Joint Plan of Liquidation of Pernix Sleep, Inc. and Its Affiliated Debtors and Debtors-In-Possession Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 477] (the "Voting Certification");

h.    filed, on June 19, 2019, the *Declaration of Garineh S. Dovletian in Support of Confirmation of the Second Amended Joint Plan of Liquidation of Pernix Sleep, Inc. and Its Affiliated Debtors and Debtors-In-Possession Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 478];

i.    filed, on June 19, 2019, the *Debtors' Memorandum of Law in Support of (A) Final Approval of the Disclosure Statement and (B) Confirmation of the Plan* [D.I. 479] (the "Confirmation Brief"); and

j.    filed, on June 20, 2019, a third amended Plan [D.I. 484];

The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") having:

a.    entered the Interim Approval/Procedures Order on May 6, 2019;

b.    by the Interim Approval/Procedures Order set the deadline to object to the Plan and final approval of the Disclosure Statement as June 13, 2019 at 4:00 p.m. prevailing Eastern Time and the Plan voting deadline as June 13, 2019 at 11:59 p.m. prevailing Eastern Time;

c.    reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Certification, and all other pleadings, exhibits, statements, affidavits, declarations

and comments regarding Confirmation of the Plan, including all objections, statements and reservations of rights made with respect thereto;

d.    heard the statements, arguments and objections made by counsel and parties-in-interest in respect of final approval of the Disclosure Statement and Confirmation of the Plan;

e.    considered all oral representations, testimony, documents, filings and other evidence regarding final approval of the Disclosure Statement and Confirmation of the Plan;

f.    overruled any and all objections to final approval of the Disclosure Statement, the Plan and Confirmation thereof and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated in this Confirmation Order or on the record at the Confirmation Hearing; and

g.    taken judicial notice of the papers and pleadings filed in these chapter 11 cases (the "Chapter 11 Cases").

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Confirmation Hearing and the opportunity for any party-in-interest to object to final approval of the Disclosure Statement and Confirmation have been adequate and appropriate as to all entities affected or to be affected by the Disclosure Statement, the Plan and the transactions contemplated thereby, that the legal and factual bases set forth in the documents filed in support of final approval of the Disclosure Statement and Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein, and that after due deliberation thereon and good cause appearing therefore, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    Findings and Conclusions. The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following

findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)). The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. Approval of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto. Venue was proper as of the Petition Date and is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Eligibility for Relief. Each Debtor qualifies as a "debtor" under Bankruptcy Code section 109. As such, the Debtors are proper proponents of the Plan.

D.      Commencement of these Chapter 11 Cases. On February 18, 2019 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors-in-possession, pursuant to Bankruptcy Code sections 1107(a) and 1108. As of the date hereof, no trustee or examiner has been appointed in these Chapter 11 Cases.

E.      Judicial Notice. The Bankruptcy Court takes judicial notice of the docket of the Debtors' Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

F.    <u>Claims Bar Date</u>.  On April 4, 2019, the Bankruptcy Court entered the Order Granting Motion of the Debtors for Entry of an Order (A) Establishing Bar Dates for Filing Proofs of Claim; (B) Approving the Form and Manner for Filing Proofs of Claim and (C) Approving Notice Thereof [D.I. 254] (the "<u>Bar Date Order</u>").  Pursuant to the Bar Date Order, the Court established June 3, 2019 at 4:00 p.m. (Eastern Time) as the deadline for each person or entity (other than governmental entities) asserting (i) any right to payment arising (or deemed to arise) before the Petition Date that is secured by property of the Debtors' estates, (ii) any right to payment constituting a priority claims under Bankruptcy Code section 507(a) against the Debtors arising (or deemed to arise) before the Petition Date, (iii) any right to payment constituting a cost or expense of administration of the Debtors' Chapter 11 Cases arising under Bankruptcy Code sections 503(b) and 507(a)(2) against the Debtors that may have arisen, accrued or otherwise became due and payable at any time during the period from the Petition Date through and including April 30, 2019, and (iv) any right to payment under Bankruptcy Code section 503(b)(9).  In addition, the Bar Date Order set August 19, 2019 at 4:00 p.m. (Eastern Time) as the deadline for all governmental entities holding such claims to file proofs of claim.

G.    <u>Burden of Proof</u>.  The Debtors have the burden of proving the elements of Bankruptcy Code sections 1129(a) and (b) by a preponderance of the evidence.  The Debtors have met their burden with respect to each applicable element of Bankruptcy Code section 1129.  Each witness who testified on behalf of the Debtors at or in connection with the Confirmation Hearing was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**Adequacy of the Disclosure Statement**

H.     The Disclosure Statement.    The information contained in the Disclosure Statement contained extensive material information regarding the Debtors so that parties entitled to vote on the Plan could make informed decisions regarding the Plan.    Additionally, the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125 and complies with any additional requirements of the Bankruptcy Code, Bankruptcy Rules, and applicable non-bankruptcy law.    Specifically, but without limitation, the Disclosure Statement complies with the requirements of Bankruptcy Rule 3016(c) by sufficiently describing in specific and conspicuous bold language the provisions of the Plan that provide for releases and injunctions against conduct not otherwise enjoined under the Bankruptcy Code and sufficiently identifies the persons and entities that are subject to the releases and injunctions. The Debtors' use of the Disclosure Statement to solicit votes to accept or reject the Plan was authorized by the Interim Approval/Procedures Order and was appropriate.    Solicitation of votes on the Plan was in compliance with the Interim Approval/Procedures Order.

**The Solicitation Process**

I.     Solicitation.    Each of the Plan, the Disclosure Statement, the Ballots and the Confirmation Notice were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Interim Approval/Procedures Order.    The form of the Ballots adequately addresses the particular needs of these Chapter 11 Cases and is appropriate for the holders of Claims in Class 5 (Prepetition Exchangeable Note Claims), Class 6 (General Unsecured Claims), Class 7 (Disputed Employee Litigation Claims), and Class 8 (Prepetition Treximet Highbridge

Deficiency Claim) – the Classes of Claims entitled to vote to accept or reject the Plan. The period during which the Debtors solicited acceptances to the Plan was a reasonable period of time for holders to make an informed decision to accept or reject the Plan, and was in accordance with the Interim Approval/Procedures Order, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation. The Debtors were not required to solicit votes from the holders of Claims or Interests in Class 1 (Non-Tax Priority Claims), Class 2 (Other Secured Claims), Class 9 (Intercompany Claims), Class 10 (Subordinated Claims), or Class 11 (Interests) as these Classes and Interests are (i) unimpaired under the Plan, and thus, the holders of such Claims or Interests are deemed to have accepted the Plan; or (ii) not receiving or retaining any property under the Plan, and thus, the holders of such Claims or Interests are deemed to reject the Plan. As described in and as evidenced by the Voting Certification, the transmittal and service of the Plan, the Disclosure Statement, the Ballots, and the Confirmation Notice (the "Solicitation") were timely, adequate and sufficient under the circumstances.

J.    Notice.    All parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) were served with the Confirmation Notice and have been given due, proper, timely, and adequate notice in accordance with the Interim Approval/Procedures Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice or resolicitation is required.

K.    Good Faith Solicitation.    Based on the record before the Bankruptcy Court in this Chapter 11 Cases, the Debtors, their current members, officers, directors, employees and agents

and their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons (i) have acted in "good faith" within the meaning of Bankruptcy Code section 1125(e) in compliance with the applicable provisions of the Interim Approval/Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in Bankruptcy Code section 1125 and are entitled to the protections afforded by Bankruptcy Code section 1125(e) and, to the extent such parties are listed therein, the exculpation provisions set forth in Article VIII of the Plan.

L.    <u>Voting</u>.  As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Plan, the Interim Approval/Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule, or regulation.  As set forth in the Voting Certification), Classes 5 through 8 voted to confirm the Plan.  Based on the foregoing, and as evidenced by the Voting Certification, all Impaired Class of Claims has voted to accept the Plan in accordance with the requirements of Bankruptcy Code sections 1124 and 1126.

M.    <u>The Global Settlement</u>. The Global Settlement, as described in detail in the Disclosure Statement, is the result of good faith, arms'-length negotiations among the Debtors and Creditors' Committee. The Global Settlement, as reflected in the proposed distributions and recoveries to holders of General Unsecured Claims under the Plan (i) benefits the Debtors' Estates, Creditors and Interest holders and is in their best interests and (ii) is fair, equitable and reasonable.

N.    The WARN Settlement.  The WARN Settlement, as described in the Plan, is the result of good faith, arms'-length negotiations among the Debtors and the holders of the Disputed Employee Litigation Claims.  The WARN Settlement, as reflected in the proposed distributions and recoveries to holders of Disputed Employee Litigation Claims under the Plan (i) benefits the Debtors' Estates, Creditors and Interest holders and is in their best interests and (ii) is fair, equitable and reasonable.

O.    Releases, Exculpation and Injunction.    Pursuant to Bankruptcy Code section 1123(b)(3) and Bankruptcy Rule 9019(a), the releases[3], settlements, compromises, exculpations and injunctions set forth in Article VIII of the Plan and as modified (as applicable) and implemented by this Confirmation Order, are fair, equitable, reasonable and in the best interests of the Debtors, their Estates, Creditors and Interest holders.  The Debtors' Releases and the Consensual Third Party Releases are warranted, necessary and appropriate, and are, in the case of the Consensual Third Party Release, consensual, and such releases are supported by the facts and the circumstances of these Chapter 11 Cases and are consistent with Bankruptcy Code sections 105, 1123(b)(6), and 1129 and applicable law in this jurisdiction.  The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the settlements, releases, exculpations, and injunctions provided for in Article VIII of the Plan.

**Compliance with the Requirements of Bankruptcy Code Section 1129**

P.    Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as the proponents of the Plan, thereby satisfying Bankruptcy Code section 1129(a)(1).

---

[3] "Debtors' Releases" means the releases set forth in Article VIII.D.1 of the Plan and "Consensual Third Party Releases" means the releases set forth in Article VIII.D.2 of the Plan.

(i)     Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  With the exception of the Administrative Claims (including Professional Fee Claims) Priority Tax Claims and DIP Claims, which need not be classified, Article III of the Plan classifies nine (9) Classes of Claims and Interests in the Debtors.  The Claims and Interests placed in each Class are substantially similar to the other Claims and Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests.  Accordingly, the Plan satisfies Bankruptcy Code sections 1122 and 1123(a)(1).

(ii)    Unimpaired Classes Specified (11 U.S.C. § 1123(a)(2)).  Articles III.B and III.C of the Plan specify that Claims or Interests in Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) (collectively referenced as the "Unimpaired Classes") are unimpaired under the Plan within the meaning of Bankruptcy Code section 1124, thereby satisfying Bankruptcy Code section 1123(a)(2).

(iii)   Specified Treatment of Impaired Class (11 U.S.C. § 1123(a)(3)).  Articles III.B and III.C of the Plan designate Claims in Class 5 (Prepetition Exchangeable Note Claims), Class 6 (General Unsecured Claims), Class 7 (Disputed Employee Litigation Claims), Class 8 (Prepetition Treximet Highbridge Deficiency Claim), Class 9 (Intercompany Claims), Class 10 (Subordinated Claims), and Class 11 (Interests) (the "Impaired Classes") as impaired within the meaning of Bankruptcy Code section 1124 and clearly specifies the treatment of such Claims in that Class, thereby satisfying Bankruptcy Code section 1123(a)(3).

(iv)     No Discrimination (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment for each Claim or Interest in each respective Class thereby satisfying Bankruptcy Code section 1123(a)(4).

(v)     Adequate Means for Plan Implementation (11 U.S.C. § 1123(a)(5)).  The Plan provides adequate and proper means for the implementation of the Plan, including, without limitation, (i) the appointment of the Plan Administrator; (ii) the creation of the Liquidating Trust and appointment of the Liquidating Trustee; and (iii) the procedures for making distributions to holders of Allowed Claims and Interests.   Accordingly, the Plan satisfies Bankruptcy Code section 1123(a)(5).

(vi)     Prohibition of Issuance of Non-Voting Securities (11 U.S.C. § 1123(a)(6)).  Bankruptcy Code section 1123(a)(6) does not apply to the Plan because the Debtors do not propose to issue any non-voting equity securities under the Plan and any charter of the Debtors will, after the Effective Date, no longer be valid and existing, except as otherwise set forth in Article IV.H of the Plan.

(vii)     Designation of Officers, Directors or Trustees (11 U.S.C. § 1123(a)(7)). On the Effective Date, all persons acting as directors, managers, and officers of the Post-Effective Date Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole director or manager and the sole officer of each Post-Effective Date Debtor and shall succeed to the powers of the Post-Effective Date Debtor's managers and officers.  From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Effective Date Debtors.  The identity of the Plan Administrator has been fully disclosed in the Plan Supplement, and was selected in a manner consistent with the interests of creditors.  The identity of the Liquidating Trustee has

been fully disclosed in the Plan Supplement, and was selected in a manner consistent with the interests of creditors.  Therefore, the Debtors have satisfied Bankruptcy Code section 1123(a)(7).

       **(viii)**    <u>Earnings from Personal Services (11 U.S.C. § 1123(a)(8))</u>.  Bankruptcy Code section 1123(a)(8) applies only to individual debtors and is not applicable to these Chapter 11 Cases.

       **(ix)**    <u>Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))</u>.  As permitted by Bankruptcy Code section 1123(b)(1), pursuant to Articles III.B and III.C of the Plan, Claims or Interests in the Impaired Classes are impaired and, pursuant to Articles III.B and III.C of the Plan, Claims in the Unimpaired Classes, are unimpaired.

       **(x)**    <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>.  As permitted by Bankruptcy Code section 1123(b)(2) and Article VII of the Plan, all executory contracts and unexpired leases, except as set forth in Article VII.A of the Plan, shall be deemed rejected as of the Effective Date, unless such executory contract or unexpired lease: (i) was assumed or rejected previously by the Debtors; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume Filed on or before the Effective Date; or (iv) has been designated by the Buyer as a "Transferred Contract" pursuant to the terms of the Asset Purchase Agreement; provided that (i) the New Jersey Office Lease shall be assumed pursuant to the Motion of the Debtors for Entry of an *Order (I) Authorizing the Assumption and Assignment of that Certain Unexpired Lease and (II) Fixing the cure Costs Related to the Unexpired Lease Pursuant to Bankruptcy Code Section 365* [D.I. 458], (ii) the Federal Supply Schedule Contract Federal Supply Schedule Contract 36F79718D0413, dated May 1, 2018, by and between Department of Veterans Affairs and Pernix Therapeutics, LLC and the Federal Supply Schedule Contract V797D-40109, dated March 1, 2014, by and between Department of Veterans Affairs

and Macoven Pharmaceuticals, LLC shall be deemed rejected on December 15, 2019, and (iii) the following contracts with Automatic Data Processing, Inc. (ADP, Inc. and affiliates) shall be deemed rejected on June 22, 2019: (i) Administrative Agreement for Defined Contribution Non-Standardized 401(k) Profit Sharing Plan and Anticipated Termination, (ii) ADP Workforce Now Comprehensive Services Agreement, and Client Account Agreement and (iii) Authorization to Debit for Collection COBRA and FSA Services (collectively, the "ADP Contracts").

      **(xi)**    Settlement/Retention of Claim or Interests (11 U.S.C. § 1123(b)(3)). The entry of this Confirmation Order constitutes the Court's approval of all the compromises and settlements embodied in the Plan, including, but not limited to, the Global Settlement and the WARN Settlement, and the Court's findings shall constitute its determination that the such compromises and settlements, including but not limited to the Global Settlement and the WARN Settlement, are in the best interests of the Debtors, their Estates and all holders of Claims and Interests, and are fair, equitable and well within the range of reasonableness. In concluding that the compromises and settlements, including the Global Settlement and WARN Settlement, contained in the Plan are substantively fair, the Court considered the following factors: (i) the probability of success of potential litigation compared to the benefit of such compromises and settlement; (ii) the likelihood of complex and protracted litigation and the risk and difficulty of collecting on the judgment; (iii) the proportion of creditors and parties-in-interest that support the compromises and settlements, including the Global Settlement and WARN Settlement; (iv) the competency of counsel; and (v) the extent to which the compromises and settlement, including the Global Settlement and WARN Settlement, are the product of arms'-length negotiations. The Court finds that each of these factors weigh in favor of approving the compromises and settlements, including the Global Settlement and WARN Settlement, embodied in the Plan. With

respect to retention of Claims and Interests, as permitted by Bankruptcy Code section 1123(b)(3), Article IV of the Plan provides that, from and after the Effective Date, except as otherwise expressly provided in the Plan, the Plan Administrator may pursue (i) objections to, estimation of and settlements of Claims and Interests, other than Claims or Interests that are Allowed pursuant to the Plan or with respect to General Unsecured Claims and Disputed Employee Litigation Claims and (ii) any cause of action of the Debtors' Estate (except Trust Causes of Action) not otherwise released under the Plan.  Article IV of the Plan also provides that, from and after the Effective Date, except as otherwise expressly provided in the Plan, the Liquidating Trustee may (upon consultation with counsel to the Creditors' Committee whenever the Liquidating Trustee desires to do so) pursue (i) objections to, estimation of and settlements of General Unsecured Claims and Disputed Employee Litigation Claims and (ii) Trust Causes of Action.

> (xii)    Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).  As permitted by Bankruptcy Code section 1123(b)(6), the Plan includes other appropriate provisions not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, certain release, exculpation, and injunction provisions in Article VIII of the Plan. Based upon the facts and circumstances of these Chapter 11 Cases, the release, exculpation, and injunction provisions in the Plan, including the releases set forth in Article VIII.D and VIII.E of the Plan (to the extent modified herein), are fair, equitable, and reasonable, are supported by sufficient and valuable consideration, are an integral component of compromises and settlements underlying the Plan, are necessary for the realization of value for stakeholders, are the product of extensive arms'-length negotiations, or based on consent, were necessary to the formation of the consensus embodied in the Plan documents, are in the best interests of the Debtors and their

Estates, Creditors, and Interest holders, and are, in light of the foregoing, appropriate. The failure to implement the release, exculpation, and injunction provisions would seriously impair the Debtors' ability to confirm and consummate the Plan, and would possibly lead to the conversion of the Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. Each Exculpated Party and Released Party afforded value to the Debtors and aided in the plan process. Each Exculpated Party and Released Party played an integral role in the formulation of the Plan and has expended significant time and resources analyzing and negotiating the issues presented by these Chapter 11 Cases. In addition, the Consensual Third Party Releases set forth in Article VIII.D.2 of the Plan are consensual and the exculpations in Article VIII.E of the Plan do not relieve any party of liability for fraud, gross negligence or willful misconduct. Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered or adduced at the Confirmation Hearing, the Bankruptcy Court finds that the release, exculpation, and injunction provisions set forth in Article VIII of the Plan are consistent with the Bankruptcy Code and applicable law and are appropriate under the circumstances.

  **Q.** <u>The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. Except as otherwise provided for or permitted by order of the Bankruptcy Court, the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Interim Approval/Procedures Order in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan. Accordingly, the requirements of Bankruptcy Code section 1129(a)(2) are satisfied.

**R.**    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).    The Debtors have proposed the Plan, including all documents necessary to effectuate the Plan, in good faith and not by any means forbidden by law, thereby satisfying the requirements of Bankruptcy Code section 1129(a)(3).    The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.    The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of holders of Claims and Interests.    The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to maximize distributions to all Creditors and Interest holders.    Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arms' length, are consistent with Bankruptcy Code sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142, and are integral to the Plan and supported by valuable consideration.

**S.**    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).    Any payment made or to be made by the Debtors, or by any other person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with these Chapter 11 Cases, or in connection with the Plan and incidental to these Chapter 11 Cases, has been approved by, or shall be subject to the approval of, the Bankruptcy Court as reasonable. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(4).

**T.**    Directors, Officers, and Successors (11 U.S.C. § 1129(a)(5)).    On the Effective Date, all persons acting as directors, managers, and officers of the Post-Effective Date Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator

shall be appointed as the sole director or manager and the sole officer of each Post-Effective

Date Debtor and shall succeed to the powers of the Post-Effective Date Debtor's managers and

officers.    From and after the Effective Date, the Plan Administrator shall be the sole

representative of, and shall act for, the Post-Effective Date Debtors.  The identity of the Plan

Administrator has been fully disclosed in the Plan Supplement, and was selected in a manner

consistent with the interests of creditors.  The identity of the Liquidating Trustee has been fully

disclosed in the Plan Supplement, and was selected in a manner consistent with the interests of

creditors.  Thus, the Debtors have complied with Bankruptcy Code section 1129(a)(5).

U.    No Rate Changes (11 U.S.C. § 1129(a)(6)).  The Plan does not provide for any

rate changes over which a governmental regulatory commission has jurisdiction.  Accordingly,

Bankruptcy Code section 1129(a)(6) is not applicable in these Chapter 11 Cases.

V.    Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).  The analysis set forth in the

Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (i) is

persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes

that each holder of a Claim in an Impaired Class either has accepted the Plan or will receive or

retain under the Plan, on account of such Claim, property of a value, as of the Effective Date,

that is not less than the amount that such holder would receive or retain if the Debtors were

liquidated under chapter 7 of the Bankruptcy Code on such date.  The Plan effects the Global

Settlement and the WARN Settlement that, among other things, provide a recovery for holders of

General Unsecured Claims and preserve the Trust Causes of Action for the holders of

Liquidating Trust Interests, enhancing the potential for the overall recovery to holders of General

Unsecured Claims.  Recoveries pursuant to the Plan are equal to or in excess of those that would

be available if the Debtors were liquidated pursuant to chapter 7 and, therefore, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(7).

**W.**      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Claims and Interests in Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are unimpaired under the Plan and are conclusively presumed to have accepted the Plan without the solicitation of acceptances or rejections pursuant to Bankruptcy Code section 1126(f).  Holders of Claims in Class 5 (Prepetition Exchangeable Note Claims), Class 6 (General Unsecured Claims), Class 7 (Disputed Employee Litigation Claims), and Class 8 (Prepetition Treximet Highbridge Deficiency Claim) voted to accept the Plan by at least two-thirds in amount and one-half in number.  *See* Voting Certification, Exhibit A.  Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(8).

**X.**      Treatment of Administrative Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Claims under the Plan of the type specified in Bankruptcy Code sections 507(a)(1) through 507(a)(8), if any, complies with the provisions of Bankruptcy Code section 1129(a)(9) because Article II of the Plan provides that, except to the extent an entity agrees to less favorable treatment: (i) each holder of an Allowed Administrative Claim (except with respect to Professional Fee Claims, which shall be paid upon Final Order of allowance by the Bankruptcy Court) shall be paid in full in cash on or as soon as reasonably practicable after the Effective Date and (ii) each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, and release of such Allowed Priority Tax Claim cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by Bankruptcy Code section 511, or such other treatment as to which such holder and the Debtors shall have

agreed upon or otherwise determined upon an order of the Bankruptcy Court. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(9).

Y.      Acceptance by at Least One Impaired Class (11 U.S.C. § 1129(a)(10)). The requirements of Bankruptcy Code section 1129(a)(10) are met with respect to the Debtors. *See* Voting Certification, Exhibit A. Claims in Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are unimpaired under the Plan and are conclusively presumed to have accepted the Plan without the solicitation of acceptances or rejections pursuant to Bankruptcy Code section 1126(f). Holders of Claims in Class 5 (Prepetition Exchangeable Note Claims), Class 6 (General Unsecured Claims), Class 7 (Disputed Employee Litigation Claims), and Class 8 (Prepetition Treximet Highbridge Deficiency Claim) voted to accept the Plan by at least two-thirds in amount and one-half in number. *See* Voting Certification, Exhibit A. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(10).

Z.      Feasibility (11 U.S.C. § 1129(a)(11)). The Plan satisfies Bankruptcy Code section 1129(a)(11). The information in the Disclosure Statement and the evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and that there is a reasonable prospect of the Debtors being able to meet their financial obligations under the Plan and that confirmation of the Plan is not likely to be followed by the need for further liquidation or financial reorganization of the Debtors, thereby satisfying the requirements of Bankruptcy Code section 1129(a)(11).

AA.     Payment of Fees (11 U.S.C. § 1129(a)(12)). Pursuant to Article II.C of the Plan, the Debtors are required to pay all statutory fees due and owing to the U.S. Trustee on the

Effective Date.  Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(12).

BB.   No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).   With respect to the Impaired Classes deemed to reject the Plan, the Plan may be confirmed pursuant to Bankruptcy Code section 1129(b) even though the requirements of section 1129(a)(8) have not been met. The Debtors have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to Classes that were deemed to reject the Plan.  The Plan is "fair and equitable" with respect to the non-accepting Claimants because no junior Class of Claims or Interests will receive or retain any property from the Debtors' Estates under the Plan on account of such Claims or Interests.  The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Confirmation Hearing regarding the Debtors' classification and treatment of Claims: (a) is reasonable, persuasive, credible and accurate; (b) utilizes reasonable and appropriate methodologies and assumptions; and (c) has not been controverted by other creditable evidence. The Plan, therefore, satisfies the requirements of Bankruptcy Code section 1129 and may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

CC.   Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the only plan that was solicited and brought to the Bankruptcy Court for confirmation in these Chapter 11 Cases.  Accordingly, Bankruptcy Code section 1129(c) is inapplicable in these Chapter 11 Cases.

DD.   Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and no governmental entity has objected to the confirmation of the Plan

on any such grounds.  Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(d).

    **EE.**   Non-Applicability of Certain Sections (11 U.S.C. §§ 1123(c), 1129(a)(13) - (16), 1129(e)).  The Debtors are not an individual and do not owe any domestic support.  The Debtors also have no obligation to pay for retiree benefits and are neither a nonprofit corporations nor "small businesses."  Accordingly, Bankruptcy Code sections 1123(c), 1129(a)(13) - (16) and 1129(e) do not apply to these Chapter 11 Cases.

    **FF.**   Modifications of the Plan (11 U.S.C. § 1127).  The modifications made to the Plan since the Solicitation do not constitute changes that materially or adversely change the treatment of any Claims or Interests and do not require additional disclosure under Bankruptcy Code section 1125 or resolicitation of acceptances or rejections of the Plan under Bankruptcy Code section 1126, nor do they require that holders of Claims or Interests against the Debtors be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Thus, the Debtors have complied in all respects with Bankruptcy Code section 1127 and Bankruptcy Rule 3019.

    **GG.**   Satisfaction of Confirmation Requirements.  Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with Confirmation of the Plan, and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129.

    **HH.**   Implementation.  All documents and agreements necessary to implement the Plan, and all other relevant and necessary documents, have been negotiated in good faith and at arms'

length, do not inappropriately conflict with applicable non-bankruptcy law, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements.

II.    <u>Good Faith</u>.  Based on the record before this Bankruptcy Court in these Chapter 11 Cases, the Debtors will be acting in good faith within the meaning of Bankruptcy Code section 1125(e) if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby and (ii) take the actions authorized and directed by this Confirmation Order, and shall not be liable under any applicable law, rule, or regulation governing solicitation of acceptance or rejection of the Plan or the offer, issuance, sale, or purchase of securities.

JJ.    <u>Additional Findings Regarding Releases</u>.  The releases provided pursuant to Article VIII of the Plan and as modified herein: (i) represent a sound exercise of the Debtors' business judgment; (ii) were negotiated in good faith and at arms' length; and (iii) are (a) in exchange for good and valuable consideration, (b) a good faith settlement and compromise of the claims released thereby, (c) in the best interest of the Debtors and their Estates and (d) fair, equitable, and reasonable under the circumstances of these Chapter 11 Cases.

KK.    <u>Retention of Jurisdiction</u>.  Pursuant to Bankruptcy Code sections 105(a) and 1142, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Bankruptcy Court, except as otherwise provided in the Plan or herein, shall retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law.

# ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

**General Decrees and Implementation**

1.    Adequacy of the Disclosure Statement.    The Disclosure Statement hereby is APPROVED on a final basis as containing adequate information within the meaning of Bankruptcy Code section 1125 and contains sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules and regulations.

2.    Confirmation of the Plan.    The Plan and each of its provisions, shall be, and hereby is, CONFIRMED pursuant to Bankruptcy Code section 1129.    The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

3.    Objections Overruled.    All objections, responses to, and statements and comments, if any, in opposition to or inconsistent with the Plan, other than those withdrawn with prejudice or resolved in their entirety prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, OVERRULED and DENIED in their entirety.    All withdrawn objections are deemed withdrawn with prejudice.

4.    Plan Classification Controlling.    Unless otherwise set forth herein, the classifications of Claims and Interests for purposes of distributions under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for the purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Interests under the Plan for distribution purposes, (c) may not be relied upon

by any Creditor or Interest holder as representing the actual classification of such Claims or Interests under the Plan for distribution or any other purpose (other than for evidencing the vote of such party on the Plan), and (d) shall not be binding on the Debtors or holders of Claims or Interests for purposes other than for voting.

5.    The Global Settlement.    The Global Settlement, and each component thereof, including, without limitation, the UCC Settlement, is hereby approved pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019 as fair and reasonable and in the best interests of the Debtors, their Estates, Creditors and Interest holders.  The Global Settlement is authorized and approved in all respects, subject to, and in accordance with, the terms and conditions thereof, the Plan and this Confirmation Order, and the terms of the Global Settlement shall be binding upon all Persons, including the Debtors, Post-Effective Date Debtors, the Plan Administrator, the Liquidating Trustee, any and all Holders of Claims or Interests, any and all Persons who are parties to or are subject to the settlements, compromises, releases, waivers, and injunctions described herein or in the Plan, and the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, financial advisors, professionals, accountants, attorneys, beneficiaries, guardians, successors, or assigns, if any, of the foregoing. Further, the Global Settlement is deemed an integrated compromise and settlement and, accordingly, is non-severable from all other terms of the Plan.  The compromises and settlements embodied in the Global Settlement are fair, equitable, and within the range of reasonableness. The Debtors, Post-Effective Date Debtors, the Plan Administrator, and the Liquidating Trustee, as applicable, are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers, and to take any and all actions reasonably necessary or appropriate to consummate the Global Settlement.

6.  <u>Global Settlement Transfer</u>.  On the Effective Date, the Debtors and their Estates shall transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust, the Liquidating Trust Assets, which transfer shall be free and clear of Claims and Liens and contractually imposed restrictions except as otherwise provided herein.

7.  <u>The WARN Settlement</u>.  The WARN Settlement, and each component thereof, is hereby approved pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019 as fair and reasonable and in the best interests of the Debtors, their Estates, Creditors and Interest holders.  The WARN Settlement is authorized and approved in all respects, subject to, and in accordance with, the terms and conditions thereof, the Plan and this Confirmation Order, and the terms of the WARN Settlement shall be binding upon all Persons, including the Debtors, Post-Effective Date Debtors, the Plan Administrator, the Liquidating Trustee, any and all Holders of Claims or Interests, any and all Persons who are parties to or are subject to the settlements, compromises, releases, waivers, and injunctions described herein or in the Plan, and the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, financial advisors, professionals, accountants, attorneys, beneficiaries, guardians, successors, or assigns, if any, of the foregoing.  Further, the WARN Settlement is deemed an integrated compromise and settlement and, accordingly, is non-severable from all other terms of the Plan.  The compromises and settlements embodied in the WARN Settlement are fair, equitable, and within the range of reasonableness.  The Debtors, Post-Effective Date Debtors, the Plan Administrator, and the Liquidating Trustee, as applicable, are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers, and to take any and all actions reasonably necessary or appropriate to consummate the WARN Settlement.

8.      WARN Settlement Transfer.  On the fifth business day after the later of: final approval of the WARN Settlement or the Effective Date, the Liquidating Trust shall pay $300,000 (the "WARN Payment") to counsel to the holders of the Disputed Employee Litigation Claims, who shall retain a settlement administrator to distribute the funds to the holders of the Disputed Employee Litigation Claims in accordance with the WARN Settlement.  Upon payment of the WARN Payment to counsel to the holders of the Disputed Employee Litigation Claims, the holders of the Disputed Employee Litigation Claims (except for those who have opted out of the WARN Settlement) shall fully and forever release and discharge the Released Parties from any and all claims that were or could have been plead in the WARN Complaint and any other claims in any way related to the Debtors and their current and former officers, directors, employees, agents, advisors, attorneys, and affiliates.

9.      Confirmation Notice.  The Debtors provided good and sufficient notice of the Confirmation Hearing and the deadlines for filing and serving objections to the Plan, which notices are hereby approved.

10.     Implementation of the Plan.  The Debtors, Post-Effective Date Debtors, Plan Administrator, and the Liquidating Trustee each to the extent applicable and in accordance with the terms and conditions of the Plan, are authorized to (i) execute, deliver, file, and/or record such documents, contracts, instruments, releases, and other agreements, (ii) make any and all distributions and transfers contemplated pursuant to, and as provided for in, the Plan, and (iii) take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan.

11.     No Action.  To the extent that, under applicable non-bankruptcy law, any action to effectuate the terms of this Plan would otherwise require the consent or approval of the

members, managers, directors or officers of the Debtors, this Confirmation Order shall, pursuant to Bankruptcy Code sections 1123(a)(5) and 1142, constitute the consent or approval, and such actions are deemed to have been taken by unanimous action of the members, managers, directors and officers of the Debtors.

12.    <u>Binding Effect</u>.  From and after entry of this Confirmation Order, and subject to the occurrence of the Effective Date, except to the extent otherwise provided in the Plan or this Confirmation Order, the provisions of the Plan, as applicable, shall be binding on and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Person, including, but not limited to, all holders of Claims and Interests of the Debtors (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan), and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors, and all other parties-in-interest in these Chapter 11 Cases.

13.    <u>Vesting of Assets in the Post-Effective Date Debtors</u>.    Notwithstanding Bankruptcy Code section 1141(b), the Debtors' assets shall vest on the Effective Date as follows: (i) all the Remaining Estate Assets shall vest in the Post-Effective Date Debtors, free and clear of all Liens, Claims against, charges or other encumbrances except as otherwise set forth in the Plan, and (ii) all of the Liquidating Trust Assets shall vest in the Liquidating Trust except as otherwise set forth in the Plan.  After the consummation in full of the Plan with respect to the Post-Effective Date Debtors, the Residual Value shall be deemed Liquidating Trust Assets.

14.    <u>Cancellation of Outstanding Interests</u>.  As of the Effective Date, except for purposes of evidencing a right to a distribution under the Plan or as otherwise provided for in the Plan or herein, (a) all agreements and other documents evidencing the Claims or rights of any

holders of such Claims against the Debtors, including, but not limited to, all contracts, notes and guarantees, and (b) all Interests, shall be deemed automatically cancelled and the obligations of the Debtors thereunder or in any way related thereto, including any obligation of the Debtors to pay any franchise or similar type taxes on account of such Claims or Interests, shall be released.

15.    <u>Cancellation of Existing Securities</u>.  Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan, on the Effective Date, the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes and purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors related thereto shall be cancelled and deemed null and void; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim against the Debtors shall continue in effect solely for purposes of (1) enabling holders of Allowed Claims to receive distributions under the Plan as provided herein and (2) allowing the Unsecured Indenture Trustees to enforce their rights, claims, and interests vis-à-vis any parties other than the Debtors; (3) allowing the Unsecured Indenture Trustees to make the distributions in accordance with the Plan (if any), as applicable; (4) preserving any rights of the Unsecured Indenture Trustees to payment of fees, expenses, and indemnification obligations solely as against any money or property distributable to the Holders under the relevant indenture, including any rights to priority of payment and/or to exercise charging liens; (5) allowing the Unsecured Indenture Trustees to enforce any obligations owed to each of them under the Plan; (6) allowing the Unsecured Indenture Trustees to exercise rights and obligations relating to the interests of the Holders under the relevant indentures consistent

with the terms of the Plan; (7) allowing the Unsecured Indenture Trustees to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including, but not limited, to enforce the respective obligations owed to such parties under the Plan; and (8) permitting the Unsecured Indenture Trustees to perform any functions that are necessary to effectuate the foregoing; provided, further, however, that the preceding provision shall not result in any expense or liability to the Debtors, except to the extent set forth in or provided for under this Plan.

16.    <u>Directors, Officers and Board Members of the Debtors</u>.  As of the Effective Date, except for purposes of evidencing a right to a distribution under the Plan or as otherwise provided for in the Plan or herein, all officers, directors and members of the Board of the Debtors shall be deemed to have resigned.

17.    <u>Appointment of Plan Administrator</u>.  As of the Effective Date, pursuant to the Plan and Plan Administrator Agreement, Garineh S. Dovletian shall be appointed as Plan Administrator.

18.    <u>Appointment of Liquidating Trustee</u>.  As of the Effective Date, pursuant to the Plan and Liquidating Trust Agreement, Justin Alberto shall be appointed as Liquidating Trustee.

**Treatment of Executory Contracts and Unexpired Leases**

19.    The provisions of Article VII of the Plan governing executory contracts and unexpired leases are hereby approved in their entirety.

20.    <u>Rejection of Contracts and Leases</u>.  On the Effective Date, except as otherwise provided under the Plan, and except to the extent that the Debtors either previously have assumed, assumed and assigned, or rejected an executory contract or unexpired lease by an order of the Bankruptcy Court or have filed a motion to assume or assume and assign an executory

contract or unexpired lease prior to the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Bankruptcy Code section 365. For the avoidance of doubt, the ADP Contracts shall be deemed rejected on June 22, 2019 and the Federal Supply Schedule Contract Federal Supply Schedule Contract 36F79718D0413, dated May 1, 2018, by and between Department of Veterans Affairs and Pernix Therapeutics, LLC. Federal Supply Schedule Contract V797D-40109, dated March 1, 2014, by and between Department of Veterans Affairs and Macoven Pharmaceuticals, LLC shall be deemed rejected on December 15, 2019. This Confirmation Order shall constitute approval of any such rejections pursuant to Bankruptcy Code sections 365(a) and 1123.

21. <u>Claims Based on Rejection of Contracts or Leases</u>. Claims arising from May 1, 2019 through and including the Effective Date, if any, created by the rejection of executory contracts and unexpired leases, must be filed with the Bankruptcy Court and served on the Liquidating Trustee no later than twenty-one (21) days after the earlier of (a) service of Notice of the Effective Date, or (b) service of notice of entry of an order of the Bankruptcy Court approving such rejection (other than this Confirmation Order). Any Claims arising from the rejection of an executory contract or unexpired lease for which proofs of claim are not timely filed within that time period will not be considered Allowed and such person or entity shall not be treated as a creditor for purposes of distributions under the Plan, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. Any such Claims that are timely filed as provided herein shall be treated, to the extent Allowed, as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III of the Plan.

**Distributions and Claims**

22.    <u>Distributions</u>.  The provisions of the Plan governing distributions and procedures for resolving and treating Disputed Claims are approved and found to be fair and reasonable. Unless otherwise set forth in the Plan, the Plan Administrator or Liquidating Trustee shall make all distributions under the Plan on account of Allowed Claims against the Debtors, as applicable.

23.    <u>Objections to Claims</u>.  Any objections to a proof of Claim, other than other than Professional Fee Claims or Claims or Interests that are Allowed pursuant to the Plan, shall be filed on or before the one hundred and eightieth (180th) day after the Effective Date, or such later deadline for objecting to claims as may be fixed by an order of this Bankruptcy Court upon motion filed by the Plan Administrator or Liquidating Trustee.  Absent further order of this Bankruptcy Court, any objection not filed by such deadline shall be deemed waived, and the Claim shall be an Allowed Claim in the amount set forth on the proof of claim filed by the holder of such Claim.  With respect to any Claim objection that was filed by the Debtors but not yet resolved by entry of a Final Order prior to the Effective Date, the Plan Administrator or the Liquidating Trustee, as applicable, shall be substituted in the place of the Debtors, as of the Effective Date, and shall have the right to continue to prosecute or to settle such objections in accordance with the terms of the Plan and this Confirmation Order.

24.    <u>Setoffs and Recoupment</u>.  Except with respect to Professional Fee Claims or Claims or Interests that are Allowed pursuant to the Plan, the Plan Administrator or the Liquidating Trustee, as applicable, may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant pursuant to Bankruptcy Code section 558 or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Post-

Effective Date Debtors or the Liquidating Trust of any such Claim they may have against the holder of such Claim.

25.    Administrative Claim Bar Date.   Except as otherwise provided in the Plan, requests for payment of Administrative Claims must have been or be filed on or before the Administrative Claims Bar Date, which (i) was June 3, 2019 at 4:00 p.m. prevailing Eastern Time for Administrative Claims arising from the Petition Date through and including April 30, 2019 and (ii) is twenty-one (21) days after the Effective Date for Administrative Claims arising from May 1, 2019 through and including the Effective Date.  Holders of Administrative Claims that are or were required to, but did not or do not, file and serve a request for payment of such Administrative Claims by such applicable dates shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed released against the Debtors as of the Effective Date. For the avoidance of doubt, Governmental Units asserting Administrative Claims pursuant to Bankruptcy Code section 503(b)(1)(D) shall not be required to file a request for payment prior to the Administrative Claims Bar Date.

26.    Professional Fee Claims.   All final requests for Payment of Professional Fee Claims must be filed and served on the Post-Effective Date Debtors, Highbridge, the Creditors' Committee and such other Entities who are designated by the Bankruptcy Rules, the Interim Compensation Order or any other applicable order of the Bankruptcy Court, and other necessary parties-in-interest no later than twenty-one (21) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court; provided, however, that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered

before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order.  Objections to any Fee Claim must be Filed and served on the requesting party no later than twenty-one (21) days from the service of an application for final allowance of a Professional Fee Claim.  Upon entry of a Final Order approving such application for such Professional Fee Claim, Landis Rath & Cobb LLP shall promptly distribute from the Professional Fee Claim Reserve any unpaid portion of such Allowed Professional Fee Claim.  To the extent that any Cash is remaining in the Professional Fee Claim Reserve after payment in full of all Allowed Professional Fee Claims, Landis Rath & Cobb LLP shall promptly transfer any such Cash to the Plan Administrator.  The aggregate amount of the Allowed Professional Fee Claims of the Creditors' Committee and the fees and expenses of the Liquidating Trustee shall be limited to the Committee Professional Fee Cap.  To the extent necessary, the Plan and this Confirmation Order shall amend and supersede any previously entered order regarding the payment of Professional Fee Claims.

27.    Post-Effective Date Expenses.  From and after the Effective Date, the payment of the fees and expenses of the retained professionals of the Plan Administrator shall be funded from the Remaining Estate Assets and the fees and expenses of the retained professionals of the Liquidating Trustee shall be funded from the Liquidating Trust Expenses Reserve (as defined in the Liquidating Trust Agreement), shall not be subject to an application and shall be made in the ordinary course of business and without approval of the Bankruptcy Court.

**Releases, Injunction and Exculpation**

28.    All release, injunction and exculpation provisions contained in the Plan, including, without limitation, those contained in Article VIII of the Plan, are hereby authorized,

approved and shall be effective and binding on all persons and entities, to the extent expressly described in the Plan.

29.    Debtors' Releases.  As of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent authorized by applicable law, and except as otherwise specifically provided in the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is expressly, unconditionally, generally and individually and collectively released and acquitted by the Debtors and their Estates from any and all actions, claims, obligations, rights, suits, judgments, damages, demands, debts, remedies, Causes of Action, and liabilities of any nature whatsoever, including any derivative claims or claims for recharacterization, subordination, or avoidance of the DIP Claims, Prepetition DDTL Secured Claims, Prepetition ABL Secured Claims, Prepetition Treximet Claims, Prepetition Exchangeable Note Claims, or any other claims against any Released Party, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, liquidated or unliquidated, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the purchase, sale or rescission of the purchase or sale of, or any other transaction relating to any Security of the Debtors, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the DIP Financing Facility, the Sale, the UCC Settlement, the Global Settlement, the WARN Settlement, the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any

Debtor and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the plan or the reliance by any Release Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing releases shall have no effect on (x) the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct, or (y) any Claim or Cause of Action that is a Transferred Asset.

      30.    Consensual Third Party Releases. As of the Effective Date, any holder of a Claim in an impaired class that is entitled to vote and that does not opt out of the Consensual Third Party Releases, for good and valuable consideration, the adequacy of which is hereby confirmed, shall be deemed to forever release, waive, and discharge the Released Parties, other than the Debtors, of all claims, obligations suits, judgments, damages, demands, debts, rights, remedies, Causes of Action and liabilities of any nature whatsoever, whether direct or derivative, known or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, liquidated or unliquidated, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, including, without limitation, any of the foregoing based on or relating to, or in any manner arising from, in whole or in part, the purchase, sale or rescission of the purchase, sale, or any other transaction relating to any Security of the Debtors, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the DIP Financing Facility, the Sale, the UCC Settlement, the Global Settlement, the Plan, the

subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to the Debtors; provided, however, that the foregoing releases shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct; provided, further, that the releases set forth in this section shall not be deemed a release of obligations owing by any party under the Global Settlement or the UCC Settlement.

31. <u>Injunction</u>. Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Entities that have held, hold or may hold any Interest in the Debtors or a Claim, Cause of Action, or other debt or liability against the Debtors or against any Released Party that have been released and/or exculpated under the this Plan (the "<u>Released Claims and Interests</u>") are permanently enjoined from taking any of the following actions against the Debtors or the Released Parties or their respective predecessors, successors and assigns, subsidiaries, Affiliates, current (as of the Effective Date) directors, officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, and other Professionals solely in their

respective capacities as such or any property of the same, on account of such Released Claims and Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting any right of setoff (other than setoffs exercised prior to the Petition Date), or subrogation of any kind against any debt, liability or obligation on account of or in connection with or with respect to any Released Claims or Interests; and (c) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with this provision; provided, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

32.    Exculpation.  Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; provided, however, that the foregoing "exculpation" shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

**Payment of Statutory Fees and Tax Issues**

33.    Payment of Statutory Fees.  All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtors on the Effective Date.  On and after the Effective Date, the Plan Administrator shall be responsible for (i) filing post-Confirmation quarterly reports and any pre-Confirmation monthly reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines

and (ii) paying in full in cash all Quarterly Fees for the Chapter 11 Cases until the entry of a final decree or until such Chapter 11 Cases are closed, converted or dismissed. Notwithstanding anything else in the Plan, the U.S. Trustee shall not be required to file a claim for Quarterly Fees.

34.    <u>Compliance with Tax Requirements</u>. The Plan Administrator and the Liquidating Trust shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Plan Administrator and the Liquidating Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, including, without limitation, requiring that the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder or establishing any other mechanisms they believe are reasonable and appropriate. The Plan Administrator and the Liquidating Trust reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. The Plan Administrator and the Liquidating Trust shall not be required to make distributions on any Allowed Claim if the holder thereof has not provided all documentation necessary to determine all tax withholding and reporting requirements for such Allowed Claim. To the extent such documentation is not provided within thirty (30) days of the respective Distribution Date, the distribution on such Allowed Claim shall be deemed Unclaimed Property

35.    <u>Exemption from Certain Taxes and Fees</u>.   Pursuant to Bankruptcy Code section 1146(a), any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. This Confirmation Order directs all relevant state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement distributions under the Plan and all documents necessary to evidence and implement any of the transactions and actions described in the Plan.

**Resolution of Objections and Informal Comments**

36.    <u>Cigna Objection</u>.   Notwithstanding anything in the Plan or this Order to the contrary, the Cigna Contracts (as defined in the *Objection of Cigna Entities to Disclosure Statement for the Joint Plan of Pernix Sleep, Inc. and Its Affiliated Debtors-in-Possession Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 353] (the "<u>Cigna Objection</u>")), shall not be assumed or rejected under the Plan, but shall be deemed validly terminated effective as of 12:01 a.m., June 1, 2019.

37.    <u>Cardinal Health Comments</u>.  Notwithstanding anything to the contrary herein, the Sale Order remains in full effect as to the Cardinal Health Transferred Contracts, including, but not limited to, Paragraph 52 of the Sale Order.

38.    <u>Mississippi Department of Revenue Comments</u>. Notwithstanding anything in the Plan or this Confirmation Order to the contrary:

> (a) the Mississippi Department of Revenue's (the "<u>MDOR</u>") setoff rights under section 553 of the Bankruptcy Code and recoupment rights are preserved;

> (b) the MDOR shall not be required to file any proofs of claim or requests for payment in the Chapter 11 Cases for any Administrative Claims for the liabilities described in section 503(b)(1)(B) and (C) of the Bankruptcy Code (the "<u>MDOR 503(b) Liabilities</u>"). The Debtors, the Post-Effective Date Debtors or Plan Administrator, as applicable, shall (a) timely submit tax returns for any MDOR 503(b) Liabilities in accordance with applicable Mississippi state law and (b) timely pay any reported MDOR 503(b) Liabilities pursuant to the terms of the Plan.  Should the Debtors, Post-Effective Date Debtors or Plan Administrator, as applicable, fail to timely file returns for any MDOR 503(b) Liabilities and timely remit payment of any reported MDOR 503(b) Liabilities, the MDOR may proceed with Mississippi state law remedies for collection of such reported MDOR 503(b) Liabilities due and/or seek such relief as may be available from the Court, subject to the Debtors', Post-Effective Date Debtors' or Plan Administrator's, as applicable, rights and defenses under applicable law, including the Bankruptcy Code;

(c) to the extent the reported MDOR 503(b) Liabilities, if any, are not paid in full in cash on the Effective Date or the date such claim becomes an Allowed Claim under the Plan, such Priority Tax Claims shall, at a minimum, be paid by regular, quarterly installment payments in cash over a period not to exceed five years after the date of the order for relief under Bankruptcy Code section 301 of the Bankruptcy Code, along with non-bankruptcy interest in accordance with Bankruptcy Code sections 511 and 1129(a)(9)(C);

(d) the Chapter 11 Cases shall have no effect on the MDOR's rights as to non-Debtor third parties unless otherwise expressly provided in the Plan;

(e) the statutorily mandated treatment of reported MDOR 503(b) Liabilities, if any, shall not be considered a settlement or compromise;

(f) prior to the close of the Debtors' bankruptcy cases, the MDOR may timely amend any Proof of Claim against any Debtor with respect to (a) a pending audit, or (b) an audit that may be performed, with respect to any pre or post-petition tax return; and

(g) in the event of a default in payment of a reported MDOR 503(b) Liability pursuant to the terms of the Plan, , the MDOR shall send written notice of default to the Debtors, Post Effective Date Debtors, Plan Administrator, or Liquidating Trustee, as applicable, to the address in MDOR's records. If such default is not cured within 10 business days after such notice of default is mailed, the MDOR may (a) enforce the entire amount of its claim; (b) proceed with Mississippi state law remedies for collection of any amounts due and/or (c) seek such relief as may be available from the Court. The Debtors, Post

Effective Date Debtors, or Plan Administrator, as applicable, rights and defenses under any applicable law, including the Bankruptcy Code, are hereby preserved.

**Miscellaneous**

39.    <u>Immaterial Modifications</u>.  Without need for further order or authorization of the Bankruptcy Court, but subject to any limitations set forth in the Plan, the Debtors are authorized and empowered to make any and all modifications to any and all documents that is necessary to effectuate the Plan that does not materially modify the terms of such documents and are consistent with the Plan and this Confirmation Order.

40.    <u>Effect of Confirmation on Modifications</u>.   Entry of this Confirmation Order means that all modification or amendments to the Plan since the solicitation thereof are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

41.    <u>Documents and Instruments</u>.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

42.    <u>Conditions to Effective Date</u>.  The Plan shall not become effective unless and until the conditions set forth in Article IX of the Plan have been satisfied or waived pursuant to Article IX of the Plan.

43.    <u>Statutory Committee and Cessation of Fee and Expense Payment</u>.   On the Effective Date, the Creditors' Committee shall dissolve and all of its members, Professionals and agents shall have no further duties, responsibilities, obligations, and authority in connection with

the Debtors, the Chapter 11 Cases, the Plan, or its implementation, except with respect to applications for Professional Fee Claims, and except with respect to counsel to the Creditors' Committee, to provide consultation, as requested by the Liquidating Trustee. The Debtors shall not be responsible for paying any fees or expenses incurred by the Creditors' Committee after the Effective Date, other than in connection with applications for Professional Fee Claims, subject to the Committee Professional Fee Cap.

44.     Vacatur of Order.  If this Confirmation Order is vacated or deemed vacated, then the Plan shall be deemed null and void in all respects, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims against or Interests in the Debtors, (ii) prejudice in any manner the rights of the holder of any Claim against, or Interest in, the Debtors, (iii) prejudice in any manner any right, remedy or claim of the Debtors, or (iv) be deemed an admission against interest by the Debtors or any other Person or Entity.

45.     Retention of Jurisdiction.  The Bankruptcy Court shall retain and have jurisdiction over any matters arising out of, or related to, these Chapter 11 Cases and the Plan pursuant to Bankruptcy Code sections 105(a) and 1142, including, but not limited to the matters set forth in Article XI of the Plan.

46.     Forum for Actions.  Without permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced against the Plan Administrator or Liquidating Trustee in their capacity as such, with respect to their status, duties, powers, acts or omissions in such capacity in any other forum than the Bankruptcy Court.

47.     Conflicts.  To the extent that any provision of any other Restructuring Document or any document or other exhibits, schedules, appendices, supplements, or amendments of any document referenced in the Plan (the "Plan Related Documents") conflict with or are in any way

inconsistent with any provision of the Plan, the Plan shall govern and control; provided that, with respect to any conflict or inconsistency between the Plan or the Plan Related Documents on the one hand, and the Confirmation Order on the other, the Confirmation Order shall govern.

48.    Severability of Plan Provisions.  Each term and provision of the Plan, as it may have been amended by this Confirmation Order, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (iii) non-severable and mutually dependent.

49.    Waiver or Estoppel.  Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, Plan Related Documents, papers filed with this Bankruptcy Court, or stated on the record at the Confirmation Hearing, prior to the Confirmation Date.

50.    Governing Law.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent otherwise provided in the Plan, the rights and obligations arising under the Plan, shall be governed by, and construed and enforced in accordance with the laws of Delaware, without giving any effect to the principles of conflicts of law or such jurisdiction.

51.    Applicable Non-Bankruptcy Law.  Pursuant to Bankruptcy Code sections 1123(a) and 1142(a), the provisions of this Confirmation Order, the Plan, and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

52.    <u>Notice of Order</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form annexed hereto as **<u>Exhibit A</u>**, to all parties who currently hold a Claim or Interest in this case, including the U.S. Trustee, the Internal Revenue Service, the United States attorney for the District of Delaware, the SEC, and any party filing a notice pursuant to Bankruptcy Rule 2002. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order.

53.    <u>Term of Injunctions or Stays</u>.   All injunctions or stays in effect in the Chapter 11 Cases pursuant to Bankruptcy Code section 105 or 362 or any order of the Bankruptcy Court, and existent on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

54.    <u>No Waiver</u>.  The failure to specifically include or refer to any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

55.    <u>Waiver of Stay</u>.  The requirement under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen (14) days after entry of the order is hereby waived.  This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062 or other applicable rule.

Dated:   June 20, 2019
        Wilmington, Delaware

 

_____
The Honorable Christopher S. Sontchi
Chief United States Bankruptcy Judge